# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DANIEL HAGGART AND KATHY HAGGART, ROBERT W. TAYLOR, ANNMARI RYAN, KEVIN IDEN, DOUG RUBIN AND RACHEL RUBIN, DAYTON P. DENNISON, TERESA A. GALLO, SUK BONG LEE AND MIJA LEE, WILLIAM J. CLANCY AND DORIS E. CLANCY, SEUNG J. HONG AND SALLY HONG, JEFFREY B. DUBOIS AND ANIKA V. DUBOIS, KEVIN JONES, CHRISTOPER M. HALL, SHERILYN SHIRLEY, VIRENDRA K. CHAUDHARY AND ROSHIL CHAUDHARY, MARLENE R. WINTER, TIMOTHY J. RILEY AND VIRGINIA L. RILEY, NABIL HAMADEH AND GHADA HAMADEH, JERRY RISE, STEVEN T. FOWLER, TERRY THOMPSON, LYNDA HAUTALA AND ERIC HAUTALA, MARK MUHSAM, MARC BEAN, LUANA RANDLEMAN, JEFF BEHRMAN, JOY A. KREICK AND CONRAD R. KREICK, ALAN SKOW, BARBARA S. KELLY AND BOBBY J. KELLY, RACHEL GAINES AND KEVIN BETO, and MICHAEL HURLEY, MARTIN HOCHFELD, O. LOWELL ANDERSON, ALAN B. CLARK, ROTER INVESTMENTS, L.P., For Themselves and As Representatives of a Class of Similarly Situated Persons, and<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 09-103 L<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY CLASS ACTION

Pursuant to Rule 23 of the Rules of the U.S. Court of Federal Claims, certification of a class action is appropriate in this case because:

- Plaintiffs have been deprived of their property under the National Trails System Act and are entitled to just compensation for the taking of their land;

- A class of similarly situated individuals or entities who have had their property taken exists;

- Class certification prerequisites have been met and class certification provides the most efficient method to resolve named Plaintiffs and the putative class members claims.

As such, this Court should grant Plaintiffs' Motion for Class Certification.

## I.  SUMMARY OF MOTION

The named Plaintiffs ("Plaintiffs") own fee title to real estate located in King County, Washington that underlies three abandoned railroad right-of-way, which total 25.45 miles. The BNSF Railway Company (BNSF) established this right-of-way in 1891 by obtaining easements from fee owners across the property that is now owned by the Plaintiffs. There are now more than 1,110 parcels of land with more than 750 fee owners as successors in title to the original fee owners.

BSNF stopped using the right-of-ways for the operation of a railroad, and there has been no local freight traffic for more than two years. (*See* Petition for Exemption, attached hereto as Exhibit A). On August 11, 2008, BNSF filed a petition for exemption to abandon the line between milepost 11.25 near Wilburton to milepost 23.80 in Woodinville, in King County, Washington (the "North Railbanking Segment"), with the STB, the regulatory agency with jurisdiction over railroad operations. On September 8, 2008, BNSF filed a petition for exemption to abandon the line between milepost 0.0 near Woodinville to milepost 7.3 near Redmond, in King County, Washington (the "Redmond Spur"). Finally, BNSF filed a petition for exemption to abandon the line between milepost 5.0 near Kennydale to milepost 10.60 at Wilburton, in King County, Washington (the "Southrailbanking Segment"), with the STB.

On October 27, 2008 and November 28, 2008, the STB issued a three related Notices of

Interim Trail Use ("NITU") pursuant to the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247 ("Trails Act"). (*See* NITUs, attached hereto as Exhibits B, C and D). Pursuant to the NITUs, BNSF and King County, Washington entered into and executed a single Trail Use Agreement ("TUA"), and BNSF transferred its interest in the right-of-way to King County, Washington.

Due to the NITUs, Plaintiffs and putative class members have been deprived of their reversionary property rights and are entitled to just compensation under the Fifth Amendment of the U.S. Constitution.

> **A.     Under Federal and Washington Law, all Plaintiffs are Entitled to Compensation for the Government's Taking of their Property.**

Washington law is settled. When a railroad right-of-way is acquired by conveyance or condemnation, the easement is extinguished when railroad service is abandoned. *See Swan v. O'Leary*, 225 P.2d 199, 201 (Wash. 1950); *Scott v. Wallitner*, 299 P.2d 204, 205 (Wash. 1956); *see also King County v. Squire Investment, Co.*, 801 P.2d 1022, 1025 (Wash. Ct. App. 1990). Upon the railroad's abandonment, the right-of-way should have "reverted" to Plaintiffs and similarly situated landowners. *See id.* However, the Trails Act precluded the Plaintiffs and similarly situated property owners from enjoying their "reversionary" rights to their property by allowing King County, Washington to use the Plaintiffs' land for a non-railroad purpose.

Two new easements have been imposed upon the Plaintiffs' property due to the Trails Act, one for a public access recreational trail and another for potential and speculative future use of the Plaintiffs' property as a railroad. The Trails Act constitutes a taking of the Plaintiffs' and similarly situated property owners' land. The Fifth Amendment to the United States Constitution requires the federal government pay the Plaintiffs and similarly situated property owners "just compensation" for this taking of their land.

Plaintiffs seek compensation for the taking of their property which, but for operation of the Trails Act, would be theirs to enjoy free of any easement imposed by the Trails Act. Plaintiffs' claim for a taking of their land is brought against the United States Government under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Fifth Amendment to the United States Constitution, because the taking of their property occurred by reason of the Trails Act. *See Preseault v. United States,* 494 U.S. 1 (1990) and *Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996).

B.   **Class Certification is Appropriate.**

Plaintiffs seek to certify a class action with themselves as representative parties for that class of similarly situated individuals or entities whose "reversionary" rights to their property in King County, Washington underlying the abandoned railroad easements were precluded by operation of the Trails Act and the STB's issuance of the NITUs. Because common questions of fact and law are shared by all property owners whose land is subject to the NITUs, certification as a class action under Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC") is appropriate and serves the interests of justice, judicial economy, and efficiency. *See also Fauvergue v. United States*, 86 Fed. Cl. 82 (2009); *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Cl. Ct. 1972).

The issue before this Court is whether this action should be certified as an opt-in class pursuant to RCFC 23 when more than 750 owners of property in the same county have a similar Tucker Act claim under the Fifth Amendment for the federal government's taking of their property; the Trails Act imposed an easement for recreational trail use upon their property; each landowners' claim arose by reason of the same NITUs issued by the STB; and all property owners' titles trace back to original property owners across whose property the railroad originally acquired an easement.

## II. THIS CASE SHOULD BE CERTIFIED AS AN OPT-IN CLASS ACTION.

### A. This Court has Authority to Certify a Class Action.

This Court has authority to certify class actions. Under RCFC 23, "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether [a class action] is to be so maintained." RCFC 23(c)(1). In *Quinault Allottee Ass'n v. United States,* the United States Court of Claims explained that "there is nothing in the type of jurisdiction we have … to deprive us of this modern aid to speedier and less repetitious litigation." 453 F.2d at 1274.

### B. This Action Fits Squarely Within the Court's Requirements for a Properly Certified Class Action.

The Court of Federal Claims' Rule 23, as amended November 3, 2008, governs class actions in this Court. *Fauvergue*, 86 Fed. Cl. at 94. Rule 23 states:

> (a) Prerequisites. One or more members of a class may sue as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable. A class action may be maintained if RCFC 23(a) is satisfied and if:
> …
> > (2) the United States has acted or refused to act on grounds generally applicable to the class; and
> >
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by class members;
> […] and
>
> (D) the likely difficulties in managing a class action.

RCFC 23. The requirements of certifying a class action can be summarized into five elements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority. *Id.*; *Fauvergue*, 86 Fed. Cl. at 95. Plaintiffs bear the burden of proving that all criteria havebeen satisfied by a preponderance of the evidence. *Id.*

### 1. **<u>Numerosity.</u>**

This Court has wide discretion to determine whether the numerosity requirement is met based on the facts of this case. *Favreau, II v. United States,* 48 Fed. Cl. 774, 776-77 (2000). A successful class must be "so numerous that joinder of all members is impracticable," RCFC 23(a)(1), but it need not be impossible. *Fauvergue*, 86 Fed. Cl. at 96. The number of potential class members is a "major consideration" when evaluating the practicality of joinder for the purposes of class-action certification. *Id.* A proposed class size of forty members or more is presumed to make joinder impracticable and qualify for class-action certification. *King v. United States*, 84 Fed. Cl. 120, 124 (2008) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d. Cir. 2001)).

Here, the proposed class exceeds 750 members. Prospective class members have been identified by a search of the records of the King County Tax Assessor and Recorder of Deeds. Through such a search, the Plaintiffs have determined that there are more than 1,110 parcels on the 25.45 miles of right-of-way. Some individuals or entities appear to own more than one

parcel, and thus, there are at least 750 potential Plaintiffs. The size of the class, which exceeds the presumptive 40 potential plaintiffs, establishes that joinder is impracticable. *See King*, 84 Fed. Cl. at 124.

Additionally, another factor used to determine numerosity is whether the size of the individual claims is such that, alone, class members would be discouraged from pursuing their claim. *King*, 84 Fed. Cl. at 125. The time and financial commitment involved in litigation can be outweighed by the potential recovery, so a class action is often the only procedure that makes the litigation worthwhile. *Fauvergue*, 86 Fed. Cl. at 97.

Here, some individual claims might not be pursued if certification is denied because some of the potential class members' claims and respective amounts in controversy are fairly small relative to the cost necessary to individually present these claims. Because the area of some parcels is small or because of other characteristics of the property, the attorneys' fees and other costs of bringing the action for the individual claim would greatly exceed the value of the claim. Consequently, a class action is the only vehicle by which many class members will be able to bring their respective claims. *See Fauvergue*, 86 Fed. Cl. at 97.

### 2. **Commonality.**

The commonality prerequisite is satisfied and class certification is warranted. The commonality requirement encompasses three elements: (1) questions of law or fact are common to the class; (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) questions of law or fact common to class members predominate over any questions affecting only individual members. RCFC 23; *Fauvergue*, 86 Fed. Cl. at 98-99. The threshold in proving commonality is not high. *Id.*

(a) *Questions of Law or Fact Are Common to the Class.*

This question is satisfied when there is at least one "core common legal question that is likely to have one common defense," and, when resolved, will affect at least a significant number of class individuals. *King*, 84 Fed. Cl. at 125-26. The core, common legal issue in Trails Act takings cases is whether the landowner's "reversionary" property rights were taken when the STB issued the NITUs on October 27, 2008 and November 28, 2008. *See Fauvergue*, 86 Fed. Cl. at 99 (commonality found under facts nearly identical to case at bar) (citing *Caldwell v. United States*, 391 F.3d 1226, 1233 (Fed. Cir. 2004)). The issuance of the NITU is the "only government action in the railbanking process," so all facts arising from the issuance of the NITU are common to the class. *Id.*

Here, a common question of law exists as to whether a Fifth Amendment taking occurred on October 27, 2008 or November 28, 2008, the dates the NITUs were issued. *See id*. Moreover, all facts arising from the issuance of the NITUs will be common to the class. *Id.* Therefore, questions of law and fact are common to the class.

(b) *The United States Has Acted on Grounds Generally Applicable to the Class.*

The second element of demonstrating commonality requires a showing that "the United States must have acted or refused to act on grounds generally applicable to the class." *Fauvergue*, 86 Fed. Cl. at 99. Here, the issuance of the NITUs constitutes an act that is generally applicable to the class because it triggered a chain of events that led to the taking of the proposed class members' property. *See id.*

(c) *Common Questions of Law or Fact Predominate Over Individual Questions.*

The third element of commonality requires a showing that common questions of law or fact predominate over individual questions. *Fauvergue*, 86 Fed. Cl. at 99. "[F]actual variation

among the class grievances is acceptable as long as a common nucleus of operative fact exists." *Id*. (internal citations omitted). Differences in the amount of each proposed class members' damages are insufficient to defeat this element. *Id*. (citing *King*, 84 Fed. Cl. at 126).

In cases involving a taking under the Trails Act, this element is satisfied because the question of whether the United States committed a taking predominates over any individual questions. *Id.* ("The predominate question applicable to all putative plaintiffs is whether the Government committed a taking by blocking their reversionary interests in the property.").

Because the original grantors of the right-of-way were common and relatively limited in number, there are few factual differences among class members. For instance, the descriptions of the property contained in original deeds would be similar for much of the proposed class members, and the property interests in question lie along the same 25.45 mile stretch of land. Washington law provides that these easements were extinguished when operation of the railroad over the property was abandoned. *See Swan*, 225 at 201; *Scott*, 299 P.2d at 205. The condemnation of the right-of-way or the conveyances from the original property owners who held title when the railroad was established would concern essentially immaterial factual differences between class members. The chain of title for all of the property owners would trace back to original fee owners. Similar to the court in *Fauvergue*, this Court should find that the legal question of whether the United States took Plaintiffs' and the putative class members' property by issuing the NITUs predominates over any individual questions.

The primary factual difference among the proposed class of fee owners concerns the extent of damages that each class member is entitled to recover for the value of his or her portion of the abandoned right-of-way. Because each parcel is unique in size, this amount will necessarily vary among the class members. However, differences in the amount of each

9

proposed class members' damages are insufficient to defeat this element. *Fauvergue*, 86 Fed. Cl. at 100.

Thus, because Plaintiffs have demonstrated that the proposed class meets all three elements necessary to show commonality, the commonality requirement is satisfied.

### 3. **Typicality.**

To satisfy the typicality requirement, Plaintiffs must show their claims are typical of the proposed class members. *Fauvergue*, 86 Fed. Cl. at 100. "Even if some factual differences exist between the claims of the named representatives, plaintiffs can successfully establish typicality by showing that the named representatives' claims share the same essential characteristics as the claims of the class at large." *Id*. (citations and quotations omitted). The threshold is not high, and the elements of typicality and commonality tend to merge because both "serve as guideposts for determining whether … the named plaintiff's claim and the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*. (citations and quotations omitted).

Here, the claims will turn on whether the issuance of the NITUs pursuant to the Trails Act constituted a taking under the Fifth Amendment of the United States Constitution. All named Plaintiffs and the class members are bringing claims premised upon a common legal theory of recovery. Further, each of the named Plaintiffs and proposed class members own fee simple title to lands along the right-of-way in King County, Washington. The criterion of typicality – that the named Plaintiffs' claims be typical of the claims of the potential class – is satisfied. Thus, as in *Fauvergue*, the typicality requirement is satisfied.

### 4. **Adequacy of Representation.**

The named Plaintiffs will fairly and adequately protect the interests of the class. In order to satisfy this criterion, a plaintiff must demonstrate that the counsel for the class is adequate.

"[C]ounsel must be qualified, experienced, and generally able to conduct the proposed litigation" in order for this criterion to be satisfied. *Quinault,* 453 F.2d at 1276. Additionally, there must be no significant conflicts between the named plaintiffs and the potential class members. *See Saunooke v. United States,* 8 Cl. Ct. 327, 333 (1985).

(a) *Plaintiffs are Represented by Experienced Counsel.*

The named Plaintiffs are represented by experienced and highly skilled counsel who satisfy the requirements of RCFC 23. Rule 23(g)(1)(C) requires that "in appointing class counsel, the court (1) must consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." RCFC 23(g)(1)(C). Baker Sterchi Cowden & Rice, L.L.C. has a team of experienced attorneys dedicated to this litigation who more than satisfy the requirements of RCFC 23.

> 1) Brent Baldwin is a member of Baker Sterchi Cowden & Rice, L.L.C. and has been given the highest peer-rated "AV" rating by Martindale Hubbell, has been named as one of Lawdragon's 500 leading lawyers in the United States for the past two years, and noted as one of the Best Lawyers in America for over 15 years. Mr. Baldwin has over 30 years experience representing clients in litigation involving real estate, land use, regulation, commercial transactions, professional liability, product liability, personal injury and related federal and state litigation, is a member of the American College of Trial Attorneys, and has personally tried over 100 cases in federal and state courts around the country.
>
> 2) Thomas S. Stewart is a member of Baker Sterchi Cowden & Rice, L.L.C. and has been given the highest peer-rated "AV" rating by Martindale Hubbell. Mr. Stewart is the former managing partner and CEO of one of Kansas City, Missouri's largest law firms and has 30 years experience in representing clients in litigation involving real estate, land use, regulation, business disputes, product liability, personal injury and related federal and state litigation and has personally tried 45 cases in federal and state courts around the country.

3) Steven M. Wald is a member of Baker Sterchi Cowden & Rice, L.L.C. Mr. Wald has over 13 years experience representing clients in litigation involving real estate, commercial transactions, product liability, personal injury and related federal and state litigation and clerked for a United States District Court judge for two years.

4) J. Robert Sears is an attorney of-counsel of Baker Sterchi Cowden & Rice, L.L.C. Mr. Sears has litigated trails cases in the Court of Claims and has 15 years experience representing clients in litigation involving real estate disputes, government regulation, commercial disputes and professional liability and related federal and state litigation. He served for seven years as Antitrust Counsel for the state of Missouri and prosecuted antitrust cases in federal courts in multistate, class actions and in Multi-District Litigation.

5) Elizabeth McCulley is an associate attorney of Baker Sterchi Cowden & Rice, L.L.C. Ms. McCulley has 8 years experience representing clients in product liability, personal injury and related federal and state litigation.

6) Anne Baggott is an associate attorney of Baker Sterchi Cowden & Rice, L.L.C. Ms. Baggott has 4 years experience representing clients in commercial, real estate, business, product liability, personal injury and related federal and state litigation.

Baker Sterchi Cowden & Rice, L.L.C. is a law firm of more than 50 attorneys, has an extensive support staff, and has exceptional experience in product liability, medical malpractice, commercial, aviation, toxic tort, environmental, construction, fidelity and surety, premises liability, architects' and engineers' malpractice, insurance coverage, real estate, and employment law. The above attorneys currently represent property owners in Trails Act taking cases as follows: *American Country Institute, Inc. v. US*; *Asmusson v. US; Buford v. US; Burgess v. US*; *Capreal Inc. v. US*; *Carolina Plating Works v. US*; *Gregory v. US*; *Rasmuson v. US; Jenkins v. US*; *Longnecker Property v. US*; *Ybanez v. US*; and *Rhutasel v. US*. Baker Sterchi possesses the resources to adequately represent the proposed class.

Plaintiffs' counsel has already conducted initial research and investigation of the King County land title and assessor records to determine the identity and number of potential property owners that are entitled to make a claim for compensation. Additionally, Plaintiffs' counsel has

researched the land title records concerning the creation of the railroad right-of-way at issue in this case. This work has allowed the Plaintiffs' counsel to identify the potential claims in this case.

(b)  *Potential Class Members Have No Conflict of Interest.*

None of the named Plaintiffs have a conflict of interest concerning this matter. Where the class representatives do not possess competing interests, but rather, possess the same interest and objective and suffer the same injury as the class members, there is no conflict between class representatives and class members. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 52 U.S. 591, 623-24 (1997). Each named Plaintiff seeks the same objective as the class members – to recover "just compensation" for property taken from them by the United States Government. As such, Plaintiffs do not have a conflict of interest with class members.

Therefore, because Plaintiffs are represented by adequate counsel, and the named Plaintiffs do not have any conflicts of interest with class members, the Plaintiffs will fairly and adequately protect the interests of the class.

### 5. Superiority.

The superiority requirement "encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action." *Fauvergue*, 86 Fed. Cl. at 101. To establish that a class action is superior to other litigation-management approaches, Plaintiffs must show that "a class action would achieve economi[e]s of time, effort, and expense[], and promote uniformity ... without sacrificing fairness or bringing about other undesirable results." *Id.* In *Fauvergue*, the court held that a class action was the superior method for litigation of takings claims under the Trails Act, and found that "litigating all putative class

members' claims in one action will achieve economies of scale in time, effort, and expense because the court is dealing with common questions of law and fact." *Id*.

Here, a class action is also the superior method of litigation because it allows the Court to achieve economies of time, effort, and expense by litigating the same legal and factual issues – whether the STB's issuance of the NITUs constituted a taking in contravention of the Fifth Amendment of the United States Constitution – in one action, as opposed to more than 750 separate actions. Moreover, the class action method eliminates inconsistent adjudications. Finally, there are little, if any, difficulties for the Court in managing the class, as the proposed class members must opt in to become members of the class, and notice can be provided relatively easily considering that all proposed class members are situated along the same right-of-ways in King County, Washington

Instead of having more than 750 different cases with multiple counsel and experts assigned to different trial judges, there will be only one action to resolve the common factual and legal questions. There will be one Plaintiffs' counsel working with common experts before one judge. Additional efficiencies are gained through the use of common title research and a unified approach to the appraisal of property values. In fact, the most substantial benefit of class certification is enjoyed by the Government. Class certification provides an efficient method for the class members to present their claims and for the Government to answer those claims and resolve legitimate claims in a cost-efficient manner with limited attorneys' fees and expenses.

Federal law provides that where the plaintiff is successful in its action, the Government is required to pay the plaintiffs' attorneys' fees and costs.[1] The attorneys' fees, costs, expert witness and appraisal fees for more than 750 separate actions would greatly exceed the expense for one combined class action. The certification of this case as a class action, therefore, benefits

---

[1] *See* 28 U.S.C. § 2412.

the Government by reducing the potential amount of the Government's liability for Plaintiffs' attorneys' fees and other costs.

## III. CONCLUSION

Because Plaintiffs and the proposed class members have satisfied the five requirements for class certification under RCFC 23(a) and (b), this Court should issue an Order certifying the class and allow Plaintiffs and the proposed class members to jointly seek compensation from the United States for the taking of their property in contravention of the Fifth Amendment of the United States Constitution.

BAKER STERCHI COWDEN & RICE, L.L.C.

Date: May 21, 2009

By   /s/ Steven Wald
    Brent W. Baldwin
    Steven M. Wald
    J. Robert Sears
    1010 Market Street, Suite 950
    St. Louis, MO 63102-1708
    (314) 231-2925
    (314) 231-4857 (facsimile)
    baldwin@bscr-law.com
    wald@bscr-law.com
    sears@bscr-law.com

    -and-

    Thomas S. Stewart
    Elizabeth G. McCulley
    Anne E. Baggott
    2400 Pershing Road, Suite 500
    Kansas City, MO 64108
    (816) 471-2121
    (816) 472-0288 (facsimile)
    stewart@bscr-law.com
    mcculley@bscr-law.com
    baggott@bscr-law.com

    ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 21st day of May 2009, with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this 21st day of May 2009, to:

Bruce K. Trauben
U.S. Department of Justice
Environmental and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044
(202) 305-0238
(202) 305-0506 (facsimile)

ATTORNEY FOR DEFENDANT

                                         /s/ Steven Wald
                                         ATTORNEY FOR PLAINTIFFS