39354
EB

SERVICE DATE – NOVEMBER 28, 2008

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-6 (Sub-No. 465X)

BNSF RAILWAY COMPANY—ABANDONMENT EXEMPTION—IN KING COUNTY, WA

Decided: November 25, 2008

By petition filed on August 11, 2008, BNSF Railway Company (BNSF) seeks an exemption under 49 U.S.C. 10502 from the prior approval requirements of 49 U.S.C. 10903 to abandon a 12.55-mile rail line that extends from milepost 11.25, near Wilburton, to milepost 23.80, in Woodinville, King County, WA (the line). BNSF also seeks an exemption from the offer of financial assistance (OFA) and public use provisions at 49 U.S.C. 10904 and 49 U.S.C. 10905, respectively. Notice of the filing was served and published in the Federal Register on August 29, 2008 (73 FR 51047). The notice indicated that the segment proposed to be abandoned is part of a rail line that was at the time the subject of three other proceedings.[1] BNSF, King County, WA (King County), and the Port of Seattle (Port) are each parties to the transactions. Accordingly, the notice requested that BNSF, the Port, King County, and any other interested persons provide information regarding their arrangements and intentions for future service.

On September 18, 2008, BNSF, the Port, and King County filed a joint pleading in response to the August 29 notice. Concurrently, King County filed a reply in support of BNSF's petition and also a request for issuance of a notice of interim trail use (NITU). We will grant the exemption from 49 U.S.C. 10903, subject to trail use, environmental, and standard employee protective conditions, but will deny the request for exemption from 49 U.S.C. 10904. We note that, because no requests for a public use condition were filed, the request for exemption from the public use provisions at 49 U.S.C. 10905 is moot.

BACKGROUND

According to BNSF, the line was built in 1891 by Northern Pacific Railway Company (Northern Pacific) to connect the Kirkland, WA and Bellevue, WA areas with a major Northern

---

[1] The Port of Seattle–Acquisition Exemption–Certain Assets of BNSF Railway Company, STB Finance Docket No. 35128 (STB served June 20, 2008, and Oct. 27, 2008), BNSF Railway Company–Abandonment Exemption–in King County, WA, STB Docket No. AB-6 (Sub-No. 464X) (STB served Sept. 26, 2008, and Oct. 27, 2008), and BNSF Railway Company–Abandonment Exemption–in King County, WA, STB Docket No. AB-6 (Sub-No. 463X) (STB served Sept. 26, 2008, and Oct. 27, 2008).



STB Docket No. AB-6 (Sub-No. 465X)

Pacific line in Renton, WA. After a series of mergers, BNSF became the owner of the line in 1996.

BNSF states that Safeway, Inc. and Weyerhaeuser, Inc. are the shippers currently being served on the line.[2] BNSF states that the volume of traffic moving to and from the line has been declining steadily in recent years and operations on the line have been marginally profitable solely from an operational standpoint. BNSF states that the annual carloads moving to and from the line over the past 4 years are as follows: 263 carloads in 2005, 244 carloads in 2006, 220 carloads in 2007, and a projected 127 carloads in 2008. According to BNSF, it has experienced economic losses based on the opportunity cost, which it asserts is approximately $36,500,268,[3] as well as maintenance and structure costs, calculated to be at least $125,500.[4] According to BNSF, both shippers have agreed to use a local transload facility located about 10 miles from their facilities. Once the two shippers begin using the transload facility, BNSF contends that the line will no longer generate any freight revenues from traffic originating or terminating on the line.

BNSF states that it has entered into an agreement with the Port, which requires BNSF to donate to the Port the right-of-way, track, and other property and physical assets located on the line between milepost 11.25 and milepost 23.45. Pursuant to a separate agreement, BNSF will sell to the Port the right-of-way, track, and other property and physical assets located on the line between milepost 23.45 and milepost 23.80.

According to the joint response of BNSF, the Port, and King County, BNSF will enter into a trail use agreement with King County for the line. The Port will grant a public multipurpose easement over the line to permit King County to fulfill its trail use responsibilities. BNSF, in a separate proceeding, seeks to transfer its right and obligation to reactivate rail service on the line to King County.[5] The petition in that proceeding will be addressed in a separate decision. As previously noted, King County supports BNSF's proposed exemptions from the

---

[2] On September 2, 2008, Safeway filed a letter supporting the proposed abandonment of the line. In the letter, Safeway states that it will use a local transloading facility to ship its product beginning in September 2008. In addition to the two shippers identified, on September 12, 2008, International Paper Company filed a letter supporting the proposed abandonment and stating that it also will use a local transloading facility to ship its product beginning in November 2008.

[3] BNSF calculated this amount from the asserted net liquidation value of the line, $243,660,000, multiplied by 14.98 percent, the then current nominal rate of return. See Railroad Cost of Capital–2006, STB Ex Parte No. 558 (Sub-No. 10) (STB served Apr. 15, 2008). It should be noted that the 2007 cost of capital was adjusted to 17.24 percent, which would result in an economic loss of $42,006,984 for BNSF. See Railroad Cost of Capital–2007, STB Ex Parte No. 558 (Sub-No. 11) (STB served Sept. 26, 2008).

[4] BNSF calculated this amount based on a normalized maintenance cost of $10,000 per mile to maintain the line in Class 1 operating conditions as used in other Board proceedings.

[5] King County has filed a petition in King County, WA–Acquisition Exemption–BNSF Railway Company, STB Finance Docket No. 35148.

2

requirements of 49 U.S.C. 10904 and 10905, as well as the series of planned transactions. The Board has received no filings in opposition to BNSF's petition.

## DISCUSSION AND CONCLUSIONS

Under 49 U.S.C. 10903, a rail line may not be abandoned without our prior approval. Under 49 U.S.C. 10502, however, we must exempt a proposed abandonment from regulation under 49 U.S.C. 10903 when we find that: (1) continued regulation is not necessary to carry out the rail transportation policy of 49 U.S.C. 10101; and (2) either (a) the transaction or service is of limited scope, or (b) regulation is not necessary to protect shippers from the abuse of market power.

Detailed scrutiny under 49 U.S.C. 10903 is not necessary to carry out the rail transportation policy. By minimizing the administrative expense of an abandonment application, an exemption will expedite regulatory decisions and reduce regulatory barriers to exit [49 U.S.C. 10101(2) and (7)]. An exemption will also foster sound economic conditions by relieving BNSF of the costs of maintaining and operating a marginally profitable line where traffic is expected to cease by the end of this year [49 U.S.C. 10101(5)]. This in turn will encourage efficient rail management by allowing BNSF to apply its assets more productively elsewhere in its rail system [49 U.S.C. 10101(9)]. Other aspects of the rail transportation policy will not be adversely affected.

Regulation of the proposed transaction is not necessary to protect shippers from the abuse of market power. Apparently, Safeway and Weyerhaeuser, the current shippers on the line, have both agreed to use a local transloader to transport their products. There are no other prospects for future rail traffic. Nevertheless, to ensure that Safeway and Weyerhaeuser are informed of our action, we will require BNSF to serve a copy of this decision on them within 5 days from its service date and to certify to us that it has done so. Given our market power finding, we need not determine whether the proposed abandonment is limited in scope.

Under 49 U.S.C. 10502(g), we may not use our exemption authority to relieve a carrier of its statutory obligation to protect the interests of its employees. Accordingly, as a condition to granting this exemption, we will impose the employee protective conditions set forth in Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979).

As indicated, BNSF also seeks an exemption from the OFA provisions of 49 U.S.C. 10904 and from the public use provisions of 49 U.S.C. 10905. In support, BNSF argues that this abandonment should be exempted from these provisions because the shippers will no longer require service over the line; the line is no longer required for common carrier rail service; and there is another public use for the line, as it has entered into an agreement with King County, which seeks to acquire the line for interim trail use/rail banking and possibly commuter rail service.

The OFA provisions reflect a Congressional desire to preserve, whenever possible, any prospect for continuing or resuming rail freight service on corridors that would otherwise be abandoned. See Redmond–Issaquah R.R. Pres. Ass'n v. STB, 223 F.3d 1057, 1061-63 (9th Cir.

STB Docket No. AB-6 (Sub-No. 465X)

2000). While exemptions from 49 U.S.C. 10904 and 49 U.S.C. 10905 have been granted from time to time, they have been granted when the right-of-way is needed for a valid public purpose and there is no overriding public need for continued rail service.[6]

Here, however, petitioner has not justified an exemption from the OFA procedures. It is well-established that OFAs to acquire rail lines for continued rail service or to subsidize rail operations take priority over interim trail use/rail banking.[7] Recently, in Mid-Michigan Railroad, Inc.–Abandonment Exemption–In Kent, Ionia, and Montcalm Counties, MI, STB Docket No. AB-364 (Sub-No. 14X) (STB served June 9, 2008), the Board reaffirmed this approach when it denied a request for exemption even when the railroad had entered into an agreement with a potential trails user. Thus, the desire to establish a trail on the line does not justify an exemption from the OFA process here.

BNSF also mentions the possibility of commuter rail service but does not give any details or a time frame for when this service might be expected. While commuter rail and construction of public roads have been considered as valid public purposes to justify an exemption from the OFA procedures, these instances involved cases where definite plans have been made. See Virginia Beach; CSX Transportation, Inc.–Abandonment Exemption–In Pike County, KY, STB Docket No. AB-55 (Sub-No. 653X) (STB served Sept. 13, 2004); and Union Pacific Railroad Company–Abandonment Exemption–In Pima County, AZ, STB Docket No. AB-33 (Sub-No. 141X) (STB served Feb. 16, 2000).

Because we find no reasonable basis that would justify departure from Congress's objective of providing an opportunity for maintaining rail service, petitioner's request for exemption from the OFA provisions at 49 U.S.C. 10904 will be denied and the OFA process will be allowed to proceed. We note that requests for a public use condition were due September 18, 2008, and, because none was filed, the request for exemption from the public use provisions at 49 U.S.C. 10905 is moot.

As previously mentioned, King County filed a request for issuance of a NITU under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act). King County has submitted a statement of willingness to assume full financial responsibility for the management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way, as required at 49 CFR 1152.29, and acknowledged that the use of the right-of-way for trail purposes is subject to future

---

[6] See Norfolk Southern Railway Company–Abandonment Exemption–In Norfolk and Virginia Beach, VA, STB Docket No. AB-290 (Sub-No. 293X), slip op. at 6 (STB served Nov. 6, 2007) (Virginia Beach); see also CSX Transportation, Inc.–Abandonment–In Barbour, Randolph, Pocahontas, and Webster Counties, WV, STB Docket No. AB-55 (Sub-No. 500) (STB served Jan. 9, 1997) and Southern Pacific Transportation Company–Discontinuance of Service Exemption–In Los Angeles County, CA, Docket No. AB-12 (Sub-No. 172X), et al. (ICC served Dec. 23, 1994).

[7] See Rail Abandonments–Use of Rights-of-Way as Trails, 2 I.C.C.2d 591, 608 (1986) (Trails).

4

STB Docket No. AB-6 (Sub-No. 465X)

reconstruction and reactivation for rail service. By letter filed on October 24, 2008, BNSF supports the issuance of a NITU.

Because King County's request complies with the requirements of 49 CFR 1152.29 and BNSF is willing to negotiate for trail use, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no further Board action is necessary. If no agreement is reached within 180 days, BNSF may fully abandon the line subject to any outstanding conditions. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

The parties should note that operation of the trail use procedures could be delayed, or even foreclosed, by the financial assistance process under 49 U.S.C. 10904. As stated in Trails, 2 I.C.C.2d at 608, OFAs to acquire rail lines for continued rail service take priority over interim trail use/rail banking. Accordingly, if an OFA is timely filed under 49 CFR 1152.27(c)(1), the effective date of this decision and notice will be postponed beyond the effective date indicated here. See 49 CFR 1152.27(e)(2). In addition, the effective date may be further postponed at later stages in the OFA process. See 49 CFR 1152.27(f). Finally, if the line is sold under the OFA procedures, the petition for abandonment exemption will be dismissed and trail use precluded. Alternatively, if a sale under the OFA process does not occur, the trail use process may proceed.

BNSF submitted environmental and historic reports with its petition and notified the appropriate Federal, state, and local agencies of the opportunity to submit information concerning the energy and environmental impacts of the proposed abandonment. See 49 CFR 1105.11. The Board's Section of Environmental Analysis (SEA) has examined the environmental report, verified the data it contains, and analyzed the probable effects of the proposed action on the quality of the human environment. SEA served an environmental assessment (EA) on October 10, 2008, requesting comments by October 24, 2008.

SEA states in the EA that BNSF hired Archaeological Investigations Northwest, Inc. (AINW) to conduct a pedestrian survey of the line. AINW prepared a Historic Resource Inventory of the abandonment and served it on Washington's Department of Archaeology and Historic Preservation (SHPO). The rail line includes three bridges over 50 years old. One bridge, the Wilburton Trestle at Mercer Slough at milepost 11.5, has previously been documented and is listed in the National Register of Historic Places (National Register). Accordingly, SEA recommends that BNSF: (1) be required to retain its interest in and take no steps to alter the historic integrity of all historic properties including sites, buildings, structures and objects within the project right-of-way that are eligible for listing or listed in the National Register until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f (NHPA); (2) be required to report back to SEA regarding any consultations with the SHPO and the public; and (3) be prohibited from filing its consummation notice or initiating any salvage activities related to abandonment (including removal of track and ties) until the section 106 process has been completed and the Board has removed this condition.

STB Docket No. AB-6 (Sub-No. 465X)

SEA received one comment from the Muckleshoot Indian Tribe Fisheries Division (Tribe). The Tribe expressed concern regarding the possible existence of fish barriers, per the Washington Department of Fish and Wildlife's (WDFW) fish passage barrier and assessment, at culvert locations with respect to the Tribe's treaty protected salmonids. In response, SEA recommends that BNSF be required to consult with the WDFW and the Tribe regarding the Tribe's concerns.

The conditions recommended by SEA both in the EA, and in response to the comment filed after the EA was served, will be imposed. Based on SEA's recommendation, we conclude that the proposed abandonment, if implemented as conditioned, will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. Under 49 U.S.C. 10502, we exempt BNSF from the prior approval requirements of 49 U.S.C. 10903 for the abandonment of the above-described line, subject to the employee conditions in Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979), and subject to the conditions that BNSF shall: (1) retain its interest in and take no steps to alter the historic integrity of all historic properties including sites, buildings, structures and objects within the project right-of-way that are eligible for listing or listed in the National Register until the completion of the section 106 process of the NHPA; (2) report back to SEA regarding any consultations with the SHPO and the public; (3) be prohibited from filing its consummation notice or initiating any salvage activities related to abandonment (including removal of track and ties) until the section 106 process has been completed and the Board has removed this condition; and (4) consult with the WDFW and the Tribe regarding the fish barriers.

2. BNSF's request for exemption from the provisions of 49 U.S.C. 10904 is denied and its request for exemption from the provisions of 49 U.S.C. 10905 is denied as moot.

3. BNSF must serve a copy of this decision on Safeway and Weyerhaeuser within 5 days of the service date of this decision and certify to the Board that it has done so.

4. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

5. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

6. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

STB Docket No. AB-6 (Sub-No. 465X)

7. In the absence of an OFA that leads to the purchase or subsidy of the line under 49 U.S.C. 10904, if an agreement for interim trail use/rail banking is reached by May 27, 2009, interim trail use may be implemented; if no trail use agreement is reached by that time, BNSF may fully abandon the line, provided the conditions imposed above are met.

8. An OFA under 49 CFR 1152.27(c)(1) to allow rail service to continue must be received by BNSF and the Board by December 8, 2008, subject to time extensions authorized under 49 CFR 1152.27(c)(1)(i)(C). The offeror must comply with 49 U.S.C. 10904 and 49 CFR 1152.27(c)(1). Each OFA must be accompanied by the filing fee of $1,500. See 49 CFR 1002.2(f)(25).

9. OFAs and related correspondence to the Board must refer to this proceeding. The following notation must be typed in bold face on the lower left-hand corner of the envelope: **"Office of Proceedings, AB-OFA."**

10. Provided no OFA has been received, this exemption will be effective on December 28, 2008. Petitions to stay must be filed by December 15, 2008, and petitions to reopen must be filed by December 23, 2008.

11. In the absence of a successful OFA or an agreement under the Trails Act, pursuant to the provisions of 49 CFR 1152.29(e)(2), BNSF shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by BNSF's filing of a notice of consummation by November 28, 2009, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. If a legal or regulatory barrier to consummation exists at the end of the 1-year period, the notice of consummation must be filed no later than 60 days after satisfaction, expiration, or removal of the legal or regulatory barrier.

By the Board, Chairman Nottingham, Vice Chairman Mulvey, and Commissioner Buttrey.

Anne K. Quinlan
Acting Secretary