# In the United States Court of Federal Claims

No. 09-103L

(Filed: September 28, 2009)

_____

|  |  |  |
|---|---|---|
| **DANIEL and KATHY HAGGART** | ) | Rails-to-trails case; class certification; |
| **on their own behalf and on behalf of a** | ) | RCFC 23 |
| **class of others similarly situated,** | ) | |
|  | ) | |
| **Plaintiffs,** | ) | |
|  | ) | |
| **v.** | ) | |
|  | ) | |
| **THE UNITED STATES,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

_____)

Steven M. Wald, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, MO, for plaintiffs. With him on the briefs were Brent W. Baldwin, Thomas S. Stewart, J. Robert Sears, Elizabeth G. McCulley, and Anne E. Baggott, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, MO, and Kansas City, MO.

Bruce K. Trauben, Trial Attorney, Natural Resources Section, Environmental and Natural Resources Division, Washington, D.C., for defendant. With him on the submissions was John C. Cruden, Acting Assistant Attorney General, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Before the court in this rails-to-trails case is plaintiffs' motion to certify a class action for a class comprised of the named plaintiffs and other landowners who own reversionary rights to property previously used as a railroad in King County, Washington. Plaintiffs claim that operation of Section 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)) ("Trails Act"), "preclude[s] the [p]laintiffs and similarly situated property owners from enjoying their 'reversionary' rights to their property by allowing King County, Washington to use [p]laintiffs' land for a non-railroad

purpose." Pls.' Mem. in Support of Mot. to Certify Class Action at 3 ("Pls.' Mem."); *see also* Third Am. Compl. ¶¶ 51-56. Plaintiffs claim a taking of their property for public use without just compensation in contravention of the Fifth Amendment. Third Am. Compl. ¶¶ 2, 52. The government does not oppose plaintiffs' motion to certify this case as a class action. Indeed, on September 3, 2009, the parties submitted a Joint Proposal Concerning Class Certification ("Joint Proposal") in which they requested that the court certify an opt-in class under Rule 23 of the Rules of the Court of Federal Claims ("RCFC"), on terms set forth in the Joint Proposal. Joint Proposal at 1, 4. This proposal is conceptually acceptable to the court but requires adjustment in certain respects.

## BACKGROUND[1]

Plaintiffs claim that they and all putative class members possess reversionary rights to property in King County, Washington underlying easements formerly held by the Burlington Northern and Santa Fe Railway Company ("Burlington Northern"). Pls.' Mem. at 1, 4. Plaintiffs argue that absent operation of the Trails Act, the property underlying the railroad right-of-way would otherwise be "theirs to enjoy free of any easement." *Id.* at 4. The railroad right-of-way formerly held by Burlington Northern totals 25.45 miles in length. *Id.* at 2. Burlington Northern obtained the easements and established the right-of-way from property owners in 1891. *Id.* The named plaintiffs have identified 1,110 parcels of land underlying the Burlington Northern easements that are held by more than 750 fee owners. *Id.*

"The Surface Transportation Board . . . has authority to regulate the construction, operation, and abandonment of most railroad lines in the United States." *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004). A railroad seeking to abandon part of its rail line is required to either (i) file a standard abandonment application, *see* 49 U.S.C. § 10903, or (ii) request an exemption from the Board. *See* 49 U.S.C. 10502; *see also Caldwell*, 391 F.3d at 1228. "If the [Board] approves a standard abandonment application or grants an exemption and the railroad ceases operation, the [Board] relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." *Caldwell*, 391 F.3d at 1228-29 (citing *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 6-8 (1990)).

The Trails Act provides an alternative to abandonment through a process known as "railbanking." Specifically, Section 8(d) of the Trails Act allows a railroad to negotiate with a trail operator, whether it be a state, municipality, or private group, "to assume financial and managerial responsibility for the operation of the railroad right-of-way as a recreational trail." *Caldwell*, 391 F.3d at 1229 (citing *Preseault*, 494 U.S. at 6-7); 16 U.S.C. § 1247(d). If and when the railroad and trail operator demonstrate a willingness to negotiate a trail use agreement, the

---

[1]The recitations that follow do not constitute findings of fact by the court. Instead, the factual elements recited in this opinion are taken from the parties' filings and are either undisputed or are alleged and assumed to be true, except where a factual controversy is explicitly noted.

Surface Transportation Board issues a notice allowing the railroad right-of-way to be "railbanked," staying the abandonment process. *Caldwell*, 391 F.3d at 1229 (citing 49 C.F.R. § 1121.4). If the railroad and trail operator reach an agreement, the Board retains jurisdiction over the right-of-way for possible future use as a railroad and any "interim use [for trails] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). Section 8(d) of the Trails Act effectively prevents the operation of state laws triggered by the abandonment of a property interest in land that would "result in [the] extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." *Caldwell*, 391 F.3d at 1229 (quoting *Rail Abandonments – Use of Rights-of-Way as Trails*, Ex Parte No. 274 (Sub - No. 13), 2 I.C.C.2d 591 at 12 (1986)).

The railbanking process typically begins either when a rail carrier files an application for abandonment or, as in this case, a request for an exemption. *See* 49 U.S.C. §§ 10903, 10502; *Caldwell*, 391 F.3d at 1230. If the railroad files a request for an exemption and the Surface Transportation Board approves the request, the Board publishes a notice of exemption in the *Federal Register* stating the railway's intent to abandon its rail line. *See* 49 C.F.R. § 1121.4(b); *Caldwell*, 391 F.3d at 1230. A potential trail operator may file a railbanking petition with the Board to prevent abandonment of the track and take advantage of the Trails Act. *See* 49 C.F.R. § 1152.29(a). If the petition meets certain criteria[2] and, within ten days of the filing of the petition, the railroad communicates to the Board its willingness to negotiate with the petitioner, the Board will issue a Notice of Interim Trail Use or Abandonment ("NITU"). *See* 49 C.F.R. § 1152.29(b)(2), (d). The NITU allows the railroad to discontinue service and salvage its equipment without effecting an abandonment, and continues indefinitely to allow interim trail use of the right-of-way. *See* 49 C.F.R. § 1152.29(d)(1); *Caldwell*, 391 F.3d at 1230.

Burlington Northern filed a request for an exemption to abandon a portion of its railroad line that runs from milepost 11.25 to milepost 23.80 with the Surface Transportation Board on August 11, 2008. *See* Pls.' Mem. at 2. Burlington Northern subsequently filed two additional requests for exemptions to abandon the line between mileposts 0.0 and 7.3 and mileposts 5.0 and 10.60. *See id*. The Board issued three NITUs relating to these portions of Burlington Northern's railroad line. *Id*. at Exs. B (NITU issued Oct. 27, 2008), C (NITU issued Oct. 27, 2008), and D (NITU issued Nov. 25, 2008). Pursuant to the NITUs, Burlington Northern and King County entered into one comprehensive Trail Use Agreement that transferred Burlington Northern's interest in the right-of-way to King County as trail operator. Pls.' Mem. at 3.

The named plaintiffs seek to certify a class action and act as representative parties on behalf of those similarly situated individuals whose reversionary property interests in Burlington

---

[2]The petition must include: (1) a map of the right-of-way, (2) a statement indicating that the trail operator will assume financial and legal liability for the right-of-way, and (3) an acknowledgment that the right-of-way may be reactivated for railroad use in the future. 49 C.F.R. § 1152.29(a).

Northern's easements were purportedly "precluded by the operation of the Trails Act and the [Board's] issuance of the NITUs." Pls.' Mem. at 4.  Plaintiffs argue that certification of this cause of action as an opt-in class pursuant to RCFC 23 is proper because "more than 750 owners of property in the same county have a similar Tucker Act claim under the Fifth Amendment for the federal government's taking of their property; the Trails Act imposed an easement for recreational trail use upon their property; each landowner['s] claim arose by reason of the same NITUs issued by the [Board]; and all property owners' titles trace back to original property owners across whose property the railroad originally acquired an easement." *Id.*[3]

## STANDARDS FOR DECISION

RCFC 23 governs class actions in this court.  The rule is modeled after Fed. R. Civ. P. 23, *see King v. United States*, 84 Fed. Cl. 120, 122 n.2 (2008), and cases applying that rule have been examined and followed in interpreting RCFC 23.  *See, e.g.*, *Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005).

The commentary to RCFC 23 notes that this court's rule differs from Fed. R. Civ. P. 23 insofar as this court allows only "opt-in," but not "opt-out," class actions.  RCFC 23, Rules Committee Notes (2002).[4]  An opt-in class "allows each of the unnamed members of the class the opportunity to appear and include themselves in the suit if each is willing to assume the risks of the suit.  This approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff." *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992). Consequently, in an opt-in class, "unidentified claimants are not bound if the case should be ruled in the defendant's favor." *Id.*  By contrast, with an opt-out class, "class members may choose to exclude themselves if they do not want to be bound by the decision or settlements reached in the case." *Black's Law Dictionary* 266 (8th ed. 2004).

RCFC 23 provides:

> (a) Prerequisites. One or more members of a class may sue as representative parties on behalf of all only if:

---

[3]For the purpose of determining whether a class should be certified, the court assumes that the factual allegations contained in plaintiffs' Third Amended Complaint are true. *See Barnes*, 68 Fed. Cl. at 495 (citing *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977)).

[4]"Opt-out classes were viewed as inappropriate in this [c]ourt because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers – the typical focus of an opt-out class – are more limited than those of a district court." *Fisher v. United States*, 69 Fed. Cl. 193, 196 (2006) (citing *Berkley v. United States*, 59 Fed. Cl. 675, 704 (2004)).

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. A class action may be maintained if RCFC 23(a) is satisfied and if:

. . .

(2) the United States has acted or refused to act on grounds generally applicable to the class; and

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by class members; . . . and

(D) the likely difficulties in managing a class action.

RCFC 23(a), (b).

## ANALYSIS

### I.  APPLICABLE CRITERIA

The requirements of Rule 23 can be restated as comprising five elements, each of which must be satisfied for the court to certify the class: (i) numerosity, (ii) commonality, (iii) typicality, (iv) adequacy, and (v) superiority. *See King*, 84 Fed. Cl. at 123; *Barnes*, 68 Fed. Cl. at 494.  Thus, to certify a class, plaintiffs must establish, by a preponderance of the evidence, that the proposed action satisfies each of the five elements. *See Filosa v. United States*, 70 Fed. Cl. 609, 615 (2006).

*A.  Numerosity*

Numerosity as a criterion is somewhat of an anomaly for an opt-in class action. Ordinarily for class actions, the requirement of "numerosity" is satisfied if "the class is so numerous that joinder of all members is impracticable."  RCFC 23(a)(1).  Yet, for an opt-in class action, each participating member of the class must act affirmatively to participate, which amounts to joinder in pragmatic terms.  In all events, however, "impracticable" does not mean "impossible."  *Barnes*, 68 Fed. Cl. at 495 (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  The court determines whether  numerosity is satisfied by analyzing several factors, including the number of class members, the location of members of the proposed class, the size of individual claims, and the nature of the action.  *King*, 84 Fed. Cl. at 123-24 (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1762 at 177, 206-07 (3d ed. 2005)).

Typically, for opt-out class actions, if the named plaintiffs have shown that the number of potential plaintiffs exceeds forty, numerosity has been satisfied.  *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)).  In this respect, the moving plaintiffs need not provide either an exact number or establish the identity of all potential class members; however, they cannot rely on mere speculation in estimating the number of parties.  *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) ("[P]laintiffs are not required to specify the exact number of persons in the class . . ., but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity.").

The description of the proposed class in this instance indicates, with some specificity, who is included in the class.  The parties requested that the court certify an opt-in class consisting of:

> All persons who own an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by [Burlington Northern] in King County, Washington, and who claim a taking of their rights to possession, control, and enjoyment of such lands due to the operation of the railbanking provisions of the  [Trails Act], 16 U.S.C. § 1247(d).  The sections of the subject rights-of-way at issue are described as located between milepost 11.25 near Wilburton to milepost 23.80 in Woodinville and between milepost 0.0 near Woodinville to milepost 7.3 near Redmond and between milepost 5.0 near Kennydale to milepost 10.60 at Wilburton, all in King County, Washington.  These segments were also the subject of three  [NITUs] issued on October 27 and November 2[5], 2008, by  the Surface Transportation Board pursuant to the [Trails Act] and its implementing regulations.  Excluded from this [c]lass are the owners of land that abut segments of the subject right-of-way to which the railroad acquired fee simple title; railroad companies

and their successors in interest; persons who have filed, intervened, or
choose to intervene or opt in to separate lawsuits against the United States
for compensation for the same interests in land; and persons who are
judges and justices of any court in which this action may be adjudicated
or to which it may be appealed.

Joint Proposal at 1-2.[5]  Through a search of the records of the King County Tax Assessor and
Recorder of Deeds, the named plaintiffs have identified more than 1,110 parcels of land on the
25.45 miles of right-of-way affected by the three NITUs issued by the Surface Transportation
Board in October and November of 2008.  Pls.' Mem. at 6.  Plaintiffs claim that because some
individuals appear to own more than one parcel of land, "there are at least 750 potential
[p]laintiffs."  *Id.* at 6-7.

Plaintiffs' basis for estimating the number of potential plaintiffs affected by the NITUs
appears to be reasonable and appropriate.  Further, plaintiffs have already identified 48 class
members, each of whom is named in plaintiffs' third amended complaint.  *See* Third Am. Compl.
¶¶ 9-46.[6]  Thus, plaintiffs have shown the number of class members to be more than adequate to
satisfy the numerosity criterion.  *See King*, 84 Fed. Cl. at 124 (stating that a class size of 152
individuals is "likely sufficient to satisfy the numerosity prong" (citing *Stewart*, 275 F.3d at 226-
27)).

Geographical considerations also are factored into whether the numerosity criterion has
been satisfied, *see King*, 84 Fed. Cl. at 124 (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d
1030, 1038 (5th Cir. 1981)), although this consideration has been taken into account in such
varying ways that it does not often contribute to a particular result.  Some courts have opined that
if "class members are both geographically proximate and easily identified and located by means
of [the moving party's] records, joinder is more likely practicable[,] even in light of a large class
population," and class certification less appropriate.  *Jaynes v. United States*, 69 Fed. Cl. 450,
455 (2006).  Conversely, "[i]f plaintiffs are dispersed geographically, then a court is more likely
to certify a class action."  *King*, 84 Fed. Cl. at 124-25 (citing *Filosa*, 70 Fed. Cl. at 615
(certifying a class action in a situation where plaintiffs were dispersed across twelve states)).

---

[5]The class proposed by plaintiffs in this case contains two affirmative identifiers and four
negative disqualifiers.  Given the precision with which the affected parcels are described in the
proposed class, the inclusion of several of these identifiers and disqualifiers appears to be
unnecessary and arguably to threaten the timely progression of this litigation.  *Cf. Armitage v.
United States*, 18 Cl. Ct. 310, 314 (1989) (finding plaintiffs' proposed class, which contained
"four affirmative identifiers and five negative disqualifiers," created "the potential for improper
self-nomination or self-exclusion," which "would seriously frustrate the prompt resolution of the
merits").  This issue will be addressed *infra* in connection with the scope of the class.

[6]Plaintiffs also name 48 class members in the caption of their Motion to Certify Class
Action.  Pls.' Mot. at 1.

However, the close geographic proximity of potential class members does not by itself preclude class certification. *See Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1276 (Ct. Cl. 1972) ("This is not a widely scattered class.").

Here, all potential plaintiffs own land along a pertinent railroad right-of-way in King County, Washington. Pls.' Mem. at 2, 6. Although not geographically dispersed, the fact that "the potential class consists of [roughly 750] identifiable private landowners located in a defined geographic area . . . creates a situation amenable to providing notice [to the class]." *See Moore v. United States*, 41 Fed. Cl. 394, 397-98 (1998) (citing *Quinault*, 453 F.3d at 1276 (certifying the class where "[m]ost of the allottees live on or near the Reservation . . . and presumably [know] about this suit")). Accordingly, the location of potential class members here does not preclude class certification.

In determining whether numerosity has been satisfied, the court also considers the size of each individual putative plaintiff's claim and whether it "hinders the ability of a plaintiff to file any action at all." *King*, 84 Fed. Cl. at 125. "The smaller the size of the claim and the larger the number of [potential] [class] [members], the less likely it is that, without the benefit of a class action, any plaintiff will recover," and the more likely it is that class certification is appropriate. *Id.* (citing *Barnes*, 68 Fed. Cl. at 499-500) ("[T]he small recoveries expected to be received by these individuals – estimated to be individually in the hundreds of dollars – render it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, the costs of which would certainly exceed their recoveries many-fold.").

In this suit, a large number of potential class members each hold a relatively small size of the land affected by the NITUs. Absent class certification, potential class members may be discouraged from or unable to pursue their individual claims against the government. *See* Pls.' Mem. at 7 ("Here, some individual claims might not be pursued if certification is denied because some of the potential class members' claims and respective amounts in controversy are fairly small relative to . . . the attorneys' fees and other costs of bringing the action[s]."); *Barnes*, 68 Fed. Cl. at 499-500 ("small recoveries . . . render it less likely" that individual plaintiffs would pursue claims without a class action). Thus, the likely size of the individual claims of the potential class members in relation to the likely costs of separate litigation also render joinder impracticable.

In sum, the court finds that the proposed class satisfies the numerosity criterion, giving consideration to (i) the relatively large number of already identified and reasonably estimated class members, (ii) the geographic proximity of all potential plaintiffs, which is amenable to the administration of an opt-in class, and (iii) the likely small size of the individual claims relative to the likely attorneys' fees and costs of bringing those claims.

## B. Commonality

In addressing the commonality criterion, the court should consider (i) whether "there are questions of law or fact common to the class," RCFC 23(a)(2), (ii) whether those common questions "predominate over any questions affecting only individual members," RCFC(b)(3), and (iii) whether "the United States has acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(2). A finding of commonality does not require that the claims be identical; "[r]ather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case." *Barnes*, 68 Fed. Cl. at 496. The threshold for proving commonality "is not high." *King*, 84 Fed. Cl. at 125 (quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) (interpreting Fed. R. Civ. P. 23(a)(2))).

RCFC 23(a)(2) requires that there be "questions of law or fact common to the class." RCFC 23(a)(2). This requirement is met when there is at least "one core common legal question that is likely to have one common defense." *Fisher*, 69 Fed. Cl. at 199; *see also Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'") (citation omitted).

Here, the named plaintiffs and all 750 potential class members are "successors in title to the original fee owners" from which Burlington Northern obtained easements to establish the railroad right-of-way. Pls.' Mem. at 2. The claims of the named plaintiffs and the claims of all potential class members arise from the issuance of three closely related NITUs in October and November of 2008. *See id.* at 2-3 ("Due to the NITUs, [p]laintiffs and putative class members have been deprived of their reversionary property rights and are entitled to just compensation under the Fifth Amendment of the U.S. Constitution."). It is of no consequence with regard to the question of class certification that the Surface Transportation Board issued three separate NITUs. Unlike the more stringent rule regarding joinder, RCFC 20, which requires plaintiffs to assert a right to relief arising out of the same transaction or occurrence, RCFC 23 requires only that the class share common questions of law or fact. *Compare* RCFC 20(a)(1)(A), *with* RCFC 23(a)(2). Here, facts arising from the issuance of the NITUs are common to the class. *See Caldwell*, 391 F.3d at 1233 ("The issuance of the NITU is the only government action in the railbanking process."). A common question of law exists as to whether the NITUs issued on October 27 and November 28, 2008 effected a Fifth Amendment taking of plaintiffs' and putative class members' property along the right-of-way between the designated mileposts.

To maintain a class action once certified, "questions of law or fact common to class members [must continue to] predominate over any questions affecting only individual members." RCFC 23(b)(2). "[F]actual variation among the class grievances is acceptable as long as a common nucleus of operative fact exists." *King*, 84 Fed. Cl. at 126 (quoting *Curry v. United States*, 81 Fed. Cl. 328, 334 (2008)) (internal quotation marks omitted). The fact that

9

computation of the eventual award "will ultimately require individualized fact determinations is insufficient, by itself[,] to defeat a class action." *Curry*, 81 Fed. Cl. at 334 (internal quotation marks omitted); *see also Barnes*, 68 Fed. Cl. at 498 ("[T]here scarcely would be a case that would qualify for class status in this court" if the need to determine damages on an individual basis precluded class certification.).

In this litigation, the determinative question applicable to all putative class members is whether the government's issuance of the NITUs in October and November 2008, which prevented plaintiffs' reversionary property interests from vesting upon Burlington Northern's abandonment of its rail line, constituted a taking of plaintiffs' property in violation of their Fifth Amendment rights.  At this stage of the litigation, there appear to be few factual differences among potential class members.  First, the chain of title for all property owners traces back to the original fee owners. Pls.' Mem. at 9.  Second, the descriptions of the property contained in the original deeds reportedly are similar for most potential class members. *Id*.  Third, the property interests at issue are located along a 25.45-mile stretch of land. *Id.*  The primary factual difference among potential class members concerns the damages each individual class member would be entitled to receive if the court found the government's actions constituted a taking of plaintiffs' property.  Because each parcel is unique, taking into account size, nearby development, and potential use, the amount of damages would necessarily vary among class members. *Id*.  However, as discussed *supra*, differences in the amount of potential damages among putative class members will not alone prevent class certification.   Thus, the question of whether the government's actions constituted a taking predominates over any questions specific to individual landowners.

Moreover, RCFC 23 requires that the United States have "acted or refused to act on grounds generally applicable to the class."  RCFC 23(b)(2).  The acts of issuing the three NITUs in October and November of 2008 generally apply to the class, and this consideration also supports a finding of commonality.

For the foregoing reasons, each of the three considerations regarding commonality has been resolved in plaintiffs' favor.  Thus, the commonality criterion has been satisfied.

## C.  Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  RCFC 23(a)(3).  The threshold for establishing typicality, like that for showing commonality, is "'not high.'"  *Curry*, 81 Fed. Cl. at 335 (quoting *Fisher*, 69 Fed. Cl. at 200).  "Courts 'have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or unitary course of conduct, or if they are based on the same legal or remedial theory.'"  *King*, 84 Fed. Cl. at 126 (quoting *Federal Practice & Procedure* § 1764 at 270-71).  The named representatives' claims need not be identical to those of other members of the class; rather, plaintiffs establish typicality "if they can show that 'even if some factual differences exist between the claims of the named representatives and the claims of

the class . . . the named representatives' claims share the same essential characteristics as the claims of the class at large." *Curry*, 81 Fed. Cl. at 335 (quoting *Fisher*, 69 Fed. Cl. at 200 (citation omitted)).  "Typicality has been found where the named plaintiffs are similarly situated to the rest of the proposed class by virtue of . . . allegations of an analogous statutory violation." *Id*. (citations omitted).

Here, the claims of all potential plaintiffs share "essential characteristics" because all named plaintiffs and putative class members own land affected by the three NITUs issued by the Surface Transportation Board pursuant to the Trails Act in October and November of 2008.  *See* Pls.' Mem. at 10.  Further, all plaintiffs seek a remedy from this court arising from the same governmental action, the issuance of the NITUs, and premised upon a common theory of recovery, that the Surface Transportation Board's issuance of the three NITUs constituted a taking of plaintiffs' property in contravention of the Fifth Amendment.  *Id*.  Thus, the criterion that the named plaintiffs' claims be typical of those of the class is satisfied.

*D.  Adequacy*

To determine whether the representative parties adequately represent the class, the court considers the adequacy of class counsel, and ensures that class members do not "have interests that are 'antagonistic' to one another."  *See Barnes*, 68 Fed. Cl. at 499 (quoting *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)).

RCFC 23 specifies that an attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.  RCFC 23(g)(1)(B).  In determining whether an attorney will "fairly and a[dequately]" represent the class, the court considers:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

RCFC 23(g)(1)(A).  Further, the court may order potential class counsel to provide it with information on counsel's fees, or "any other matter pertinent to the appointment" of class counsel.  RCFC 23(g)(1)(C).

Plaintiffs propose that Brent Baldwin, Thomas S. Stewart, Steven M. Wald, J. Robert Sears, Elizabeth McCulley, and Anne Baggott ("the attorneys"), all of the law firm of Baker Sterchi Cowden & Rice, L.L.C. ("the firm"), be appointed class counsel.  Pls.' Mem. at 11-12.

The attorneys, with the anticipated support of the firm, meet the criteria set forth in RCFC 23(g)(1).  The attorneys and the firm have performed an initial search of the King County land title and assessor records to determine the identity and number of putative class members.  Pls.' Mem. at 12.  They have experience managing complex litigation in areas such as product liability,  antitrust, government regulation, toxic tort, and aviation.  *See id.*  Mr. Baldwin and Mr. Stewart both have extensive trial experience; Mr. Baldwin "has personally tried over 100 cases in federal and state courts around the country" and Mr. Stewart "has personally tried 45 cases in federal and state courts around the country."  *Id*. at 11.   Further, the attorneys and the firm have experience representing property owners in Trails Act takings cases, currently representing property owners in twelve cases that involve claims similar to those of the proposed class in this case.  *See id.* at 12.  The firm also possesses the resources necessary to adequately represent the proposed class.  *Id.*  Therefore, the court concludes that the proposed class counsel will fairly and adequately represent the class.[7]

Neither the named plaintiffs nor the proposed class members in this case have any antagonistic interests.  Rather, the interests of the named plaintiffs and the proposed class members are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions, the issuance of the October and November NITUs.  *See* Pls.' Mem. at 13.

Accordingly, because the proposed class counsel is adequate and the named plaintiffs do not have any interests antagonistic to one another or to members of the proposed class, the court finds the plaintiffs will fairly and adequately represent the interests of the class.

*E.  Superiority*

The superiority criterion is met when a  class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(3).  According to the court in *Barnes*, superiority is met when "'a class action would achieve economies of time, effort, and expenses, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Barnes*, 68 Fed. Cl. at 499 (quoting Fed. R. Civ. P. 23 advisory committee's note (1966 amendment, subdivision (b)(3))).  "Essentially, under this prong of the analysis, the court is obliged to conduct a cost[-]benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action."  *Barnes*, 68 Fed. Cl. at 499 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163-64 (1974)); *see also King*, 84 Fed. Cl. at 128.

---

[7]The court reserves the right to reconsider this decision if the attorneys separate from the firm, or if the firm materially diminishes or no longer has the capacity to provide the support described by plaintiffs' in their motion, or if the firm dissolves while this litigation is pending. Counsel shall promptly notify the court by motion in such event.

In this instance, a class action is a superior method of litigation because it allows the court in potentially one action to resolve the issue of whether the Surface Transportation Board's issuance of the three NITUs in October and November of 2008 constituted a taking in contravention of the Fifth Amendment.[8]  Compared to the joinder or separate adjudication of more than 750 claims, a class action "would achieve economies of time, effort, and expenses, and promote uniformity."  *Barnes*, 68 Fed. Cl. at 499 (internal quotation marks omitted).  All plaintiffs are affected by the same NITUs, the defenses the government will likely use in response to plaintiffs' claims should be identical, and the law which the court will apply to resolve plaintiffs' claims should also be identical.  The most significant difference between individual claims likely will concern the amount of damages that should be awarded to individual plaintiffs should the government be found liable, and as addressed *supra*, differences in individual damages are not determinative of class certification.  *See Barnes*, 68 Fed. Cl. at 498.  Further, procedural fairness would not be compromised by class certification because notice to potential class members can be provided relatively easily; all proposed class members are owners of property situated along a defined right-of-way in King County, Washington.  *See supra*, at 8.  Therefore, conducting this case as a class action is likely to achieve the desired efficiencies in the use of the resources by both the parties and the court.

*F.  Synopsis*

_____For the foregoing reasons, the court finds that all criteria for class action certification have been met and that plaintiffs have shown by a preponderance of the evidence that this case should be certified as a class action.

## II.  CERTIFICATION

When the court grants class certification, it must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC(g)."  RCFC 23(c)(1)(B).

*A.  Composition of the Class*

The court adopts the description of the class proposed by the parties, *see* Joint Proposal at 1-2, quoted *supra*, at 6-7, with changes for purposes of clarity and efficiency, as follows:  First, in accord with RCFC 23(c)(5), where pertinent to address issues specific to the particular segments of the right-of-way subject to the NITUs, the court may divide the class into subclasses based upon the three segments of Burlington Northern's line addressed by the NITUs.  *See* RCFC 23(c)(5); *Barnes*, 68 Fed. Cl. at 499 ("[I]f necessary, this court could later . . . create subclasses of individuals who were subject to particular payroll systems.") (citing Barbara J. Rothstein &

---

[8]Plaintiffs who do not "opt in" to the class would be free to bring individual claims against the government.

Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 7 (Federal Judicial Center 2005), and Federal Judicial Center, *Manual for Complex Litigation* §§ 21.23, 21.24 (4th ed. 2004)).  Second, the court removes as unnecessary from plaintiffs' list of persons excluded from the class those "persons who have filed, intervened, or choose to intervene or opt in to separate lawsuits against the United States for compensation for the same interests in land."  Joint Proposal at 2.  Because this court allows only opt-in class actions, there is no need to exclude persons choosing to participate in separate actions against the United States; to participate in this action, persons must affirmatively "opt in."  *See Buchan*, 27 Fed. Cl. at 223-24.  Moreover, the court will not allow any particular opt-in plaintiff to pursue duplicative actions in this venue.  *See Whalen v. United States*, 80 Fed. Cl. 685, 688-89 (2008).  Third, the court also removes as unnecessary from plaintiffs' list of persons excluded from the class those "persons who are judges and justices of any court in which this action may be adjudicated or to which it may be appealed."  Joint Proposal at 2.  There is no evidence that any judge of the Court of Federal Claims, the Court of Appeals for the Federal Circuit, or the Supreme Court of the United States holds property in King County, Washington affected by the three NITUs at issue in this case.  Accordingly, the class certified by this court is:

> All persons owning an interest in lands located on one or more segments of the railroad corridor or right-of-way on which a rail line was formerly operated by the Burlington Northern and Santa Fe Railway Company in King County, Washington between mileposts (i) 11.25 and 23.80, (ii) 0.0 and 7.3, or (iii) 5.0 and 10.60, who claim a taking of their rights to possession, control, and enjoyment of such lands as a result of one of more of the three Notices of Interim Trail Use or Abandonment issued on October 27 and November 25, 2008.

> The following individuals or entities are excluded from the class: (i) owners of land that abut the defined segments of the subject right-of-way to which the railroad acquired fee simple title and (ii) railroad companies and their successors in interest.[9]

### B.  Definition of Class Issues

In accord with RCFC 23(c)(1)(B), the court defines the primary issue for the class to be whether the Surface Transportation Board's issuance of NITUs on October 27 and November 25, 2008 constituted a taking of plaintiffs' property in violation of the Fifth Amendment, requiring the United States to pay plaintiffs just compensation.  The resolution of this issue will necessarily

---

[9]The parties correctly point out that this definition of the class will require the parties, or the court in the event the parties are unable to agree, to determine which segments of the right-of-way at issue, if any, were held by the railroad in fee simple.  Joint Proposal at 2 n.1.

require the court to consider: (1) whether the class members own compensable property interests in the defined segments of the right-of-way on the date(s) of the relevant NITU(s); (2) the nature of the interests in the railroad line subject to this litigation originally acquired by Burlington Northern or its predecessors retained by the original grantors; and (3) if the court determines that a taking has occurred by the government's actions, the amount of just compensation due each landowner.[10]

### C.  Identification of Class Counsel

This court's rules allow for only "one attorney of record" who "shall be an individual (and not a firm)."  RCFC 83.1(c)(1).  All other attorneys in the matter shall be designated "of counsel" for the class.  *Id*.  Accordingly, plaintiffs shall designate one of Brent Baldwin, Thomas S. Stewart, Steven M. Wald, Robert Sears, Elizabeth McCulley, or Anne Baggott to be the attorney of record.  The law firm of Baker Sterchi Cowden & Rice, L.L.C. and the above-named individuals not chosen as attorney of record shall be designated "of counsel" in future submissions to the court.

### D.  Provision Regarding Attorneys' Fees

RCFC 23(g) allows the court to "order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs."  RCFC 23(g)(1)(C).  On or before October 16, 2009, plaintiffs' counsel shall file a supplemental exhibit to plaintiffs' motion in which counsel shall describe the record-keeping procedures regarding attorneys' fees and other expenses in this litigation and the terms of any existing agreements with plaintiffs regarding the payment of attorneys' fees and other expenses of the litigation.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify class action is GRANTED.  The court certifies a class action in this case and appoints one of Brent Baldwin, Thomas S. Stewart, Steven M. Wald, Robert Sears, Elizabeth McCulley, and Anne Baggott as class counsel, with the particular individual designated as counsel of record by plaintiffs to be named on or before October 16, 2009.  Also on or before that same date, class counsel shall provide the court with the information specified in Part D above regarding attorneys' fees.  On or before October 30, 2009, the parties shall file a joint status report describing a proposed plan for meeting the notice requirements of RCFC 23(c) and addressing further proceedings.

---

[10]As previously discussed, that there are differences in individual damages is not outcome determinative of class certification.  *See supra*, at 10.

Pursuant to RCFC 10(a), all subsequent pleadings in this case shall use the caption shown above.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge