UNITED STATES
COURT OF FEDERAL CLAIMS

---

```
HAGGART, et al.,            )
                           )
          Plaintiffs,      )
                           )
v.                         ) Docket No.: 09-103L
                           )
THE UNITED STATES,         )
                           )
          Defendant.       )
```

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on September 21, 2010.)

Pages:  1 through 24

Place:  Washington, D.C.

Date:   September 21, 2010

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C.  20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HAGGART, et al.,              )
                             )
          Plaintiffs,        )
                             )
v.                           ) Docket No.: 09-103L
                             )
THE UNITED STATES,           )
                             )
          Defendant.         )

                        Tuesday,
                        September 21, 2010

                    Live Tape

          (The following transcript was transcribed from a

digital recording provided by the United States Court of

Federal Claims to Heritage Reporting Corporation on

September 21, 2010.)

               BEFORE:  HONORABLE CHARLES F. LETTOW
                        Judge

               APPEARANCES:

               On behalf of Plaintiffs:

               STEVEN M. WALD, Esquire
               Baker, Sterchi, Cowden & Rice, LLC
               1010 Market Street, Suite 950
               St. Louis, Missouri  63101
               (314) 231-2925

2

APPEARANCES:   (Continued)

On Behalf of Defendant:

BRUCE K. TRAUBEN, Esquire
United States Department of Justice
Natural Resources Division
P.O. Box 26, Ben Franklin Station
Washington, D.C.  20044
(202) 305-0238

1                    P R O C E E D I N G S

2                                      (11:02 a.m.)

3           THE COURT:  Let us begin.  The case before

4    the Court is class action, Daniel and Kathy Haggart on

5    their own behalf and on behalf of a class of other

6    versus United States, No. 09-103L.

7           Mr. Wald, would you identify yourself for

8    the record as counsel for Plaintiff?

9           MR. WALD:  This is Steven Wald for

10   Plaintiffs.

11          THE COURT:  And Mr. Trauben, would you

12   identify yourself as counsel for the government?

13          MR. TRAUBEN:  Yes, this is Bruce Trauben,

14   attorney for the United States.

15          THE COURT:  Thank you.  The parties filed a

16   helpful status report the other day, and laid out the

17   plan for the next step in proceeding to develop this

18   case.

19          Mr. Wald, would you address that plan,

20   please?

21          MR. WALD:  Well, Judge, quite simply the

22   government and the Plaintiffs are working together at

23   this point to establish categories of fees that we can

24   perhaps put into -- and streamline the litigation of

25   this case, and we have also meet with a consulting

1    company to perhaps ultimately retain them to help with

2    mapping issues.

3              THE COURT:  And I take it the retention

4    would be on behalf of both Plaintiffs and the

5    government, is that correct?

6              MR. WALD:  I think that's certainly our

7    intention from Plaintiffs' point of view.

8              THE COURT:  Well, we will hear from Mr.

9    Trauben in a minute.

10             The Court has a question though at the

11   outset in terms of the classification of some of the

12   interests involved.  You mentioned clear fee or clear

13   easement or to be determined.  Could you explain what

14   a clear fee is?  To me that's a fee simple.

15             MR. WALD:  Yes, Your Honor, that's correct.

16             THE COURT:  So you believe at this point

17   some of the Plaintiffs have a fee simple in the

18   property at issue?

19             MR. WALD:  Well, actually, that's a true

20   statement, Your Honor, but what we are doing right now

21   is categorizing what we call the source fees, and so

22   this would be a question of how the railroad initially

23   obtained its interest in the subject railroad line.

24   And so on this spreadsheet that we're talking about

25   when we say "clear fee" we're talking about

1    categorizing particular deeds that conveyed interest

2    to the railroad.

3             THE COURT:  Oh, you're not talking about the

4    interest held by the Plaintiff?

5             MR. WALD:  Right.  I mean, there would be a

6    corresponding interest, we believe, to the Plaintiffs

7    but that's another issue, and so the issue that we're

8    talking about right now is simply what interest did

9    the railroad obtain initially.  Had the railroad

10   obtained an easement or the --

11            THE COURT:  And you believe there are some

12   instances in which the railroad did obtain a fee?

13            MR. WALD:  Yes.

14            THE COURT:  And you believe there are some

15   instances in which under Washington law the railroad

16   obtained an easement?

17            MR. WALD:  Correct, Your Honor.

18            THE COURT:  What does "to be determined"

19   mean in the context?  What sort of issues might arise?

20            MR. WALD:  Well, those are going to be deeds

21   where the government and the Plaintiffs can't agree,

22   where we believe the deeds are easement and the

23   government believes they are fee.  For instance, if in

24   the granting clause a deed said simply that what was

25   being conveyed was the right-of-way to the railroad,

6

1    but it did not say a right-of-way for the

2    construction, operation and maintenance of a railroad,

3    well, that kind of deed is one that we would say is an

4    easement, and I'm confident that the government would

5    say it was fee, and would probably have to be -- at

6    least at this point the parties probably couldn't

7    agree on that kind of a deed.

8              THE COURT:  Does the State of Washington

9    have precedent on that sort of circumstance?

10             MR. WALD:  There is.  I would say that there

11   is precedents going both ways.

12             THE COURT:  All right, thank you.  That

13   sounds like fun.  Let's go through the schedule.

14             You have the classification issues as the

15   first item of business, including potentially the

16   mapping, and then you have third party discovery, and

17   the third party discovery would involve which other

18   entities or persons?

19             MR. WALD:  That would be discovery that the

20   government intends to do, Your Honor, so perhaps I

21   ought to defer that to Mr. Trauben.

22             THE COURT:  All right.  Is there any

23   discovery that Plaintiffs would seek to take?  I

24   understand there are 521 Plaintiffs who thus far

25   indicated joining the class through the Fourth

1     Amendment complaint, is that correct?

2          MR. WALD:  There are.

3          THE COURT:  All right.

4          MR. WALD:  There are.  At this point, Your

5     Honor, we don't have any particular discovery to

6     undertake, but I suppose that could change as we go

7     through with Mr. Trauben what the issues are in the

8     case because it's a big case, and there are a lot of -

9     - probably the property law issues that are going to

10    arise in terms of what interest Plaintiffs hold,

11    whether there is various road kind of issues,

12    intervening roads, and so we do hold open the

13    possibility that there will be some need for discovery

14    later, but for now I think what we are mutually trying

15    to do is at least come to a determination of what the

16    railroad's interest was so we can phase this a little

17    bit.

18         And so on that particular issue in terms of

19    what the railroad's interest was, I don't think that

20    the Plaintiffs are going to need to do any kind of

21    third party discovery.  It doesn't mean we won't be

22    investigating recorded deeds, records, and things like

23    that, but in terms of third party discovery no, but

24    there may be something later to do it.

25         THE COURT:  Let's go to one other thing, Mr.

1    Wald, before I ask you whether you have anything

2    further, and that is the identity of the railroad GNP.

3              MR. WALD:  Right.

4              THE COURT:  Probably Railway, Inc. that

5    apparently has, according to the joint status report,

6    filed a petition with the Surface Transportation Board

7    asking it to vacate the Notice of Interim Trail Use or

8    Abandonment for some of the spur lines.

9              MR. WALD:  Right.

10            THE COURT:  Which entity is GNP?  I'm trying

11    to get an identification of it.

12            MR. WALD:  Yes, well, maybe a little bit of

13    background is helpful.  BNSF owns this rail line, and

14    it sold its interest for, gee, I don't remember the

15    final number, I think it was around $80 million, to

16    the Port of Seattle, and various municipal entities

17    were also involved from Keene County.

18            GNP Railway was not a party to that

19    transaction.  It is a rail operator and my

20    understanding is what it wants to do is deliver some

21    freight, and is trying to get reactivation of rail

22    service for a portion of this line.  And so GNP in its

23    petition for the STB has said that -- it's a novel

24    issue, whether a third party railroad can come in and

25    ask for reactivation of service when that line has

1    been rail banked pursuant to an agreement with the

2    original railroad operator where substantial funds

3    were transferred, and so that's the background of it.

4         THE COURT:  What is the Port of Seattle's

5    position?  It presumably owns whatever interest -- I'm

6    hesitating a little bit, but whatever interest going

7    to Northern Santa Fe.  I think of it that way, but in

8    an event whatever interest it still had or might have

9    had in these rights-of-way.

10        MR. WALD:  I do not believe they have filed

11   a response yet, but I fully expect them to be against

12   GNP's petition.  They have substantial political

13   capital involved in this.  In fact, I read an

14   editorial from one of the municipal party, I think it

15   was, speaking against GNP Railway's petition.

16        There is a really big public process that's

17   going on right now in Keene County to decide what to

18   do with this corridor.  They obviously have rail

19   banked it for a conversion to a recreational trail,

20   but there also has been discussion about possibly

21   using it for dual use for a rail line, and GNP was one

22   of those potential operators, and so I don't know if

23   this is a tactical maneuver for GNP to get some kind

24   of process moving more quickly, or what it is.  It's

25   just a surmise on my part, but the point being that I

1    would be shocked if Keene County and, frankly, BNSF is

2    holding the $80 million or whatever it is aren't

3    adamantly opposed to it.

4         THE COURT:  Why would BNSF have a role in

5    this at this point?

6         MR. WALD:  Well, because they are the ones

7    who received money, and I don't know if there is a

8    triggering mechanism in the -- I imagine there is -- a

9    triggering mechanism in the agreement between BNSF and

10   the Port where if the Port doesn't get the benefit of

11   its bargain, the conversion of the line, maybe money

12   gets disgorged back.  I don't know.

13        But also BNSF has at least the ability to

14   ask for an -- reactivation in the future if it ever

15   wanted to as part of the --

16        THE COURT:  That's part of the rail banking

17   issue.

18        MR. WALD:  Right.

19        THE COURT:  All right.

20        MR. WALD:  So I don't know that they will be

21   against it, but I would certainly imagine that the

22   Port is, but I don't think they plan to respond.

23        THE COURT:  I take it these are basically

24   spur or branch lines that connect with a mainline and

25   have access to the Port of Seattle.  Is that a correct

1   assumption or is that just wrong?

2        MR. WALD:  That's correct.  The mainline and

3   the spur meet up at the north end of this line, and so

4   certainly the spur would have access to the port.

5        THE COURT:  Okay.  Do you have anything

6   further, Mr. Wald, that you would care to add what's

7   in the joint status report and what you've recited

8   here this morning?

9        MR. WALD:  I don't believe so, Your Honor.

10        THE COURT:  All right, thank you.

11        Mr. Trauben?

12        MR. TRAUBEN:  Yes, Your Honor.

13        THE COURT:  I'm sure you have views.

14   Regarding the schedule, do you have anything to

15   comment beyond what's stated in the joint status

16   report?

17        MR. TRAUBEN:  No, although I think that in

18   general when the parties put together these reports

19   and workout that oftentimes we are overly ambitious in

20   what we think we will accomplish by the dates

21   specified, and then when we get into the nitty-gritty

22   of doing the work that, you know, sometimes extensions

23   are required, so in some cases that's why we

24   approximate when the work will be done because we are

25   trying to recognize, or at least in my view that we're

1    recognizing that some flexibility in the schedule will

2    be necessary.

3           THE COURT:  You haven't asked the Court

4    actually to specify a schedule.  You've just laid out

5    a plan for very preliminary maneuvers.  So I don't

6    know if there is a desire on either party at this

7    point to discuss a very hard schedule.

8           MR. TRAUBEN:  Correct, Your Honor.  Speaking

9    for the government, I don't believe that a hard

10   schedule is necessary at this point.  The only firm

11   deadline perhaps would be the date by which we report

12   on our progress to the Court.

13          THE COURT:  All right.  Do you have any

14   comments on the type of interest the railroad had in

15   the rights-of-way?  I say "rights-of-way" because I

16   take it there are at least three segments:  clear fee,

17   clear easement or to be determined.

18          MR. TRAUBEN:  Well, it's the government's

19   view that the railroad, that it is a mosaic of

20   interest acquired by the original predecessor

21   railroad; that we will find that some of the interests

22   conveyed to the railroad were in fee, some conveyed

23   only easements, and then there are some where, you

24   know, we will try and resolve, you know, that could go

25   either way.  It may be a close call.

1           And I'm not sure if in this case that there

2    may also be some segments of rights-of-way where the

3    railroad acquired it by statute, or perhaps by adverse

4    possession, or it could be a -- or by grant.  There is

5    a lot of ways that the railroad could have acquired

6    interest in the length of the right-of-way.

7           THE COURT:  Mr. Wald commented briefly and

8    not very explicitly on the precedence in the State of

9    Washington as to how one reads the particular deeds or

10   instruments of transfer.  Do you have any comment on

11   that, on his description?

12          MR. TRAUBEN:  Well, there is precedence out

13   of Washington.  It is not clear as perhaps it could be

14   but generally in Washington the courts will look at

15   the entire document and try to interpret the document

16   as a whole, and without putting too much weight on any

17   particular aspect of the deed of conveyance, and then

18   we'll go through the various clauses, sometimes it's

19   almost like a tally of, you know, what clause favors

20   which interpretation, and then see where you are when

21   you get to the end.  That seems to be the approach

22   that a lot of courts take in Washington.

23          THE COURT:  Are there baseline precedence by

24   the Supreme Court of Washington on this subject?

25          MR. TRAUBEN:  You know, I'm not sure if it

1    went to the level of the Supreme Court.  I know there

2    is Court of Appeals, there are Court of Appeals

3    decisions out of the state.  The last case I can

4    recall, I believe it's the Supreme Court may have

5    weighed in.  I'm not sure.  I would have to go back

6    and look at this.

7         THE COURT:  I'm not going to hold you to

8    that, Mr. Trauben.  I was just curious.

9         MR. TRAUBEN:  I think the Supreme Court may

10    have decided <u>Kirchauff</u>.  I'm just not sure.

11         MR. WALD:  That's right.

12         THE COURT:  All right.  But there is

13    precedent that both parties will be looking to in

14    sorting out these particular issues, is that correct?

15         MR. TRAUBEN:  Yes.  Yes.

16         THE COURT:  Okay, that helps.

17         Now, can we go to the petition that appears

18    to have been filed by the Surface Transportation Board

19    to vacate the Notice of Interim Trial Use or

20    Abandonment.

21         MR. TRAUBEN:  Yes.

22         THE COURT:  Do you have commentary on that?

23         MR. TRAUBEN:  Not much more than what Mr.

24    Wald said.  I believe it's GNP's position that the

25    Surface Transportation Board has no real discretion in

1    whether or not to grant the petition in that it's

2    almost, you know, mandated by the statute that it must

3    be granted, but I don't know if that fully resolve

4    GNP's problems because Mr. Wald alluded to, there is

5    some money involved in the railroad right-of-way

6    acquisition, acquisition of the right-of-way. So even

7    though GNP may get approval by the STB that doesn't

8    mean that it will necessarily have the funds it may

9    need to acquire the right-of-way or its use.  And so

10   it remains to be seen what happens.  I don't know that

11   the STB's role is the end of it.

12          THE COURT:  Let's look at a slightly

13   different aspect.  This is essentially a third party

14   coming in and saying, please vacate, we want to

15   operate a railroad on at least part or several parts

16   of what had been rail banked.  Has that issue been

17   addressed by the Surface Transportation Board

18   previously?

19          MR. TRAUBEN:  I believe there was another

20   case except -- not by a third party.  I believe it was

21   a precedent that I've seen.  The entity that came back

22   and wanted to reactivate rail service was the former

23   operator.

24          THE COURT:  Oh, that's different.

25          MR. TRAUBEN:  That was different, right.  I

1    believe this may be the first time a third party has

2    come in and attempted to reactivate rail service.

3           THE COURT:  All right.  Let's see.  The

4    parties want essentially this case to go forward for

5    two months under the plan you have proposed and then

6    all you really want is the Court to set a date for

7    further joint status report, and then a further status

8    conference, is that correct?

9           MR. TRAUBEN:  That's correct, Your Honor.

10          THE COURT:  Well, Mr. Trauben, the dates you

11   have picked happen to mesh with a trial that the Court

12   will hold out of town, and accordingly, I would ask

13   both parties to consider whether, for example, we can

14   move the joint status report to a slightly different

15   date.  I'm looking at the calendar and in November, of

16   course, Thanksgiving is the 25th.  I would suggest to

17   you that having a status conference on the afternoon

18   of the 22nd would be appropriate.  Can you do that,

19   Mr. Trauben?

20          MR. TRAUBEN:  Yes, I can, Your Honor.

21          THE COURT:  All right.  What time would be

22   convenient for you in the afternoon?

23          MR. TRAUBEN:  My schedule is open for that

24   day.

25          THE COURT:  Okay.  Well, let's talk with Mr.

1    Wald because, Mr. Wald, you are an hour behind the

2    Court and Mr. Trauben.  Would a status conference on

3    the afternoon of the 22nd be satisfactory for you?

4              MR. WALD:  Yes, Your Honor.  I'm wide open

5    that day.

6              THE COURT:  Do you have a preference as to

7    time?

8              MR. WALD:  No, whatever works for you.

9              THE COURT:  Well, can we say 2:30?  That

10   would be 1:30 your time?

11             MR. WALD:  Sure.

12             THE COURT:  Would that allow you to

13   participate without --

14             MR. WALD:  That's fine, Your Honor.

15             THE COURT:  Pardon?

16             MR. WALD:  That would be just fine, Your

17   Honor.

18             THE COURT:  All right, let's do that.  If

19   you could file your joint status report, in fact, you

20   could file it on the 19th.  I'll give you a couple of

21   extra day.  Is that all right?

22             MR. WALD:  Yes, that would be fine.

23             THE COURT:  All right.  And then we will

24   schedule the actual status conference on the 22nd, and

25   I take it both parties would fairly strongly prefer

1    that it be telephonic, is that --

2              MR. WALD:  That's correct.

3              THE COURT:  That's right.  All right, let's

4    do that.  And we will hope for the best in terms of

5    having these issues emerge.

6              I do have one further question or one

7    further area that we might think about.  There are 521

8    separate Plaintiffs, is that correct again, Mr. Wald?

9              MR. WALD:  Yes, Judge.

10             THE COURT:  All right.  It sounds like

11   you're endeavoring to cluster these so that there are

12   groups of the Plaintiffs with maybe different

13   arguments as to different interests.  Is that what

14   you're trying to do?

15             MR. WALD:  Yes, that's exactly right.

16             THE COURT:  Okay, good.  Now we will wish

17   you all the best in that endeavor because obviously

18   given 521 separate matters would be a little bit

19   unwieldy even though the Court would recognize that

20   the damages, if there are any, would have to be

21   addressed on a case-by-case basis.

22             Okay, anything further, Mr. Wald?

23             MR. WALD:  No, Judge.  Thank you.

24             THE COURT:  Thank you.  Mr. Trauben?

25   //

1          MR. TRAUBEN:  One last thing, Your Honor, is

2     that initially you were inquiring of Plaintiffs'

3     counsel about the third party discovery that may be

4     taken and I didn't address that.

5          THE COURT:  Yes.

6          MR. TRAUBEN:  Just for your information that

7     third party discovery would mainly be directed at the

8     state and county governments to try to determine what

9     interests they hold in various roadways along with --

10    because some of the Plaintiffs' properties do not abut

11    the railroad right-of-way but rather abuts a street or

12    a highway, and it's the Plaintiffs' position that even

13    though they are adjacent to a roadway, that their

14    property interest in fee extends beyond the roadway,

15    all the way to the center line of the railroad right-

16    of-way.

17          And we believe that in some instances that

18    their interest may have been cut off by acquisition by

19    the state or county entity of the roadway.

20          And also there are other instances where the

21    roadways were platted out when the land was

22    subdivided, and the platted lots that do not extend

23    necessarily across the roadways were also platted at

24    the same time and is confined to their meets and

25    bounds.  So there is that issue and that's where the

1     government would intend to focus on third party

2     discovery.

3              THE COURT:  Well, that's interesting.

4     Presumably on some of these plots the local

5     governmental entities required a dedication --

6              MR. TRAUBEN:  Correct.

7              THE COURT:  -- in terms of roadway.

8              MR. TRAUBEN:  That's correct.

9              THE COURT:  Is that right?

10             MR. TRAUBEN:  That's correct.

11             THE COURT:  Okay.  But I take it the

12    argument is that that dedication of the roadway would

13    not have distinguished an easement on the property on

14    the other side of the road.

15             MR. TRAUBEN:  Well, the dedication, if the

16    lot purchased is described by meets and bounds that

17    did not extend beyond the roadway or under the

18    roadway, then I think it's the government's position

19    that the Plaintiffs or their predecessors never had a

20    property interest in the roadway.

21             THE COURT:  Well, that might be so, but they

22    might still have or someone might still have an

23    interest in any easement, or not an easement, but the

24    remainder after an easement had been extinguished.

25             MR. TRAUBEN:  Right, that could be the case.

1          THE COURT:  It might not be the adjacent

2     property, that is, adjacent to the road, it might be

3     someone else.

4          MR. TRAUBEN:  That's right.

5          THE COURT:  Okay.  Well, I can understand

6     that that would be an important topic for discovery.

7          MR. WALD:  And Judge, this is Mr. Wald, if I

8     may.

9          THE COURT:  Yes.

10          MR. WALD:  Those roads have -- may have

11     different characters.  I mean, I think some of them

12     remain private access roads and not public roads.

13     Some are public roads that we think under Washington

14     law clearly conveys an easement to the public, and so

15     I think what we will probably see develop is that we

16     will be doing some further sub-grouping of Plaintiffs

17     based on unique issues like that so that we can try to

18     officially move it forward, and I think that is going

19     to be hopefully part of the process that develops out

20     of us doing this first round of clustering because say

21     we get 10 groups of deeds, it may be that within those

22     groups there are particular road issues that cause us

23     to call off some further substance of those types.

24     And so I think that because we're dealing with so many

25     Plaintiffs the most efficient way to do it is to get

1    groups of Plaintiffs into their common issues, not the

2    main common issues whether there was a taking, but

3    these other ones that deserve further either agreement

4    or briefing, and just take it one step at a time.

5         THE COURT:  Yes, I take it there is also a

6    possibility of abandonment of roads that had once been

7    dedicated or otherwise taken either by condemnation or

8    otherwise.

9         MR. WALD:  I don't know.  There may be,

10   there may be.  I don't know at this point of any

11   abandoned road.  They still seem to be used.

12        THE COURT:  But some of them might be

13   private you say and not public?

14        MR. WALD:  Yes, they are, they are.

15        THE COURT:  They are.  All right, let's just

16   think about this a minute just trying to get a start

17   on what issues might be present, and as you say, it

18   would be useful in classifying the various groups.

19        Okay.  All right.  Well, we'll leave it at

20   that for the moment.  I appreciate the a lurch on that

21   kind of issue though.  Anything further, Mr. Trauben?

22        MR. TRAUBEN:  No, Your Honor.

23        THE COURT:  Mr. Wald?

24        MR. WALD:  No, Your Honor.

25        THE COURT:  All right.  I wish you well.  We

1    will issue a scheduling order, a very brief scheduling

2    order later today that reflects what we've done at

3    this status conference.

4              Thank you very much.

5              MR. WALD:  Thank you, Judge.

6              MR. TRAUBEN:  Thank you, Your Honor.

7              (Whereupon, at 11:31 a.m., the hearing in

8    the above-entitled matter was concluded.)

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

REPORTER'S CERTIFICATE

DOCKET NO.:        09-103L

CASE TITLE:        Haggart et al v. U.S (Live)

HEARING DATE:      September 21, 2010

LOCATION:          Washington, D.C.


        I hereby certify that the proceedings and

evidence are contained fully and accurately on the

tapes and notes reported by me at the hearing in the

above case before the United States Court of Federal

Claims.


                        Date: 9/21/10


                        _____

                        Joyce Boe
                        Official Reporter
                        Heritage Reporting Corporation
                        Suite 600
                        1220 L Street, N.W.
                        Washington, D.C.  20005-4018