UNITED STATES
COURT OF FEDERAL CLAIMS

```
DANIEL HAGGART, ET AL,     )
                           )
           Plaintiffs,     )
                           )
v.                         )  Docket No.:  09-103L
                           )
UNITED STATES,             )
                           )
           Defendant.      )
```

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on February 28, 2011.)

Pages:   1 through 19

Place:   Washington, D.C.

Date:    February 28, 2011

HERITAGE REPORTING CORPORATION
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
DANIEL HAGGART, ET AL,    )
                          )
         Plaintiffs,      )
                          )
v.                        )  Docket No.:  09-103L
                          )
UNITED STATES,            )
                          )
         Defendant.       )
```

                                 Suite 605
                                 National Courts Building
                                 717 Madison Place, N.W.
                                 Washington, D.C.

                                 Monday,
                                 February 28, 2011

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on February 28, 2011.)

The parties met, pursuant to notice of the Court, at 2:31 p.m.

        BEFORE:  HONORABLE CHARLES F. LETTOW
                    Judge

        APPEARANCES:

        <u>For the Plaintiff</u>:

        STEVEN M. WALD, Esquire
        Baker Stenchi Cowden & Rice, LLC
        1010 Market Street, Suite 950
        St. Louis, Missouri  63101
        (314) 231-2925

APPEARANCES ( CONT'D )

       <u>For the Defendant</u>:

       BRUCE K. TRAUBEN, Esquire
       U.S. Department of Justice
       ENR Division
       P.O. Box 26
       Washington, D.C.  20044
       (202) 305-0238

3

1                    P R O C E E D I N G S

2                                                    (2:31 p.m.)

3          THE COURT:  The case before the Court for

4 this afternoon is Haggart v. United States, Docket No.

5 09-103.  This is a class action involving a Rails-to-

6 Trails matter arising in the state of Washington.

7          Mr. Wald, would you identify yourself as

8 counsel for Plaintiffs?

9          MR. WALD:  Good afternoon, Your Honor.  This

10 is Steve Wald for Plaintiffs.

11          THE COURT:  Thank you.  And Mr. Trauben,

12 would you identify yourself, please, as counsel for

13 the government?

14          MR. TRAUBEN:  Yes, thank you, Your Honor.

15 This is Bruce Trauben for the United States.

16          THE COURT:  Thank you.  The Court, as you

17 probably know, entered a protective order Friday, as

18 requested.  That should help you deal with your third-

19 party discovery issues, and anything that might arise

20 as a confidential matter involving one or more of the

21 Plaintiffs, as well.

22          The Court has in hand a joint status report

23 that was filed on Thursday.  Mr. Wald, if you would

24 care to give a briefing on what's going to happen

25 next.

                                                                         4

```
 1                MR. WALD:  Sure, Judge.  Right now we are
 2    waiting for a company called Antium (ph.) to deliver
 3    to us the remainder of the mapping that it is doing.
 4    And of course, the parties would need to check the
 5    accuracy of the map and material and agree with all of
 6    it.
 7                But what we have so far is pretty much
 8    mapping of the agreed-upon easement areas -- we're
 9    waiting for the P areas -- as well.
10                And so once we have that, which is expected
11    at the end of March, then we ought to be able to
12    proceed in a way that is more efficient for everyone
13    according to their -- in terms of litigating the
14    claims.  And so that's why we asked for a couple of, a
15    couple of months, I think until May, to come back to
16    the Court and see where we are at that point.
17                The parties are still trying to come to
18    agreements where they can about what areas are --there
19    has been some progress in that regard, although we
20    certainly will, I think after today have issues,
21    substantial issues, for the Court to resolve.  But
22    we're trying to continue to narrow those down as much
23    as we can.
24                THE COURT:  The Court can recall asking what
25    precedents the state of Washington's Courts had on
```

5

1  any, I guess what I'd call uncertain title matters.
2  If I recall correctly, you had answered, and Mr.
3  Trauben had answered, that there were some precedents,
4  and there were some that were not directly on point.
5  Is that still true?
6            MR. TRAUBEN:  Yes, Your Honor.  The parties
7  have a disagreement about that.  The main case that we
8  have cited is called <u>Lawson</u>, L-A-W-S-O-N, <u>v. State</u>,
9  which is 730 P 2nd 1308.  And the other case that
10 follows Lawson is a Washington Supreme Court case from
11 1986.
12           And there's a Washington Appellate Court
13 case from 1991 called <u>King County Squire Investment</u>
14 <u>Company</u>, which is 801 P 2nd 10.2.  Both of those cases
15 hold Plaintiffs' view that recreational trail use is
16 beyond the scope of a railroad permittee.  I know that
17 the government disagrees about the application of
18 that, but those were the cases that Plaintiffs were
19 referring to in the last conference call.
20           THE COURT:  Thank you.  And again, at some
21 point during this conference this afternoon, the Court
22 will ask whether there is any thought that some of
23 these issues, once they're fleshed out, be referred to
24 the Washington State Courts.  I don't even know if
25 there's a possibility of a reference to the Washington

1   State Courts.

2            MR. TRAUBEN:  Plaintiffs don't believe that

3   that is necessary here, because there's a Washington

4   Supreme Court case that's directly on point.

5            I know that Judge Horn, in another Rails-to-

6   Trails case over the last four or five years, one

7   called Schneider --

8            MR. WALD:  No, that was actually Beref, B-E-

9   R-E-F, and Schroeder.  It's a group of consolidated

10  cases involving a Rails-to-Trails conversion on, along

11  East Lake Samesh, to the east of where the current

12  right-of-way is at issue in this case.

13           And I know Judge Horn -- I know Judge Horn

14  attempted to certify questions in that case.  And the

15  Washington Supreme Court did not accept certification

16  of the questions in that case.

17           So we don't want to suffer a delay here, and

18  we don't think --

19           THE COURT:  All right.  Mr. Trauben, do you

20  have anything to add to that?

21           MR. TRAUBEN:  Your Honor, actually we're

22  talking about a couple different issues here.  The

23  referral related to the request for a referral – the

24  Beref case is my case that I inherited after the

25  proceedings had occurred.

1          But basically there, the parties could not
2    agree on whether the certain deeds to the railroad can
3    be an easement to the predecessor railroad.  And so
4    they certified the question for the Washington Supreme
5    Court, and the Supreme Court refused to hear it,
6    citing precedent.  That is, I think they relied on <u>Ray</u>
7    <u>v. King County</u>, where they addressed some of the very
8    same deeds at issue.
9          In fact, one of the same deeds that's at
10   issue in that case was also before the Supreme Court
11   in a State Court action, the same deed as the
12   railroad.  So they said that they have conclusively
13   dealt with the issue.  And, well, it was not <u>Ray v.</u>
14   <u>King County</u>, it was perhaps another case I just can't
15   think of offhand.
16         But nevertheless, the Supreme Court said
17   that they have already clarified the issue, and no
18   further clarification is necessary.  So they rejected
19   the request for certification of questions.
20         In some of those deeds, actually some deeds
21   in this case have some of the same language as the
22   deeds that were at issue, or still are at issue, in
23   the <u>Beref</u> case that the Court tried to certify to the
24   Washington Supreme Court.  So I don't know that issues
25   relating to title need to be certified.  When we talk
26   about title, we're talking about whether the railroad

8

1    acquired a fee or an easement.  Predecessor railroads
2    required a fee or an easement from the original
3    grantors.
4            Then the other issue that was kind of citing
5    to Lawson and Squire -- that's a different issue,
6    there has been no attempt to certify to the Washington
7    Supreme Court.  And that issue relates to whether
8    trail use, inner trail use is beyond the scope of an
9    easement held by the railroad.  And you know, that is
10   something entirely separate.
11           THE COURT:  All right, the Court understands
12   that.  That's actually helpful.  The identification of
13   the two different sets of issues might ease our path
14   in the future.
15           You undoubtedly – when I say "you," I mean
16   both you, Mr. Wald, and you, Mr. Trauben – are well
17   familiar with those.  But in this particular setting
18   regarding the State of Washington law, the Court is
19   not.  So your description has been helpful.
20           Let me just ask, Mr. Wald, approximately,
21   well, the Court recalls that there are about 750 title
22   instruments or parcels involved?  If I have that
23   right.  About what proportion of those fall in these
24   three categories?  That is, the easement area, the fee
25   areas, and the disputed areas.
26           MR. WALD:  Judge, there are 521 claims that

9

1    were eventually entered -- there's more parcels at

2    some point, I don't have a precise figure for you,

3    Judge, to answer your question.  I know that in the

4    Antium mapping, there were more than – correct me if

5    I'm wrong on this, Mr. Trauben – there were more than

6    100 claimants I believe identified preliminarily as

7    being easement claims.

8              But I just don't, until we have a map and

9    we've worked through that, I won't have a good number

10   for you, Judge.

11             THE COURT:  Okay, thank you.  Mr. Trauben,

12   is there anything you can add to that?

13             MR. TRAUBEN:  Actually, no, I don't have any

14   more information.

15             THE COURT:  All right, let's see.  Are there

16   any other – well, you obviously have pending

17   discovery.  We have to talk a little bit about the

18   discovery you have pending, Mr. Trauben.  I take it

19   it's you who is seeking especially discovery from

20   public entities or state entities in Washington.  And

21   how are you doing on getting responses?

22             MR. TRAUBEN:  Fairly well.  I think every

23   entity has responded with production of documents.

24   And, although I think -- I talked directly -- King

25   County still is searching for some.  And we're still

26   expecting a few additional documents.  But the

1  protective order will deal with -- there was an
2  appraisal that the city of Bellevue is withholding
3  pending the protective order.  The city of Redmond
4  already produced a document in anticipation that the
5  protective order would be ended.  They already
6  produced the document following the procedures
7  anticipated in the order.
8           So we still are expecting the one document,
9  an appraisal.  And so we are in the process of, we
10 have thousands of pages of documents.  There are too
11 many that I have not had a chance to go through even
12 some of them, certainly not all.  And right now it's
13 in our IT department; that is, they'll be scanning and
14 uploading the documents into a database.  When I was
15 ready, I was told it should be ready this week, they
16 were going to put it onto a CD to make it available to
17 Plaintiffs' counsel.  So they'll have everything that
18 we have.
19          THE COURT:  All right, thank you.  I hope
20 the protective order is satisfactory.  If it is not in
21 any respect, would you please tell the Court about any
22 difficulty you might have with it?
23          I mean, we basically tried to follow your
24 model.  There were tiny adjustments to conform to what
25 we would think of as basic legal requirements, but we
26 tried basically to follow your format.  We'll hope it

1   works.

2              MR. TRAUBEN:  Thank you.

3              THE COURT:  Now, we have, at one point, a

4   question arising in this case about a reverter, if I

5   recall correctly.  Anything happen in that regard?

6              MR. TRAUBEN:  Is Your Honor referring to the

7   petition by the railway to vacate the region?

8              THE COURT:  Yes.

9              MR. TRAUBEN:  Right.  I can report on that.

10  What has happened in the meantime is that the

11  creditors of the railway, the GNP Railway, petitioned

12  for an involuntary bankruptcy under Chapter 11.  So

13  that I think was filed February 2.  And then the

14  railway asked the STB to hold the keys in abeyance.

15  Interested parties, including the city of Redmond,

16  King County, Washington, and the Regional Transit

17  Authority, responded to the request to hold it in

18  abeyance, urging the STB to rule on the merits of

19  GNP's petition.

20             But also informing STB that, as an aside,

21  there was a proposal for a meeting with the Public

22  Assistance Office of the STB, sort of to mediate the

23  issues between the parties.  And the King County City

24  Revenue and the Transit Authority indicated in a

25  letter -- the reason why the mediation with the Public

26  Assistance Office should go forward.

                                                                    12

 1                 But they do want the STB to rule on the
 2    merits, to fight the railways request for abeyance.
 3    And the STB has not yet decided whether they're --
 4                 THE COURT:  To the best of your knowledge,
 5    do you know if this other railway, BNP, is conducting
 6    operations during its bankruptcy proceeding?  Does it
 7    have any operations?
 8                 MR. TRAUBEN:  Well, it was operating
 9    apparently, from what I gathered from reading the
10    filings of the STB, GNP was not itself operating, but
11    relying on another railroad to provide services to it.
12                 Now -- it was one of his creditors that put
13    it in bankruptcy.  So you know, I don't believe that
14    GNP itself was currently operating -- not on --
15                 Apparently, Your Honor, there's an internal
16    dispute within the company, and ousted one of the
17    partners.  So this doesn't look promising for the
18    future of GNP.
19                 THE COURT: Okay, thank you.  All right,
20    we'll wait to be educated on those issues, as well.
21                 Mr. Wald, can you think of any issue that
22    will require the Court's active participation and
23    attention in, say, the next four to six months?
24                 MR. WALD:  I think so, Judge.  Plaintiffs do
25    still plan on filing a motion for summary judgment,
26    sooner rather than later, on the particular legal

                                                                    13

 1     issues pertaining to the liability test under,

 2     pursuant to the Federal Circuit -- mostly that would

 3     involve whether the, the right obtained by the

 4     railroad that we can't agree upon with the government

 5     would be seen by the railroad as fee or easement.  And

 6     secondly, whether recreational trail use is beyond the

 7     scope of the easement.

 8              So certainly within the next four to six

 9     months, Plaintiffs intend to file a motion for summary

10     judgment.  But we're really hoping to get through the

11     mapping process first if we could, because that's

12     going to be helpful for everyone to efficiently

13     address the issues.

14              THE COURT:  All right, that's helpful.

15     Let's hear from Mr. Trauben on that subject.

16              If Plaintiffs move for partial summary

17     judgment or summary judgment on those issues, what

18     would the government plan on doing, be doing?

19              MR. TRAUBEN:  Most likely, Your Honor, the

20     government would cross-move.  We feel fairly strongly

21     that the number of the deeds in dispute pay a fee

22     interest to the railroad based on precedent in

23     Washington State.

24              And also, we do not agree with the way that

25     the Plaintiffs are framing the issue on liability;

26     that they tend to leave out of the picture -- we've

1    had a number of cases now where the Plaintiffs'

2    counsel has, it appears that they forget that

3    abandonment is an issue.  And that it's the

4    government's view that there has been no abandonment

5    of the right-of-way by the railroad, in particular

6    because of rail banking.  And the facts of the case do

7    not support abandonment.

8              So the railroad has retained interest.  In

9    Plaintiffs' view, just the mere fact that a trail-use

10   agreement was entered into is proof of abandonment,

11   and the government disagrees with that, the law is the

12   state of Washington.  And we'll argue that, too.

13             THE COURT:  But you think this is a matter

14   of state law, rather than federal law, under the

15   Purcell case?

16             MR. TRAUBEN:  Well, there's a state law

17   component.  In other words, if the issuance of a need

18   to forestalls what otherwise would have been

19   abandonment, then, under state law, then of course we

20   know that the government is liable for a taking.

21             But under state law, if a railroad right-of-

22   way would not have been abandoned, then the government

23   action cannot forestall it, cannot provide for a

24   taking under that --

25             THE COURT:  And, I'm trying to remember the

26   name of the Federal Circuit case, is it Crawford?

15

1   That deals with the statute of limitations issue?

2              MR. TRAUBEN:  _Caldwell_, Your Honor.

3              THE COURT:  That's it, _Caldwell_.  Thank you

4   very much.  And you're going to square your position,

5   Mr. Trauben, on that score with the _Caldwell_ decision,

6   right?

7              MR. TRAUBEN:  I hope to.

8              THE COURT:  Okay, all right.

9              MR. WALD:  Judge, this is Steve Wald.

10             THE COURT:  Yes.

11             MR. WALD:  I don't want to - before I get

12  into the summary judgment argument, but just to tell

13  you the Plaintiffs certainly are aware of the

14  abandonment issue.  However, under _Purcell_ and another

15  couple of Circuit cases, it's clear that liability is

16  established one of two ways.  There are two

17  alternative methods of showing that the land would

18  have reverted.

19             One is by misuse of the easement, which is

20  the scope of the easement issue.  And the second would

21  be abandonment.  And in some cases, in fact many of

22  our cases, we actually argue the abandonment issue.  I

23  was just in Washington Friday arguing the abandonment

24  issue before Judge Wheeler.

25             And it's just that Plaintiffs' view has

26  alternative liability issues, where the government

16

1  sees through wanting to make abandonment the central

2  argument in the case.  So that's where we end up

3  completely disagreeing with the government.

4         THE COURT:  All right, that helps.  What's

5  the name of the case before Judge Wheeler?

6         MR. WALD:  <u>Apreal</u>.

7         THE COURT:  Yes.

8         MR. WALD:  A-P-R-E-A-L.  It's a

9  Massachusetts case.

10        THE COURT:  But you think a similar issue at

11 least arises in that case.

12        MR. WALD:  Yes.  I mean, they all tend to be

13 similar in the sense that there's one of two avenues;

14 and sometimes we argue one, and sometimes we argue

15 both.

16        THE COURT:  All right.  If the Court recalls

17 correctly, <u>Purcell</u> arose under Vermont law?

18        MR. WALD:  It did.

19        THE COURT:  Okay.  It's been a while since I

20 read that case, but that's what I remember.

21        MR. WALD:  That's correct.

22        THE COURT:  Okay, all right.  Anything else

23 that the Court ought to keep in mind on future

24 scheduling?  Mr. Wald?

25        MR. WALD:  Not that I can think of, Judge.

26        THE COURT:  All right.  Mr. Trauben?

Heritage Reporting Corporation
(202) 628-4888

                                                                17

1              MR. TRAUBEN:  No, Your Honor.

2              THE COURT:  Have we covered what you wanted

3    to cover today?

4              MR. WALD:  Yes, we have, Your Honor.  Thank

5    you for your time.

6              THE COURT:  Okay.  Mr. Trauben?

7              MR. TRAUBEN:  Yes, Your Honor.

8              THE COURT:  All right.  I think what we'll

9    do is request, and it will be a request, that you file

10   another join status report on May 24, as you have

11   indicated would be helpful.  And we'll wait until you

12   report on the developments on these various issues,

13   and look forward to either an agreement by you to

14   resolve these issues, or teeing them up by way of

15   cross-motions for summary judgment.

16             Is there anything further, Mr. Wald?

17             MR. WALD:  No, thank you, Judge.

18             THE COURT:  All right, Mr. Trauben?

19             MR. TRAUBEN:  No, Your Honor, thank you.

20             THE COURT:  Thank you very much.  It's been

21   a pleasure.

22             (Whereupon, at 2:54 p.m., the hearing in the

23   above-entitled matter was concluded.)

24   //

25   //

26   //

                                                                    18

1    //

2    //

3    //

4    //

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

                                                                19

                        REPORTER'S CERTIFICATE


       DOCKET NO.:      09-103L

       CASE TITLE:      Haggart, et al, v. U.S.

       HEARING DATE:    February 28, 2011

       LOCATION:        Washington, D.C.


            I hereby certify that the proceedings and
       evidence are contained fully and accurately on the
       tapes and notes reported by me at the hearing in the
       above case before the United States Court of Federal
       Claims.


                            Date:   February 28, 2011


                            Melissa Canning
                            Heritage Reporting Corporation
                            Suite 600
                            1220 L Street, N.W.
                            Washington, D.C.  20005-4018