# In the United States Court of Federal Claims

No. 09-103L

(Filed: April 26, 2012)

```
*********************************
                                  )   Rails-to-trails case; over 500 opt-in
Daniel and Kathy HAGGART on their )   plaintiffs; division of previously certified
own behalf and on behalf of a class of )  class into subclasses under RCFC 23(c)(5)
others similarly situated,        )
                                  )
              Plaintiffs,         )
                                  )
       v.                         )
                                  )
UNITED STATES,                    )
                                  )
              Defendant.          )
                                  )
*********************************
```

Steven M. Wald, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, Missouri, for plaintiffs. With him on the submissions were Brent W. Baldwin, J. Robert Sears, Thomas S. Stewart, and Elizabeth G. McCulley, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, Missouri, and Kansas City, Missouri.

Bruce K. Trauben, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With him on the submissions was Ignacia S. Moreno, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Before the court in this rails-to-trails case is the parties' joint motion to establish subclasses. The court previously certified a class consisting of "[a]ll persons owning an interest in lands located on one or more segments of the railroad corridor or right-of-way on which a rail line was formerly operated by the Burlington Northern and Santa Fe Railway Company in King County, Washington." *Haggart v. United States*, 89 Fed. Cl. 523, 536 (2009). Having now completed the class-notice proceedings, the parties report that Mr. and Mrs. Haggart have been joined by 521 persons and entities who have opted into the action as class plaintiffs. The parties propose that division of the resulting large class into six subclasses will aid in determining whether and which plaintiffs do in fact own compensable property interests in the parcels located along the right-of-way.

**BACKGROUND**

The land at issue was previously held as a right-of-way by the Burlington Northern and Santa Fe Railway Company ("Burlington Northern"). *Haggart*, 89 Fed. Cl. at 528. Rather than abandon the right-of-way, Burlington Northern requested and received Notices of Interim Trail Use or Abandonment ("NITUs") from the federal government's Surface Transportation Board, two on October 27, 2008 and one on November 25, 2008, allowing use of the right-of-way as a trail for the public. *Id*. at 529; *see* National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 28 (codified at 16 U.S.C. § 1247(d)); 49 C.F.R. § 1152.29. Pursuant to the NITU, Burlington Northern's interest in the right-of-way was transferred to King County, Washington, as trail operator. *Haggart*, 89 Fed. Cl. at 529. The class members contend that the issuance of the NITUs constituted a taking of their property interests without compensation in contravention of the Fifth Amendment and seek compensation. *Id*. at 527-28.

On September 28, 2009, the court certified the class. *Haggart*, 89 Fed. Cl. at 536-37. Since that time, the parties have worked to identify the owners of the parcels of property underlying or abutting the railroad right-of-way and the nature of the property interests granted to the railroad over those parcels. This work has led the parties to identify three issues requiring resolution for each parcel of land: (1) whether the parcel is adjacent to the railroad right-of-way; (2) for those parcels adjacent to the railroad right-of-way, whether the right-of-way was granted as an easement or in fee; and (3) for those adjacent parcels granting easements, whether the deed conveying the easement describes the grant by metes and bounds or by other means. *See* Parties' Joint Mot. to Establish Subclasses, ECF No. 74 ("Subclass Mot."), at 2; *see also* Parties' Second Joint Supplement to Joint Mot. to Establish Subclasses, ECF No. 80 ("Second Supplemental Subclass Mot."), at 6-7. These three questions provide the framework for the parties' proposed list of six subclasses:

> 1. Owners of parcels over which the railroad was granted an easement by a deed referencing the railroad right-of-way or street, and the deed expressly states metes and bounds;
>
> 2. Owners of parcels over which the railroad was granted an easement by a deed referencing the railroad right-of-way or street, but the deed does not expressly state metes and bounds — although, defendant contends, in some cases, such metes and bounds are incorporated by reference to another document or are in the chain of title;
>
> 3. Owners of parcels over which the parties dispute whether the railroad was granted an easement or a fee by a deed referencing the railroad right-of-way or street, and the deed expressly states metes and bounds;
>
> 4. Owners of parcels over which the parties dispute whether the railroad was granted an easement or a fee by a deed referencing the railroad right-of-way or street, but the deed does not expressly state metes and bounds — although, defendant contends, in some cases, such metes and bounds are incorporated by reference to another document or are in the chain of title;

     5. Owners of parcels over which the railroad was granted a fee; and

     6. Plaintiffs who the government contends are not adjacent to the railroad right-of-way by virtue of an allegedly intervening fee parcel or street.

*See* Subclass Mot. at 2; Second Supplemental Subclass Mot. at 2. The parties have placed each of the 522 class members into one or more of these six proposed subclasses. *See* Joint Supplement to Joint Mot. to Establish Subclasses, ECF No. 76 ("First Supplemental Subclass Mot."), Exs. 1-5; Second Supplemental Subclass Mot. Ex. A.

## STANDARD FOR DECISION

"When appropriate, a class may be divided into subclasses that are each treated as a class." Rule 23(c)(5) of the Rules of the Court of Federal Claims ("RCFC").[1] The purpose of this rule is to provide the court with the ability to "treat common things in common and to distinguish the distinguishable." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968). Accordingly, subclasses may be certified to provide adequate representation to plaintiffs who have interests that are in some respects adverse to one another, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999), or to distinguish groups of plaintiffs by injury sustained, *see, e.g., Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), or, as here, to isolate common issues of law or fact shared by distinct groups of plaintiffs, *see, e.g., Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 111-12 (E.D. Va. 1980). Because each subclass is "treated as a class," RCFC 23(c)(5), each "subclass must independently satisfy all the prerequisites of [RCFC] 23(a) and (b)." *Manual for Complex Litigation* § 21.23 (4th ed. 2004). Therefore, plaintiffs must show by preponderant evidence that each of the six purported subclasses satisfies the requirements of "(i) numerosity, (ii) commonality, (iii) typicality, (iv) adequacy, and (v) superiority." *Haggart*, 89 Fed. Cl. at 530 (citing *King v. United States*, 84 Fed. Cl. 120, 123 (2008); *Barnes*, 68 Fed. Cl. at 494). Each of these criteria will be examined in turn.

## ANALYSIS

### A. *Numerosity*

The most important factor in determining whether the proposed subclass meets the numerosity requirement of RCFC 23(a)(1) is, naturally, the number of members in the proposed subclass. *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[1][b] (3d ed. 2011). Even so, "[t]he numerosity requirement requires examination of the specific facts of each case

---

[1] RCFC 23(c)(5) is identical to Fed. R. Civ. P. 23(c)(5). In general, "cases applying [Fed. R. Civ. P. 23] have been examined and followed in interpreting RCFC 23." *Haggart*, 89 Fed. Cl. at 529 (citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005)); *see also, e.g., Rasmuson v. United States*, 91 Fed. Cl. 204, 209 & n.6 (2010). The principal difference between Fed. R. Civ. P. 23 and RCFC 23 is that this court's rule provides only for opt-in classes and does not allow opt-out classes. *See Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 785-86 (2011).

3

and imposes no absolute limitations." *Douglas R. Bigelow Tr. v. United States*, 97 Fed. Cl. 674, 677 (2011) (alteration in original) (quoting *General Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980)). Other factors influencing the numerosity inquiry include "the location of members of the proposed class, the size of individual claims, and the nature of the action." *Haggart*, 89 Fed. Cl. at 530 (citing *King*, 84 Fed. Cl. at 123-24).

In this case, each subclass meets the numerosity requirement. There would be 18 members in Subclass One, 116 members in Subclass Two, 78 members in Subclass Three, 156 members in Subclass Four, 163 members in Subclass Five, and 25 members in Subclass Six. *See* First Supplemental Subclass Mot. Exs. 1-5; Second Supplemental Subclass Mot. Ex. A.[2] Subclasses One and Six would be small, but certification of classes of this listed size is by no means unprecedented. *See Bigelow Tr.*, 97 Fed. Cl. at 677 & n.6; *see, e.g.*, *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (eighteen members); *Manning v. Princeton Consumer Discount Co.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (fifteen members), *aff'd*, 533 F.2d 102 (3d Cir. 1976); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534, 536 (D.N.H. 1971) (thirteen members). Apart from the numbers, other factors favor certification. The claims of the members of the subclasses may be so small that they would discourage individual suits. *See Haggart*, 89 Fed. Cl. at 532. And most importantly, numerosity must be considered in the unique context of subclasses. "[J]udicial economy arising from the avoidance of a multiplicity of actions" favors certification, *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), and in this instance, the resolution of the issues pertinent to each subclass has implications for the progress of the case as a whole. Specifically, the claims of Subclass Six (properties allegedly with a potentially intervening parcel or street) will need to be resolved before the claims of some other subclasses, and it would be untenable to try each of the 25 claims individually in that subclass while hundreds of claims in other subclasses remained pending. Correlatively, the claims of Subclass One are inextricably caught up with those of Subclasses Two and Four, and the potential for inconsistent results and delay favors certification. *Id*. The "[d]etermination of practicability [of proceeding on a non-class basis] depends on all the circumstances surrounding [the] case, not on mere numbers," *id.* (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)), and the circumstances here demonstrate that it would be impracticable to consider each class claimant's action separately. The numerosity criterion has been satisfied for each of the six subclasses.

B.  *Commonality*

"In addressing the commonality criterion, the court should consider (i) whether 'there are questions of law or fact common to the class,' RCFC 23(a)(2), (ii) whether those common questions 'predominate over any questions affecting only individual members,' RCFC [23](b)(3), and (iii) whether 'the United States has acted or refused to act on grounds generally applicable to the class,' RCFC 23(b)(2)." *Haggart*, 89 Fed. Cl. at 532. In the court's order granting class certification, the court found that a common, predominant question existed,

---

[2]This listing of subclass members aggregates to 556, more than the 522 overall class members, because some class members would have parcels in more than one subclass. This overlap by itself is no impediment to certification of the subclasses. *See Pruitt*, 85 F.R.D. at 113 (citing *Schmidt v. Interstate Fed. Sav. & Loan Ass'n*, 74 F.R.D. 423 (D.D.C. 1977)).

namely, "whether the government's issuance of the NITUs . . . , which prevented plaintiffs' reversionary property interests from vesting upon Burlington Northern's abandonment of its rail line, constituted a taking of plaintiffs' property in violation of their Fifth Amendment rights." *Id.* at 533. The court also found that the government had acted on grounds generally applicable to the class by issuing the NITUs. *Id.* at 534. The court thus determined that the proposed class satisfied the commonality requirement.

Because this finding of commonality was applicable to the whole class, it necessarily also applies to the proposed subclasses. In addition, division into subclasses, which further accounts for the "few factual differences among [the] class members," *Haggart*, 89 Fed. Cl. at 533, will further delineate commonality for each subclass: while the plaintiffs share in common the predominant question of whether the NITUs constituted a taking, they differ in the locations of their parcels, the interests granted to Burlington Northern by them or their predecessors in title, and the descriptions of those grants. Dividing the class into subclasses based on these distinctions "carve[s] at the joint," isolating those additional questions of law and fact for resolution. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302 (7th Cir. 1995) (Posner, J.) (citing *Hydrite Chems. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890-91 (7th Cir. 1995)), *superseded in another aspect by rule*, Fed. R. Civ. P. 23(f) (adopted 1998), *as recognized in In re Crystal Power Co.*, 641 F.3d 82, 85 n.7 (5th Cir. 2011).[3]

### C. *Typicality*

Each subclass must include a representative party or parties whose "claims or defenses . . . are typical of the claims or defenses of the [sub]class." RCFC 23(a)(3); *see, e.g.*, *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 281 (S.D. Ohio 1997). Thus, even if a class has already been certified with representative plaintiffs, it cannot be divided into subclasses that are themselves "headless." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1129 n.38 (7th Cir. 1979). Here, the parties have placed hundreds of landowners into the six proposed subclasses. The court is satisfied that the plaintiffs listed in each subclass share essentially the same claims and so any will suffice as class representatives. Plaintiffs shall identify a particular subclass member from among those listed in each subclass to serve as subclass representative.

---

[3]Subclass Five is unique in this regard because the parties represent that one of its common, predominant questions — namely, whether these plaintiffs gave their interests in fee — has already been resolved in the affirmative. Perhaps so, but the court must be independently satisfied of this fact before it will dismiss these plaintiffs. *See* RCFC 23(e) & (e)(2) ("The claims, issues, or defenses of a certified class may be settled, *voluntarily dismissed*, or compromised only with the court's approval . . . [and] only after a hearing and on finding that it is fair, reasonable, and adequate." (emphasis added)). If the plaintiffs of Subclass Five are found to have conveyed their interests in fee, they will then be dismissed together as a subclass. *See Kenavan v. Empire Blue Cross & Blue Shield*, No. 91 Civ. 2393, 1996 WL 14446, at *4 (S.D.N.Y. Jan. 16, 1996) (dividing class into three subclasses and dismissing one subclass for failure to exhaust administrative remedies), *aff'd sub nom. Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997) (unpublished); *cf. In re Homestore.com, Inc. Sec. Litig.*, No. CV 01-11115, 2011 WL 291176, at *4 (C.D. Cal. Jan. 25, 2011) (discussing an earlier order in which the court had certified a subclass of dismissed *defendants*).

*Cf. Haggart*, 89 Fed. Cl. at 537 (granting class certification while requesting that plaintiffs designate one of many eligible attorneys as class counsel).

### D. *Adequacy*

The criterion of adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). In addressing this issue, the court must consider, first, whether the class is represented by competent class counsel. *See Barnes*, 68 Fed. Cl. at 499 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The court must then consider, second, whether the class representatives are adequate, which may not be the case if they have interests adverse to other class members. *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997)). In this case, the court has already found that plaintiffs' counsel will adequately represent the class, *see Haggart*, 89 Fed. Cl. at 534-35, and there is no indication that plaintiffs' counsel would fail to adequately represent the subclasses. Correspondingly, the court earlier determined that "the interests of the named plaintiffs and the proposed class members are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment." *Id.* at 535. While particular representatives for the subclasses have not yet been selected, they will necessarily be among those asserting the "same legal claim" and thus will share the same interests as the other members of their respective subclasses. The adequacy criterion has been met.

### E. *Superiority*

The final requirement for class certification is a determination that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). The court's earlier certification of the overarching class reasoned that, "[c]ompared to the joinder or separate adjudication of more than 750 claims, a class action would achieve economies of time, effort, and expenses, and promote uniformity." *Haggart*, 89 Fed. Cl. at 535 (internal quotation marks omitted) (quoting *Barnes*, 68 Fed. Cl. at 499). This remains true, and, as noted in the discussions of numerosity and commonality, *see supra*, the division of the main class into subclasses will further aid in the expeditious resolution of this action with hundreds of class members.

## CERTIFICATION

RCFC 23(c)(1)(B) states that a certification order must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)." The court certifies six subclasses according to the specifications set out below.

### A. *Composition of the Subclasses*

The court adopts the descriptions of subclasses set out in the parties' joint motions, *see* Subclass Mot. at 2; Second Supplemental Subclass Mot. at 2, and divides the overarching class into the following six subclasses:

*Subclass One:* Owners of parcels over which the railroad was granted an easement by a deed referencing the railroad right-of-way or street, and the deed expressly states metes and bounds;

*Subclass Two:* Owners of parcels over which the railroad was granted an easement by a deed referencing the railroad right-of-way or street, but the deed does not expressly state metes and bounds, although metes and bounds may be incorporated by reference to another document or may be in the chain of title;

*Subclass Three:* Owners of parcels over which the parties dispute whether the railroad was granted an easement or a fee by a deed referencing the railroad right-of-way or street, and the deed expressly states metes and bounds;

*Subclass Four:* Owners of parcels over which the parties dispute whether the railroad was granted an easement or a fee by a deed referencing the railroad right-of-way or street, but the deed does not expressly state metes and bounds, although metes and bounds may be incorporated by reference to another document or may be in the chain of title;

*Subclass Five:* Owners of parcels over which the railroad was granted a fee; and

*Subclass Six:* Owners of parcels over which the parties dispute whether the parcel is adjacent to the railroad right-of-way by virtue of an allegedly intervening fee parcel or street.

B. *Definition of Subclass Issues*

The primary issue for the main class, "whether the Surface Transportation Board's issuance of NITUs . . . constitute[s] a taking," *Haggart*, 89 Fed. Cl. at 537, continues to apply to each subclass. Similarly, the three related subsidiary questions set out in the court's original certification order also apply to each subclass. Those three questions are:

(1) whether the class members own compensable property interests in the defined segments of the right-of-way on the date(s) of the relevant NITU(s); (2) the nature of the interests in the railroad line subject to this litigation originally acquired by Burlington Northern or its predecessors retained by the original grantors; and (3) if the court determines that a taking has occurred by the government's actions, the amount of just compensation due each landowner.

*Id*. The question of whether the class members own compensable property interests further requires the sequential determination of the following issues pertinent to particular subclasses:

1. *For Subclass Five:* whether the subclass members granted interests to the railroad in fee.

7

2. *For Subclass Six:* whether the subclass members' parcels are adjacent to the railroad right-of-way, or whether there is an intervening parcel or street, and, if the latter, whether the subclass members nonetheless own property interests in the railroad right-of-way;

3. *For Subclasses Three, Four, and potentially Subclass Six, if it is found that the members of Subclass Six possess parcels adjacent to or property interests in the right-of-way:* whether the subclass members granted interests to the railroad in fee;

4. *For Subclass Two, and potentially Subclasses Four, Five, and Six, if it is found that the members of these subclasses did not grant interests in fee and own parcels adjacent to or property interests in the railroad right-of-way:* whether the subclass members' deeds describe their grants of interest to the railroad by metes and bounds.

### C. Appointment of Subclass Counsel

"[A] court that certifies a class [or subclass] must appoint class counsel." RCFC 23(g)(1). Class counsel is the single attorney of record for the class or subclass, with others assisting the attorney of record designated as "of counsel." RCFC 83.1(c)(1). Accordingly, the court appoints and the plaintiffs shall designate one of Steven M. Wald, Brent W. Baldwin, J. Robert Sears, Thomas S. Stewart, or Elizabeth G. McCulley as class counsel for each proposed subclass. *Cf. Haggart*, 89 Fed. Cl. at 537. As no conflicts exist between the subclasses, the same attorney may represent more than one, or all, of the subclasses. *Cf. Fibreboard Corp.*, 527 U.S. at 856 (citing *Amchem*, 521 U.S. at 627). Those attorneys not appointed as counsel to a subclass shall be designated "of counsel" in future filings with the court.

### CONCLUSION

For the reasons stated, the parties' joint motion to establish subclasses is GRANTED. Plaintiffs shall designate subclass counsel and subclass representatives in a submission to the court filed on or before May 10, 2012.

It is so ORDERED.

                              s/ Charles F. Lettow
                              Charles F. Lettow
                              Judge