# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DANIEL HAGGART AND KATHY HAGGART, et al., For Themselves and As Representatives of a Class of Similarly Situated Persons, | ) ) ) No. 09-103 L ) |
| Plaintiffs, | ) Judge Charles F. Lettow ) |
| vs. | ) *Electronically filed March 5, 2014* ) |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO STRIKE DOCUMENTS FILED BY GORDON WOODLEY, PURPORTEDLY ON BEHALF OF THE KITTINGER DEED CLAIMANTS, SPECIFICALLY ECF FILINGS 169, 169-1, 169-2, 169-3, AND 169-4**

## I.  INTRODUCTION

Gordon Woodley, purportedly on behalf of the Kittinger claimants,[1] filed several documents in this Class Action on March 4, 2014.[2] This is not the first time that Mr. Woodley has attempted to intervene as "personal counsel" for the Kittinger claimants. Previously, Mr. Woodley attempted to insert himself into the summary judgment briefing and he attempted to file a brief in support of the Kittinger claimants. In response to Mr. Woodley's improper prior attempt to intervene, the Department of Justice filed an unopposed motion to strike Mr. Woodley's brief which the Court granted.[3]

---

[1] There are 55 landowners, including Gordon Woodley and his wife, where the original source conveyance to the railroad was the Kittinger deed. The court's opinion on liability granted summary judgment on the landowners' behalf pertaining to the Kittinger deed.

[2] Mr. Woodley filed a motion to file responses and for reconsideration of the Court's February 25, 2014 Order (D.E. 169), a declaration in support of that motion for reconsideration (D.E. 169-1), supporting documents and exhibits (D.E. 169-2), a response to the joint motion for approval of settlement (D.E. 169-3), and a response on plaintiffs' motion for court approval of fees and proposed division of the common fund (D.E. 169-4).

[3] Mr. Woodley attempted to file a brief on behalf of the Subclass IV.B claimants on September 19, 2012 (D.E. 121). Defendant's Unopposed Motion to Strike the Brief, pursuant to Rule 11(a), was filed on September 20, 2012 (D.E. 125). On September 24, 2012, for good cause, the Court struck Mr. Woodley's attempted brief from the record (D.E. 126).

These new pleadings by Mr. Woodley should also be stricken. The Department of Justice has once again filed an Unopposed Motion to Strike documents 169, 169-1, 169-2, 169-3, and 169-4 (D.E. 170). All of these papers were filed in violation of Rule 11(a), which requires that "every pleading, written motion, and other papers must be signed by or for the attorney of record in the attorney's name." All of the Kittinger claimants are represented only by Thomas S. Stewart, as Class Counsel of record in this case, and Mr. Stewart has not signed the papers filed by Mr. Woodley. As a result, just like the prior attempt by Mr. Woodley, these recent filings must be stricken as well.

Class Counsel does not oppose, and certainly supports, the unopposed motion filed by the Department of Justice to strike Mr. Woodley's pleadings. Mr. Woodley's initial filing is, on its face, a motion for reconsideration (D.E. 169), but Mr. Woodley later and incredibly has attempted to file documents in support of approval of the settlement and of the attorneys' fees and division of the common fund with a few wrinkles (D.E. 169-3, 169-4). Although all of Mr. Woodley's pleadings are inappropriate at this point, not only because the Court has already granted preliminary approval on two different occasions and the actual Notice has already been mailed, but **EVERY** Kittinger claimant except Mr. Woodley and his wife have already consented to the proposed settlement!![4] All Class Members, including all Kittinger Class Members, have received adequate due process over many months on several different occasions, the latest of which is this Court's approved Notice pursuant to Rule 23(e). At best, Mr. Woodley's pleadings either demonstrate a lack of understanding or approval with his own individual settlement amount or an attempt to argue about a requested split of attorneys' fees

---

[4] The numerous trips to Seattle by Class Counsel, the numerous meetings Class Counsel has conducted, and the prior disclosures to all Class Members, are adequately described in the Joint Motion for Approval of Settlement and Notice to Class Members and Request to Set Date for Public Hearing (D.E. 161) and Plaintiffs' Motion for Court Approval of Fees and Proposed Division of the Common Fund (D.E. 163). *See also* Section III *infra*.

involving the Kittinger claimants. Since Mr. Woodley, as a Class Member, has an individual right to object and/or speak at the fairness hearing, that part of his strategy already has a remedy. However, to the extent Mr. Woodley's real purpose is to argue about a split of attorneys' fees, which by definition does not impact any other Class Member other than himself, Class Counsel takes this brief opportunity to provide this supplemental memorandum to the Court on the merits of Mr. Woodley's position.

II. **THE DOCUMENTS FILED BY MR. WOODLEY ARE UNTIMELY MISLEADING, AND FALSE**

Document 169, Mr. Woodley's Motion for Reconsideration of the Court's February 25, 2014 Order (D.E. 164), is bizarre. Ostensibly, Mr. Woodley asks the Court to accept the responses of the Kittinger claimants, without offering any comments or objections from any of the Kittinger claimants, and then asks the Court to reconsider its Order because all of the Kittinger claimants have their "due process rights at issue" and the Court's previous order preliminarily approving the settlement and authorizing Notice could "adversely impact their due process rights." Not only is Mr. Woodley's pleading untimely given the fact that the motion for preliminary approval has been on file for quite some time and Notice has already been preliminarily approved and mailed, but Mr. Woodley is completely wrong about any purported violation of any claimants' due process rights.

The parties have repeatedly and consistently set forth all of the due process safeguards that have been put in place in this case. The Joint Motion for Approval of Settlement and of Notice to Class Members and Request to Set Date for Public Hearing (D.E. 161) outlines the joint safeguards of due process that have been in place for years. Likewise, Plaintiffs' Motion for Court Approval of Fees and Proposed Division of the Common Fund (D.E. 163) describes the myriad of communications and meetings with all Class Members over the last several years

3

where full disclosure and transparency have been present since day one.[5] More importantly, as Class Counsel has described, the Notice of the settlement terms and the fairness hearing is the third time **EVERY** Class Member has received detailed disclosures concerning the settlement terms and their individual settlement amounts. Class Counsel has had detailed discussions with every Kittinger Class Member who has requested any individual discussion of any settlement term beyond what has already been disclosed on numerous occasions, including Mr. Woodley and his wife. More importantly, Class Counsel has met individually with both Mr. Woodley and his wife on different occasions to specifically go through the appraisal process, the appraisal amounts, and how the settlement terms were derived.

More importantly, perhaps, Mr. Woodley's assertion that some Kittinger Class Members want further transparency or additional information is totally unfounded and misleading. The fact is that **ALL** Kittinger claimants, except Mr. Woodley and his wife, have already consented to all of the settlement terms, which necessarily include the principal amounts derived from the appraisal process and the 30% share of attorneys' fees from the Common Fund. Class Counsel has already collected all consent forms from all of the Kittinger claimants and they are collectively attached hereto as Exhibit A. The fact is, for whatever reason, Mr. Woodley is the only one of all of the Kittinger Class Members he purportedly represents who has not already specifically consented to the settlement. Mr. Woodley's claims of a lack of due process or for further transparency are a complete sham.

After filing a motion to file responses and for reconsideration of the Court's Order, Mr. Woodley next files a Response to the Joint Motion for Approval of Settlement and of Notice to Class Members (D.E. 169-3). Although Mr. Woodley attempts to set forth the extent of his work

---

[5] Mr. Woodley has in fact attended many of the meetings. In addition, Mrs. Woodley met with Class Counsel individually to discuss the appraisal methodology and specific settlement amount applicable to their parcel.

4

on behalf of the Kittinger claimants,[6] Mr. Woodley specifically states that this Court should give preliminary approval to the settlement terms. The fact that the Court has already given preliminary approval to the settlement terms, and now has Mr. Woodley's endorsement, should comfort the Court. Mr. Woodley goes further, however, and once again seeks "transparency" to assure that the amounts awarded to individual Class Members are properly calculated and that their due process rights are fully respected, but he clearly has no standing to seek such information on behalf of any Class Members, not only under Rule 11, but because all Class Members have already had full disclosure and have already consented. The only other interesting note contained within Mr. Woodley's pleading is that Mr. Woodley apparently wants the fairness hearing held in Seattle. The fact is, however, that over 96% of the Class Members have already consented to the settlement, there has not been one objection of any kind or character received thus far, Mr. Woodley is the only Kittinger Class Member who has not consented, and if Mr. Woodley wants to address the Court during the fairness hearing he is more than welcome to do so by telephone as the Court has already directed.

Mr. Woodley goes further, however, and has also filed a response to Plaintiffs' Motion For Court Approval of Fees and Proposed Division of the Common Fund (D.E. 169-4). Here, Mr. Woodley specifically endorses the method, amount, and calculation of the attorneys' fees requested by Class Counsel. In fact, Mr. Woodley specifically endorses the 30% figure utilized by Class Counsel to determine the amount of attorneys' fees and also endorses the inclusion of the statutory attorneys' fees in the common fund. The only nuance in this particular pleading appears to be a request that the Court supervise the distribution of attorneys' fees and costs paid into the Registry of the Court as opposed to the normal distribution from Treasury to Class Counsel's trust account and then directly to all Class Members pursuant to the Joint Settlement

---

[6] This aspect of Mr. Woodley's involvement will be addressed in Section III *infra*.

Agreement already executed by the parties. Mr. Woodley simply has no cause or grounds for such a request, such a decision violates the terms of the Joint Settlement Agreement, and it is a shame that Mr. Woodley has wasted the Court's time with such a frivolous request.

**III.　A BRIEF LOOK AT THE MERITS OF MR. WOODLEY'S TRUE AGENDA — THE AGREEMENT MR. WOODLEY CITES TO WAS FRAUDULENTLY INDUCED IN THE FIRST PLACE, IS TOTALLY UNENFORCEABLE AS MATTER OF LAW, AND EVEN IF ENFORCEABLE, MR. WOODLEY HAS REPEATEDLY AND MATERIALLY BREACHED IT BECAUSE MR. WOODLEY HAS BEEN NOTHING BUT A DESTRUCTIVE FORCE TO ALL OF THE KITTINGER CLAIMANTS**

Mr. Woodley is a Class Member. He also purports to be "personal counsel" to the Kittinger claimants. Although he might have some disagreement concerning his individual settlement amount, which is primarily based on his inability to understand the issues in this case, his primary agenda item is to litigate the purported fee agreement with BSCR. As a Class Member, pursuant to the Notice approved by the Court and now disseminated to all Class Members, including Mr. Woodley, Mr. Woodley has the right to object to his settlement amount and has the right to comment at the fairness hearing. In essence, he still has the precise remedy as a Class Member as set forth in Rule 23. As an attorney seeking to enforce his purported fee-sharing agreement with BSCR, however, he does not have the right to file pleadings in this Class Action pursuant to Rule 11 and his back door attempt now to litigate the purported fee-sharing agreement or his right to some sort of compensation as "personal counsel" to the Kittinger claimants is untimely, unsightly, and unnecessary to the final resolution of this case. Class Counsel believes that all of Mr. Woodley's pleading should be stricken but, to the extent the Court is interested in any of the merits of Mr. Woodley's false and inflammatory statements, Class Counsel offers these additional statements on the merits.

### A. The Purported Fee-Sharing Agreement was Fraudulently Induced in the First Place

After the Class was formed, and at some point early in the Class Notice period, Mr. Woodley represented to BSCR that he had been retained by several landowners impacted by the Kittinger original source deed. Mr. Woodley would not disclose the names of property owners who had engaged him and would never provide the number of any such property owners. At the time the purported fee-sharing agreement was signed, approximately one-half of the Kittinger claimants had already engaged BSCR. BSCR nevertheless entered into the purported fee-sharing agreement with Mr. Woodley based on his assertion that he had several engaged Kittinger Claimants and that he would not only assist with the engagement of additional Kittinger claimants but that he would not interfere with Class Counsel during the pendency of the litigation.

The agreement never contemplated a failure to abide by the professional ethical responsibilities of counsel. Rather, the expectation was that any clients he brought would be advised of and asked to approve of the fee-sharing agreement in writing in compliance with the Rules of Professional Conduct. But, no clients were ever produced by Mr. Woodley either before or after the agreement. Hence, not only was the agreement void for misrepresentation in inducement by him, but he thereafter failed to perform under it at all.

Mr. Woodley not only failed to produce any actual Kittinger claimants who had engagement agreements with him before the fee-sharing agreement, he also failed to assist with the process of engagement of additional Kittinger claimants and then repeatedly interfered with Class Counsel during the subsequent years. Mr. Woodley was asked on several occasions to provide or forward copies of any engagement letters that he had obtained with any Kittinger claimants. In fact, as recently as this week, Mr. Woodley was once again asked to produce any

7

written agreements of any kind with any Kittinger claimants. Obviously, Mr. Woodley has failed to provide a single engagement letter from any Kittinger claimant, primarily because none exist. Under the ethical rules, and under clear case authority, without any notice to Class Members and without any signed agreements from Class Members, the purported fee-sharing agreement with Mr. Woodley is null and void.

### B. The Purported Fee-Sharing Agreement is Void as a Matter of Law

The purported fee-sharing agreement produced by Mr. Woodley contains a provision that Missouri law applies. Under Missouri law, any fee-sharing agreement between lawyers and different firms must comply with Rule 4.1-5(e) by its terms and must be carried out in accordance with the rule despite whatever contract terms exist. Therefore, absent a fee-sharing agreement which meets the requirements put forth in that ethical rule, the purported fee-sharing agreement is void. Rule 4.1.5(e) provides:

> "A division of fees between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) the client agrees to the association and the agreement is confirmed in writing; and (3) the total fee is reasonable."

Under Missouri law, an attorney alleging breach of a fee-sharing agreement has to affirmatively plead the requisite ethical duties under Rule 4-1.5 to state a claim. Absent a written agreement with the client, which Mr. Woodley does not have and cannot produce, the purported fee-sharing agreement in this instance is void under Rule 4-1.5. *See Neilson v. McCloskey*, 186 S.W.3d 285 (Mo. App. 2005); *Londoff v. Vuylsteke*, 996 S.W.2d 553 (Mo. App. 1999).

The Eighth Circuit has also interpreted Rule 4-1.5(e). *See Eng v. Cummings*, *McClorey*, *Davis & Acho*, 611 F.3d 428 (8th Cir. 2010). In *Eng*, the Eighth Circuit reviewed Rule 4-1.5 in detail, along with all of the precedent from Missouri courts, and specifically ruled that the lack of

notice to all of the clients' the lack of any agreement by the clients, and the lack of their specific consent were all fatal to such a purported fee-sharing agreement. In this case, not only is there no written agreement or written consents with all the Kittinger Class Members, the fact is that the vast majority of Kittinger claimants don't even know who Mr. Woodley is. It is perhaps an unfortunate legal fact, but Rule 4-1.5 mandates a finding that the purported fee-sharing agreement that Mr. Woodley relies on is unenforceable as a matter of law.

> **C. If the Purported Fee-Sharing Agreement is not Unenforceable as a Matter of Law, any Division of Fees Must be in Proportion to the Services Performed and Mr. Woodley's Performance has Continuously Interfered in this Litigation Despite Class Counsel's Repeated Warnings to Cease and Desist**

In the absence of a legally and ethically valid agreement, any division of fees must be in proportion to the services performed by each lawyer/law firm. This analysis, if the Court gets that far, mandates some form of quantum meruit analysis. The division of attorneys' fees must be in proportion to the services performed by each lawyer and, in this case, not only has Mr. Woodley not performed any services but his attempts to perform services on behalf of the Kittinger claimants have interfered, confused and aggravated the Kittinger claimants.[7]

Mr. Woodley has not understood this litigation from the beginning. He has never handled a Rails-to-Trails case and doesn't understand any of the basic legal principles. After the Class Notice period and after all of the deed and title work, and after the work to analyze the deeds and form sub-classes, none of which Mr. Woodley participated in, it came time to work on the summary judgment briefing. Class Counsel met with Mr. Woodley in Seattle and Mr. Woodley represented that he had researched Washington law and that under the Washington

---

[7] Mr. Woodley materially breached the purported fee-sharing agreement in a variety of ways, including but not limited to the lack of performance and lack of clients, attempts to file briefs even though he was specifically instructed not to do so, and recent contacts with Kittinger claimants, including his recent letter and e-mails, when he attempted to usurp Class Counsel's role and to interfere with the Notice approved by the Court.

Constitution the railroad could only obtain an easement and that Class Counsel's belief that certain deeds were fee deeds was wrong. Class Counsel repeatedly requested Mr. Woodley's research on the subject, which was never produced, and Mr. Woodley's legal conclusions were wrong.

Nevertheless, during the summary judgment briefing phase, Mr. Woodley attempted to file a historical brief in support of the Kittinger claimants. Class Counsel specifically told Mr. Woodley that he could not submit a brief in support of the Kittinger claimants but Mr. Woodley attempted to do so anyway. *See* the Defendant's unopposed motion to strike, D.E. 125, and this Court's Order to strike, D.E. 126. As a practical matter, Mr. Woodley's attempt at writing a brief was without citation and was basically an irrelevant dissertation on the history of the early days in Seattle that offered absolutely nothing on the legal issues that the Court had to confront. After trying to explain to Mr. Woodley about why he could not file a brief and why it would be inappropriate to do so, Mr. Woodley refused to listen, and against Class Counsel's specific instructions, attempted to file a brief without authorization and under Steve Wald's name without permission.

The fact is that Mr. Woodley has not made any significant or meaningful contribution in any aspect of this litigation. Mr. Woodley does not represent the Kittinger claimants in this litigation because Class Counsel represents the Kittinger claimants in this litigation. Mr. Woodley has not participated in the settlement or mediation process, fails to understand (intentionally or unintentionally) how the terms were reached and how the settlement was achieved, and has nothing to share with any Kittinger claimant at this point.

Mr. Woodley is now attempting to establish some credentials as the "personal counsel" for the Kittinger claimants because he is attempting to go through the back door after a

settlement has already been reached and preliminarily approved by this Court. After the settlement was finally approved and after this Court approved the Notice to be disseminated, Mr. Woodley began delivering letters to certain Kittinger claimants on Sunday, March 2, 2014. Mr. Woodley did not copy Class Counsel on his letter. In his letter, Mr. Woodley purportedly acts as Class Counsel by asserting that he is personal counsel and is available to review the claimants' settlements, asks them if they consent to the settlement even though Class Counsel has had all of the consents from all of the Kittinger claimants for over a month and a half, and he then slips in a question asking if the claimant agrees to the purported fee-sharing agreement between BSCR and Mr. Woodley. This activity by Mr. Woodley is misleading, misrepresents his role, and is legally flawed.

After Mr. Woodley began distributing letters on Sunday, March 2, 2014, several Kittinger claimants called Class Counsel expressing concern and astonishment. Others sent e-mails. The letter that Mr. Woodley delivered to the Kittinger claimants infers that he participated in the litigation and participated in the settlement of this case. His letter is a complete ruse to get something he never had from the beginning — any form of any agreement with the Kittinger claimants to represent them and/or to share percentage contingent fees. Even though Mr. Woodley had nothing to do with anything in this litigation or the settlement process, he begins his letter with, "After almost 5 years, I am pleased to report that the United States has accepted the terms of the negotiated settlement." *See* Woodley letter, Exhibit B. Mr. Woodley then asks the Kittinger claimants a series of questions, but the real question he wants answered is whether they will sign a document agreeing to the purported fee-sharing agreement with BSCR, an agreement he now needs because, even to this date, he still has no agreement in writing with **ANY** Kittinger claimants and none of them have actually consented to the purported fee-sharing

11

agreement. In short, Mr. Woodley's letter is offensive to Class Counsel and is totally outrageous.

Mr. Woodley and his wife do have some issues with the settlement amount pertaining to their particular parcel of land. The real problem is they simply do not understand the appraisal process. Based on the size of their lot, the per square foot value was less than other surrounding parcels. In addition, the appraisers deducted a substantial sum of money for excavation costs due to the rock cliff behind their house where the abandoned railroad corridor is actually located. Although Mr. Woodley and his wife have expressed their disappointment with the amount of their particular settlement, Mr. Woodley wants to see documentation and information concerning other Kittinger claimants for Mr. Woodley's own benefit, not to assist any of the Kittinger claimants to understand their own particular settlement amount. Finally, Mr. Woodley asks the Kittinger claimants to consent to the settlement, which is an absolute joke because all of the Kittinger Claimants have all specifically consented to their individual settlement amounts in writing, as we so advised him, well before he ever wrote his letter. *See* Exhibit A.

In response to Mr. Woodley's misleading letter, Ms. McCulley sent an e-mail to the Kittinger claimants explaining that the Court had preliminarily approved the settlement and had set a date for the fairness hearing, and also mentioned that Mr. Woodley was handing out letters and that they should not sign anything that refers to Mr. Woodley as personal counsel. The telephone began to ring and the e-mails began to flow.[8] Ms. McCulley talked with approximately 20 of the Kittinger claimants by telephone and many others by e-mail. Not one Kittinger claimant that Ms. McCulley talked to had any recollection of any meeting or conversation with Mr. Woodley regarding this case and only a few even knew who he was.

---

[8] A compilation of representative responses from Kittinger Class Members is attached hereto as Exhibit C. Most Kittinger Class Members don't even know Mr. Woodley, one even called him a "snake in the grass," and many offered to file Affidavits and/or attend the fairness hearing.

12

Many of the Kittinger claimants expressed distrust of Mr. Woodley, they worried that he would interfere with the settlement for his own personal gain, and many offered to provide Affidavits stating that Mr. Woodley has never met with them or represented them. In response to Ms. McCulley's e-mail, Mr. Woodley responded and misrepresented the work he has done on this case once again and once again interfered with Class Counsel's representation. *See* Woodley e-mail, Exhibit D. Class Counsel responded to Mr. Woodley and copied all of the Kittinger claimants explaining that Mr. Woodley's issues are with BSCR and not the Kittinger claimants and that his questions were false and misleading. *See* Stewart e-mail, Exhibit E. In addition to all of the Kittinger claimants who have called Ms. McCulley over the past several days expressing concern over Mr. Woodley's interference, several have directly expressed that they do not authorize Mr. Woodley to represent them or speak on their behalf. *See* Exhibit C. The fact is that Mr. Woodley's interference has been ongoing even though Class Counsel has repeatedly requested that he cease and desist.

Mr. Woodley makes other claims over work on this case that are laughable. Mr. Woodley claims that he did legal research, but the only legal research he did was specifically struck by the Court. Mr. Woodley also states that he transcribed the Kittinger deed — wow, and so what — a ministerial act that adds nothing. Mr. Woodley's assertions that he participated in the analysis and review of documents and/or deeds and/or assisted through the settlement process is patently false. The bottom line is that even if the Court would reach the issue of some division of legal fees proportional to the services performed by each lawyer, Mr. Woodley is entitled to nothing, particularly in view of his actions set out above which have often worked against the interests of the Kittinger claimants, such as filing a brief that the Court struck, and his actions to

obfuscate and delay, all in his personal interest at the expense of orderly and expedient resolution of this case.

## IV. CONCLUSION

The documents filed by Mr. Woodley, documents 169, 169-1, 169-2, 169-3, and 169-4 should be stricken by the Court. To the extent Mr. Woodley objects as a Class Member, his remedy is to fill out the Comments Form attached to the Notice and request to speak at the fairness hearing. To the extent this Court considers Mr. Woodley's back door attempt to establish credibility for the purported fee-sharing agreement, the purported fee-sharing agreement is void as a matter of law because it does not comply with Rule 4-1.5(e). If the Court goes any further into this issue by examining the relative contributions of Mr. Woodley and Class Counsel, Mr. Woodley's repeated attempts to interfere with Class Counsel should not be rewarded and, as a result, he is not entitled to any fees.

Respectfully submitted,

Date: March 5, 2014　　　　　　　　　　BAKER STERCHI COWDEN & RICE, L.L.C.

By　*/s/ Thomas S. Stewart*
　　Thomas S. Stewart
　　Elizabeth G. McCulley
　　2400 Pershing Road, Suite 500
　　Kansas City, MO 64108
　　(816) 471-2121
　　(816) 472-0288 (facsimile)
　　stewart@bscr-law.com
　　mcculley@bscr-law.com

　　-and-

　　Steven M. Wald
　　J. Robert Sears
　　1010 Market Street, Suite 950
　　St. Louis, MO 63102-1708
　　(314) 231-2925
　　(314) 231-4857 (facsimile)

wald@bscr-law.com  
sears@bscr-law.com  
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

  I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 5th day of March, 2014, with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this same day, to:

BRUCE K. TRAUBEN  
Natural Resources Section  
Environment and Natural Resources Division  
United States Department of Justice  
P.O. Box 663  
Washington, D.C. 20044-0663  
E-mail: bruce.trauben@usdoj.gov  
**ATTORNEY FOR DEFENDANT**

              */s/ Thomas S. Stewart*  
              ATTORNEY FOR PLAINTIFFS

4846-5085-5449, V. 1