**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DANIEL & KATHY HAGGART, et al., | ) | |
| For Themselves and As Representatives | ) | |
| of a Class of Similarly Situated Persons, | ) | No. 09-103L |
| | ) | |
| Plaintiffs, | ) | Judge Charles F. Lettow |
| v. | ) | |
| | ) | *Electronically filed on June 17, 2014* |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**CLASS COUNSEL'S MOTION TO AMEND OR ALTER
THE FINAL JUDGMENT PURSUANT TO RULES 52(b), 59(e) AND 60(b)**

A settlement agreement was reached in this case which gained the full approval of the authorized representative of the United States Attorney General. This Court then preliminarily approved the parties' settlement plan and allowed notice of the proposed settlement to be provided to the entire Class. After the Class was given an opportunity to comment on the settlement, the Court held a Fairness Hearing pursuant to Rule 23 on March 28, 2014 in Washington, D.C. Following the Fairness Hearing, this Court issued its Opinion and Order on May 21, 2014 (D.E. 186). In accordance with this Court's Opinion and Order, the judgment was entered by the clerk on May 21, 2014. Now, 27 days after the judgment was entered, the judgment has not been paid because one Class Member is attempting to hold the other 252 Class Members hostage.

## I.   CURRENT PROCEDURAL POSTURE

During the Fairness Hearing on March 28, 2014, as this Court is very much aware, three Class Members participated. (*See* D.E. 186 at p. 6). The Court rendered its Opinion and Order on May 21, 2014 and judgment was entered that same day. The judgment provides continuing interest if payment is not made before May 31, 2014 at an annual interest rate of 4.2%. Since the

judgment has not yet been paid, and since interest is running at approximately $16,000 per day, additional interest has now accrued at approximately $273,000.

The United States believes that it is statutorily prohibited under 31 U.S.C. § 1304 from paying the settlement until the judgment is indeed "final"—meaning there is no longer an opportunity to appeal because either the objectors waive any rights to appeal, the time for any purported right to appeal expires, or all actual appeals are exhausted.  Since the Fairness Hearing and the Court's Opinion and Order, two of the objectors who attended the Fairness Hearing by telephone have explicitly waived any right to appeal that they might have.  As a result, one Class Member, the Woodleys, are the only Class Member out of 253 with any purported rights of appeal and, under the United States' interpretation of what final means, the United States is now delaying payment for the other 252 Class Members.

The United States is apparently concerned about any Class Members' ability to appeal the Opinion and Order (D.E. 186), thereby potentially altering the final dollars paid by Treasury. The United States would have been ready to begin processing payment of the settlement in advance of May 31, 2014 but for the objectors.   Since it is now costing the government approximately $16,000 per day in interest, it is in the interest of both the United States and the other 252 Class Members to stop additional interest from accruing, treat the judgment as final for the 252 Class Members who have either consented to the settlement or specifically waived any purported appellate rights, get all of the other 252 Class Members paid as soon as possible, and let the Woodleys attempt to appeal.

## II.   RULES 52(b), 59(e) AND 60(b) PROVIDE VEHICLES BY WHICH THIS COURT CAN AMEND THE JUDGMENT

Rules 52, 59, and 60 provide avenues to file motions to amend the judgment or to seek other relief from the judgment.  Specifically, RCFC 52(b) specifically provides that "on a party's

motion filed no later than 30 days after the entry of judgment, the Court may amend its findings—or make additional findings—and may amend the judgment accordingly."   RCFC 59(e) pertains to motions to alter or amend a judgment and specifically provides that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." In addition, RCFC 60(b) provides that the Court may relieve a party or its legal representative from a "final judgment, order, or proceeding" for various reasons, including "any other reason that justifies relief."

Under Treasury's interpretation of 31 U.S.C. § 1304, the Woodleys are holding the other 252 Class Members hostage and are preventing them from being paid.  As a result, under Rules 52(b), 59(e) and 60(b), the parties request that the judgment be amended to sever the Woodleys from the other 252 Class Members in some fashion so that the remaining 252 Class Members can immediately be paid.  The judgment for the remaining 252 Class Members is a final judgment with no threat of appeal (because all have specifically consented), even under the Treasury's interpretation of what constitutes a "final" judgment.  The United States is not certain that the severance of the Woodleys or the creation of a sub-class will render the judgment relating to the Woodleys as final and not subject to appeal because it appears to them that any appeal by an objecting Class Member could affect the entire judgment entered, but a mere amendment to the judgment to list the Woodleys separately should ameliorate their concerns.

**III.   SINCE THE WOODLEYS HAVE NO RIGHT TO APPEAL, AND IF THEY DO HAVE ANY PURPORTED RIGHT TO APPEAL IT SHOULD NOT IMPACT THE OTHER 252 CLASS MEMBERS, THIS COURT SHOULD AMEND THE FINAL JUDGMENT BY ENTERING JUDGMENT FOR THE 252 CLASS MEMBERS SEPARATELY FROM THE WOODLEYS IN SOME FASHION**

This is an opt-in class.  As the Court is well aware, although Rule 23 of the Fed.R.Civ.P. is substantially similar to RCFC 23, there are significant differences between an opt-in class and

an opt-out class. (*See* D.E. 186, fn. 10). In an opt-in class, as opposed to an opt-out class, when the Court certifies a case as an opt-in class, the Court requires that a Notice and Enrollment Form be sent to each Class Member which notifies them that if they participate in the opt-in class they will be bound by the result. That is exactly what occurred in this case when the Woodleys executed their enrollment form—they agreed to be bound by the result. It is Class Counsel's position, therefore, that the Woodleys do not even have standing to appeal their own result since they agreed to be bound by the result and the Court issued its Opinion and Order finding that the settlement result was fair, reasonable, and adequate. That is what the Fairness Hearing under Rule 23 is all about.

It should also be clear that the Woodleys do not have any standing to appeal any issue on behalf of the other 252 Class Members who have either specifically consented to their individual settlement amounts or who have subsequently and formally waived any purported right to appeal. As this Court pointed out in its Opinion and Order in footnote 10 on page 8, opt-in classes were contemplated because of the need for specificity in money judgments against the United States. In essence, there is exact specificity with respect to the money judgment against the United States for 252 Class Members. In fact, each of the 252 Class Members have either formally already consented to their individual settlement amounts, thus providing exact specificity, or two of them have subsequently waived any appellate rights they might purportedly have following the Fairness Hearing, making their amount specific and final as well. As a result, the judgment issued on May 21, 2014 is already final as it pertains to 252 of the 253 Class Members.

The only issue that the Woodleys could possibly appeal that could possibly impact the other 252 Class Members involves the Woodley's ludicrous argument that class counsel is

limited to the recovery of the statutory attorneys' fees rather than a division of the common fund. As the Court pointed out in its Opinion and Order, the division of the common fund as a legal principle dates back to 1882 and has been uniformly and repeatedly applied in numerous courts ever since.  (*See* Opinion and Order, D.E. 186, at fn. 13).  So, besides the fact that the Woodleys are incredibly wrong on the law, they do not have any standing to appeal that issue as it relates to the other 252 Class Members who have already consented to their individual settlement amounts as contained in the judgment.  Under Rule 23, the Fairness Hearing was conducted to determine whether the settlement was fair and reasonable and the issue of the division of the common fund was this Court's legal ruling under a separate motion.  As a result, the only two stakeholders who could possibly appeal this Court's legal ruling concerning the division of the common fund are Class Counsel and the United States, neither of which has any interest or desire in doing so. Even if the Woodleys were to be able to appeal the issue of attorneys' fees, it makes no sense that they could possibly appeal that issue on behalf of all of the other 252 Class Members when all of the other 252 Class Members have specifically consented to the attorneys' fees.

Under the Treasury's interpretation of 31 U.S.C. § 1304, they are prohibited from paying the settlement to the 252 Class Members unless the 253rd Class Member waives any right to appeal, the time allotted for the 253rd Class Member to appeal expires without an appeal actually having been filed, or all actual appeals are exhausted.  That is a ludicrous result in this context when the judgment is actually final for 252 of the 253 Class Members who have either consented to it or waived any right to appeal.  It is even worse in this situation when interest is continuing to accrue at $16,000 per day for the 252 Class Members who simply want to be paid.  By the time the deadline actually expires for a possible appeal, additional accrued interest will be approximately $1,000.000 and, if an appeal is actually taken, and Treasury waits until that appeal

is exhausted, it could actually run into many more millions of dollars and, ostensibly, the Woodleys would be required to post a very significant bond for the additional interest that is accruing.  In any event, the government is needlessly accruing $16,000 per day in additional interest simply and solely because the Woodleys purportedly might have a right to appeal that possibly could alter the amount of the judgment.

The only solution that makes sense for all parties is to sever the Woodleys from the final judgment in some fashion as it pertains to the other 252 Class Members.  Class Counsel must act in the best interest for the Class as a whole and needs to find some procedure to protect the interests of the other 252 Class Members, which could be achieved by severing the Woodleys from the final judgment as it pertains to the other 252 Class Members, so they can be paid without further delay.  A severance of the Woodleys from the final judgment also allows the government to pay the 252 Class Members who they have already agreed to pay without any further delay and without accruing in excess of $16,000 per day.  A severance of the Woodleys also serves the Woodleys interest in that they are free to pursue their purported right to appeal without holding hostage the other 252 Class Members.

Judgment was entered for the Plaintiffs on May 21, 2014 in the total amount of $140,541,218.69.  The Court directed Class Counsel to distribute the judgment according to the terms of the Court's Opinion and Order and the parties' settlement agreement.  One alternative is to enter judgment for all 253 Class Members separately, with the same ultimate totals, so the judgment is final for 252 of the 253 Class Members and Treasury can go ahead and pay the "final" judgment—the parties do not favor this alternative for the same privacy reasons previously expressed to the Court unless the individual amounts can be sealed in some fashion.  Another favored alternative would be for the Court to enter judgment for the 252 Class Members

in an amount which merely subtracts the Woodleys' amount and then also enters judgment for the Woodleys separately in an amount that totals their land value, interest, and attorneys' fees, again with the same ultimate totals.  The revised math for purposes of an amended judgment is relatively simple, as follows:

|  | Judgment of 5/21/14 — 253 Class Members | The Woodleys | Revised judgment — 252 Class Members |
|---|---|---|---|
| Land Value | $110,000,000 | $317,445.31 | $109,682,554.69 |
| Interest | $27,961,218.69 | $80,692.34 | $27,880,526.35 |
| Total | $137,961,218.69 | $398,137.65 | $137,563,081.04 |
| Attorneys' Fees | $33,172,243.74 | $95,730.67 | $33,076,513.70 |
| Net | $104,788,974.93 | $302,406.99 | $104,486,567.34 |

Judgment could be entered for the 252 Class Members for $137,563,081.04 and separately for the Woodleys at $398,137.65.  This is the requested result and Rules 52(b), 59(e) and 60(b) give the Court authority to do so.

Respectfully submitted this 17th day of June, 2014.

BAKER STERCHI COWDEN & RICE, L.L.C.

By_____/s/ Thomas S. Stewart_____
Thomas S. Stewart
Elizabeth G. McCulley
2400 Pershing Road, Suite 500
Kansas City, MO 64108
(816) 471-2121
(816) 472-0288 (facsimile)
stewart@bscr-law.com
mcculley@bscr-law.com

-and-

Steven M. Wald
J. Robert Sears

1010 Market Street, Suite 950
St. Louis, MO 63102-1708
(314) 231-2925
(314) 231-4857 (facsimile)
wald@bscr-law.com
sears@bscr-law.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 17th day of June, 2014, with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this same day, to:

BRUCE K. TRAUBEN
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
E-mail: bruce.trauben@usdoj.gov
**ATTORNEY FOR DEFENDANT**

_/s/ Thomas S. Stewart_
ATTORNEY FOR PLAINTIFFS