# In the United States Court of Federal Claims

No. 09-103L

(Filed: August 17, 2017)

```
*************************************
```

| | | |
|---|---|---|
| **Daniel and Kathy HAGGART, et al., For** | ) | Rails-to-trails takings case; class action; |
| **Themselves and As Representatives of a** | ) | motion for reconsideration |
| **Class of Similarly Situated Persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

```
*************************************
```

Thomas S. Stewart, Stewart Wald & McCulley LLC, Kansas City, Missouri, for plaintiffs Daniel Haggart and Kathy Haggart, et al. With him on the brief were Elizabeth G. McCulley, Stewart Wald & McCulley LLC, Kansas City, Missouri, Steven M. Wald and Michael J. Smith, Stewart Wald & McCulley LLC, St. Louis, Missouri, and J. Robert Sears, Baker Sterchi Cowden & Rice, LLC, St. Louis, Missouri.

David C. Frederick, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, Washington, D.C., for plaintiffs Gordon A. Woodley and Denise L. Woodley. With him on the brief were Joanna T. Zhang, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, Washington, D.C., and Gordon A. Woodley, Woodley Law, Kirkland, Washington.

Lucinda J. Bach, Trial Attorney, Natural Resources Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her on the brief were Jeffrey H. Wood, Acting Assistant Attorney General, Environment & Natural Resources Division, and Tyler L. Burgess and Sarah Izfar, Trial Attorneys, Natural Resources Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This rails-to-trails takings class action is in a very unusual, perhaps even unique, procedural posture. A total of 520 class members brought claims. After resolution of a number of motions for partial summary judgment,[1] extensive discovery, and lengthy, detailed settlement

---

[1]This takings case has been the subject of six reported decisions, including five from this court and another from the court of appeals. *See Haggart v. United States*, 89 Fed. Cl. 523

negotiations assisted by a senior judge of this court, 253 class members and the government reached a settlement calling for payment of $110 million to class members, plus interest, attorneys' fees, and litigation costs.[2]  Under the settlement, the claims of another 267 class members were to be dismissed without compensation.[3]  The court held a fairness hearing, approved the settlement, and entered final judgment.[4]  The court also awarded attorneys' fees to class counsel through a common fund, thus requiring a reduction in the amount awarded to class members, but the attachment to the Settlement Agreement provided to the court detailing the compensation to be received by each prevailing class member did not include the specific reduction for common-fund fees applicable to each member.[5]

One class member, a married couple, Mr. and Mrs. Woodley, owning property that would receive just compensation under the settlement, appealed the court's approval of the settlement and award of common-fund attorneys' fees on the ground that class counsel had not provided sufficient information in written form (oral explanations had been provided) to class members that would enable cross-checking calculations of the settlement amount to be received by them.[6] In the appeal, the government changed position from that it had taken at the fairness hearing and supported the Woodleys, but it did not itself file an appeal or raise any additional issues on appeal.[7]  The court of appeals ruled that approval of the Settlement Agreement was improper on the ground that written information had to have been provided to enable class members to comparatively calculate their amounts to be awarded, and it also reversed this court's award of

---

(2009) ("*Haggart I*"); *Haggart v. United States*, 104 Fed. Cl. 484 (2012) ("*Haggart II*"); *Haggart v. United States*, 108 Fed. Cl. 70 (2012) ("*Haggart III*"); *Haggart v. United States*, 116 Fed. Cl. 131 (2014) ("*Haggart IV*"), *vacated and remanded sub nom. Haggart v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016) ("*Haggart V*"); *Haggart v. United States*, 131 Fed. Cl. 628 (2017) ("*Haggart VI*").  After certifying the class and dividing the 520 class members into six subclasses, *see Haggart I*, 89 Fed. Cl. 523; *Haggart II*, 104 Fed. Cl. 484, the court addressed the parties' motions for partial summary judgment in 2012, *see generally Haggart III*, 108 Fed. Cl. 70.

[2]*See* Joint Mot. for Approval of S[e]ttlement and of Notice to Class Members and Request to Set Date for Public Hearing, ECF No. 161; *see also* Joint Compromise Settlement Agreement between Pls. and the United States ("Settlement Agreement" or "Agreement"), ECF No. 161-2 & Attach. B.

[3]Settlement Agreement, Attach. A.

[4]*See generally Haggart IV*, 116 Fed. Cl. 131.  The Settlement Agreement was signed in final on June 18, 2014, *see* Joint Compromise Settlement Agreement Between Pls. and the United States, ECF No. 272-2, with identical terms to those set forth in the Agreement filed in February 2014, ECF No. 161-2.  *See also Haggart VI*, 131 Fed. Cl. at 640.

[5]*See Haggart IV*, 116 Fed. Cl. at 148-49; Settlement Agreement, Attach. B.

[6]*See Haggart V*, 809 F.3d at 1343, 1348.

[7]*See Haggart V*, 809 F.3d at 1343; *Haggart VI*, 131 Fed. Cl. at 631.

attorneys' fees under a common fund.[8]  In short, the court of appeals vacated the court's approval of the Settlement Agreement and remanded the case for further action by this court.[9]  The court of appeals did not, however, consider or address the terms of the Settlement Agreement itself.[10]  The Settlement Agreement was therefore neither set aside nor vacated, but the court of appeals' disposition and mandate necessarily contemplated that an adjustment might have to be made to the attachment to the Settlement Agreement that allocated the overall settlement amount to individual class members, and class members' ultimate compensation amounts would change due to the removal of the award of common-fund attorneys' fees.[11]

Both in the court of appeals and initially before this court on remand, the parties considered that the settlement was in place, excepting potentially the allocation of individual amounts.[12]  Subsequently, however, the government did a further *volte face*.  Relying on a decision by the United States District Court for the Western District of Washington in a case that involved some of the properties at issue here,[13] the government has taken the position "that the vast majority of [c]lass [m]embers own no property interest in the railroad corridor . . . [and] are entitled to nothing."[14]  With this further change of position, the government seeks to negate the unconditional, comprehensive Settlement Agreement that the government executed with the class.

Previously, after examining the scope of this court's 2014 judgment and the Federal Circuit's subsequent mandate, this court determined that its earlier "liability decisions for Subclasses Two and Four, both for and against the government, as well as its dismissal of claims excluded from the Settlement Agreement, are subject to the mandate rule," and "[t]he specific decisions made by the court in determining liability for Subclasses Two and Four are the law of the case."[15]  Further, because "the Federal Circuit did not consider or address the terms of the Settlement Agreement itself, . . . [t]he amount of the settlement, interest rate, plaintiffs entitled to

---

[8]*Haggart V*, 809 F.3d at 1351, 1359.

[9]*Haggart V*, 809 F.3d at 1359.

[10]*See Haggart VI*, 131 Fed. Cl. at 641.

[11]*See Haggart VI*, 131 Fed. Cl. at 641 & n.10.

[12]*See Haggart VI*, 131 Fed. Cl. at 641.

[13]*See Kaseburg v. Port of Seattle*, No. C14-0784 JCC, 2015 WL 6449305 (W.D. Wash. Oct. 23, 2015) ("*Kaseburg I*"); *Kaseburg v. Port of Seattle*, No. C14-0784 JCC, 2016 WL 4440959 (W.D. Wash. Aug. 23, 2016) ("*Kaseburg II*"), *appeal filed*, No. 16-35768 (9th Cir. Sept. 23, 2016).

[14]The United States' [Corrected] Mot. for Recons. of May 4, 2017 Order Granting Pls.' Mot. to Enforce Settlement Agreement ("Def.'s Mot.") at 1, ECF No. 293.

[15]*Haggart VI*, 131 Fed. Cl. at 639.

compensation, and plaintiffs subject to dismissal were not disturbed on appeal."[16]  The court therefore held that "the Settlement Agreement was and remains a binding and enforceable contract."[17]  The court also considered the district court's decision in the Western District of Washington that addressed some of the properties at issue here, concluding that the decision "is not binding on this court and cannot and does not affect the enforceability of the Settlement Agreement."[18]

The government has moved for reconsideration of this court's decision, and class counsel and the Woodleys have opposed that motion.[19]  The government's motion was addressed at a hearing held on August 15, 2017.  For the reasons stated, the government's motion for reconsideration is denied.

## STANDARDS FOR DECISION

Because on remand this case is in an interlocutory posture, the government's motion for reconsideration falls under Rules 54(b) and 59(a) of the Rules of the Court of Federal Claims ("RCFC").  RCFC 54(b) provides that a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Under RCFC 59(a)(1), the court may grant a motion for reconsideration under the following circumstances:

(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court;

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

(C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1)(A) - (C).

The determination of whether to grant a motion for reconsideration generally falls within the discretion of the court.  *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (citations omitted).  The court may grant such a motion pursuant to RCFC 54(b) and

---

[16]*Haggart VI*, 131 Fed. Cl. at 641.  The court accordingly explained that "[o]n remand, the specific allocation of the agreed compensation to individual plaintiffs may need to be altered, but the total amount and all other terms in the agreement remain intact."  *Id.*

[17]*Haggart VI*, 131 Fed. Cl. at 641.

[18]*Haggart VI*, 131 Fed. Cl. at 642.

[19]*See* Def.'s Mot.; Class Counsel's Resp. to Def.'s Mot. for Recons. ("Pls.' Opp'n"), ECF No. 297; Pls. Gordon and Denise Woodley's Opp'n to Def.'s Mot. for Recons. of May 4, 2017 Order Granting Class Counsel's Mot. to Enforce Settlement Agreement ("Woodleys' Opp'n to Recons."), ECF No. 298.

59(a)(1) "as justice requires," which is "less rigorous" than the standard for reconsideration of a final judgment under RCFC 59(e). *Martin v. United States*, 101 Fed. Cl. 664, 670-71 (2011) (internal quotation marks and citations omitted), *aff'd sub nom. Fournier v. United States*, No. 2012-5056, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012). This standard may be satisfied where the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 49 (2011) (quoting *Potts v. Howard Univ. Hosp.*, 623 F. Supp. 2d 68, 71 (D.D.C. 2009) (in turn quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)) (modification in original). Reconsideration is "not intended, however, to give an 'unhappy litigant an additional chance to sway the court." *Martin*, 101 Fed. Cl. at 671 (quoting *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006) (in turn quoting *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991))); *see also Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 782 (2012) (noting that a party moving for reconsideration may not merely reassert arguments that "were previously made and were carefully considered by the court") (citing *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993), *aff'd*, 50 F.3d 1021 (Fed. Cir. 1995)); *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003). Additionally, a motion for reconsideration is unavailing where the moving party "raise[s] an issue for the first time that was available to be litigated earlier in the case." *Martin*, 101 Fed. Cl. at 671 (citing *Matthews*, 73 Fed. Cl. at 526; *Gelco Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966)); *see also Bannum*, 59 Fed. Cl. at 243.

## ANALYSIS

### A. Effect of the Federal Circuit's Mandate

With respect to this court's approval of the Settlement Agreement, the Federal Circuit articulated the "precise issue" presented on appeal by the Woodleys:

> The precise issue before us is whether the Claims Court abused its discretion by finding class counsel's act of explaining, as opposed to physically providing objecting class members with a copy of the final spreadsheet detailing the precise methodology used to calculate the allocation of their property values, satisfied the requirement that the settlement agreement be "fair, reasonable and adequate."

*Haggart V*, 809 F.3d at 1348 (quoting RCFC 23(e)(2)). The Woodleys' appeal was accordingly based upon their request for written information, apart from the verbal explanation they had received, "concerning the methodology class counsel employed in calculating the fair market value of unappraised properties." *Id.* Significantly, the government did not file an appeal or expand the grounds raised by the Woodleys. *Id.* at 1343. After holding that the Woodleys did not receive adequate documentation to allow a comparison of class members' property valuations, *see id.* at 1349-50, the court of appeals "reverse[d] the Claims Court's approval of the settlement agreement," as well as the award of common-fund attorneys' fees, and remanded the case for further proceedings, *id.* at 1359. "The Federal Circuit's reversal and remand did not extend beyond the scope of the Woodleys' appeal." *Haggart VI*, 131 Fed. Cl. at 638 (citing *Haggart V*, 809 F.3d 1336).

The government contends that the Federal Circuit vacated this court's prior judgment in its entirety to encompass the Settlement Agreement itself, Def.'s Mot. at 37, but that position is inconsistent with the Federal Circuit's decision.  Given the scope of the Woodleys' appeal, the court of appeals addressed whether class counsel's explanations sufficiently permitted class members to evaluate their respective property valuations and compare those values across the class.  *See Haggart V*, 809 F.3d at 1349-51 (discussing the methodology for valuing class members' properties, determining that "class members c[ould ]not assess whether the fair market value of their property was fair, reasonable, and adequate," and finding that class counsel failed to provide documents "detailing the precise methodology used to calculate the fair market value" of specific properties); *see also Haggart VI*, 131 Fed. Cl. at 641 ("The amount of the settlement, interest rate, plaintiffs entitled to compensation, and plaintiffs subject to dismissal were not disturbed on appeal.").  The government represented to the Federal Circuit that the Woodleys' appeal concerned only documentary disclosure and not the Settlement Agreement itself, stating that "[w]hile the [government] continues to believe that the total principal amount of $110 million is fair to the class as a whole, the approval of the settlement without requiring proper disclosure constituted an abuse of discretion and this case should be remanded to the [Claims Court] for proper disclosure to all class members."  *Haggart V*, 809 F.3d at 1346 n.11 (quoting Corrected Resp. Br. for the United States Supporting Appellants' Req. to Vacate the Judgment of the Court of Federal Claims that Approved the Settlement and Awarded Additional Att'ys' Fees ("Def.'s Appellate Br.") at 28, *Haggart v. Woodley*, No. 14-5106 (Fed. Cir. Dec. 19, 2014)).  The Federal Circuit therefore explained that the government's "acquiescence that the settlement agreement in *total* was fair, reasonable, and adequate is not inconsistent with the [g]overnment's current assertion that class counsel failed to provide adequate disclosure of how the settlement agreement was *distributed* among every individual class member."  *Id.* at 1346 (emphasis in original).  Although the government now focuses on the Federal Circuit's use of the term "vacated" to apply to the prior judgment, *see Haggart V*, 809 F.3d at 1359; Def.'s Mot. at 37-38, the "[i]nterpretation of an appellate mandate entails more than examining the language of the court's judgment in a vacuum. . . . [T]he nature of the [court's] remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998) (citing Fed. R. App. P. 41(a); *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 952 (Fed. Cir. 1997)).  In the context of the Federal Circuit's opinion, the court of appeals only vacated this court's approval of the Settlement Agreement and award of common-fund attorneys' fees.

The court's prior liability determinations for Subclasses Two and Four and dismissal of certain claims, all of which were encompassed within the court's 2014 judgment,[20] were also

---

[20]The government asserts that the court's previous liability determinations were not incorporated into the 2014 judgment, stating that Rule 23 does not permit the court to "decide the merits of the case or resolve unsettled legal questions." Def.'s Mot. at 40 (quoting *Adams v. United States*, 107 Fed. Cl. 74, 76 (2012)) (further citations omitted).  The government's argument is misplaced, however, because the court made legal determinations in its 2012 ruling on the parties' motions for summary judgment, not in approving the Settlement Agreement in 2014, and those previously-made determinations were then incorporated into the settlement and thus the court's final judgment.  *See Haggart VI*, 131 Fed. Cl. at 638 (citing *Haggart IV*, 116 Fed. Cl. at 149).

undisturbed on appeal and are thus subject to the mandate rule and law of the case doctrine. *See Haggart VI*, 131 Fed. Cl. at 638-39; *see also Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (holding that under the mandate rule, "an issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived"); *Suel v. Sec'y of Health & Human Servs.*, 192 F.3d 981, 985 (Fed. Cir. 1999) (noting that under the law of the case doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation") (citing *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985)). The government asserts that the mandate rule and law of the case cannot apply due to the procedural posture of the case, *see* Def.'s Mot. at 38-39, but these doctrines specifically address the circumstances presented here, where a court of appeals only considers particular issues within the trial court's prior judgment. *See, e.g.*, *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) ("[T]he mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from—not merely those issues actually raised."). Rather than appeal the court's liability determinations, which the government could have done after the court's 2014 judgment, *see Haggart VI*, 131 Fed. Cl. at 639, the government only sought to relitigate those issues after a district court decision in the Western District of Washington. Such an attempt falls squarely within the mandate rule. *See, e.g.*, *Doe v. United States*, 463 F.3d 1314, 1327 (Fed. Cir. 2006) ("Only when the liability determination was reversed on appeal did the Doe plaintiffs raise their argument that the theory for liability on the holiday pay claim was distinct from the overtime pay claim. The Doe plaintiffs should have raised the issue of the distinction between their holiday pay claim and their overtime pay claim before that time, however. Because they did not, the issue was waived.").[21]

### B. Compliance with the Federal Circuit's Mandate

In accord with the Federal Circuit's mandate, this court "initially sought to ensure that all information pertinent to the appraisal process was made available to class members in written form." *Haggart VI*, 131 Fed. Cl. at 632. After discussing the information available to the parties at a hearing held before the court on August 15, 2016, specifically focusing on the availability of three spreadsheets used in the settlement negotiations, class counsel filed four notices of compliance with the mandate from the court of appeals. *See id.*; Class Counsel's Notices of Compliance (Aug. 15, 2016, Aug. 17, 2016, Sept. 14, 2016, and Aug. 4, 2017), ECF Nos. 218, 219, 223, and 295. Nonetheless, the government argues that class counsel has failed to disclose two of those three spreadsheets. Def.'s Mot. at 24. The availability of the spreadsheets, however, was addressed again at a hearing held on June 2, 2017, and the court reopened

---

[21]The government also argues that a departure from the mandate rule is justified because the court's prior rulings are "clearly erroneous." Def.'s Mot. at 39-40. Although a departure may be warranted in an "exceptional" circumstance, *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001), the government has failed to meet that "heavy burden" here, *see Branning v. United States*, 784 F.2d 361, 363 (Fed. Cir. 1986) (citing *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)). For example, the government now argues that virtually no class members are entitled to compensation in this case by primarily relying on the *Kaseburg* decision, but the court previously considered *Kaseburg* and concluded that it did not affect this court's liability findings or the enforceability of the Settlement Agreement. *Haggart VI*, 131 Fed. Cl. at 641-43. The government has failed to demonstrate that a departure from the mandate rule is warranted.

discovery to ensure that the parties could obtain access to the spreadsheets and any other relevant documents. *See* Hr'g Tr. 36:4-16 (June 2, 2017); Scheduling Order of June 6, 2017, ECF No. 278. Class counsel, counsel for the Woodleys, and the government have thus had the opportunity to seek any and all relevant documents through discovery. Indeed, the government manifestly has had the three spreadsheets throughout the course of the remand proceedings, and notably it attached the three disputed spreadsheets to its motion for reconsideration, making them a matter of public record. *See* Def.'s Mot., Exs. F, G, and H. Additionally, those spreadsheets are available on class counsel's website for any class member to review. Pls.' Opp'n at 29-30. Issues with respect to the spreadsheets thus have no bearing on this court's most recent decision or the government's pending motion for reconsideration.[22]

The government also notes that class counsel, following the court of appeals' mandate, informed class members that the members' allocations for the settlement amount could be subject to change and moved for further proceedings in this court. *See* Def.'s Mot. at 29-34. The government avers that class counsel's conduct, viewed in combination with the government's present position that the Settlement Agreement is not binding, indicates that the Settlement Agreement has been abandoned. *See id.* Such an argument, which was already raised by the government and considered by this court, *see Haggart VI*, 131 Fed. Cl. at 641 n.11 (citing the United States' Resp. to Pls.' Mot. to Enforce the Settlement Agreement at 11-13, ECF No. 274), is unavailing.

A contract may be abandoned as the result of a written or verbal agreement, or by the acts and conduct of the parties. *Montana Bank of Circle, N.A. v. United States*, 7 Cl. Ct. 601, 610 (1985). With respect to conduct, "[t]he acts of the parties must be positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Nebco & Assocs. v. United States*, 23 Cl. Ct. 635, 642 (1991) (quoting *Armour & Co. v. Celic*, 294 F.2d 432, 436 (2d Cir. 1961)). The party asserting abandonment has the burden of proving that the contract has been rescinded. *See Klamath Irrigation Dist. v. United States*, 635 F.3d 505, 519 n.12 (Fed. Cir. 2011) ("The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim.") (quoting *National Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 129-31 (2d Cir. 2001) (in turn quoting *Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989))); *International Indus. Park, Inc. v. United States*, 100 Fed. Cl. 638, 653 (2011) ("Since [d]efendant asserts rescission, [d]efendant has the burden of proving that rescission.") (citing *Klamath Irrigation Dist.*, 635 F.3d at 519 n.12; *Armour & Co.*, 294 F.2d at 436), *modified on recons. in part on other grounds*, 102 Fed. Cl. 111 (2011), *aff'd*, 496 Fed. Appx. 85 (Fed. Cir. 2013).

Here, the government's reliance on class counsel's conduct is misplaced. Class counsel's exchanges with class members reflect his effort to comply with the Federal Circuit's mandate and provide class members with sufficient information and documentation, not an intent to

---

[22]In its motion, the government also discusses in detail the appraisal and mediation process that led to the creation of the three spreadsheets, and the substantive fairness of those spreadsheets. *See* Def.'s Mot. at 24-29. Discussions of prior settlement negotiations are inappropriate in the context of the government's motion for reconsideration and need not be addressed further. Additionally, the government, after supporting the Settlement Agreement before this court and failing to appeal the court's judgment or expand the scope of the Woodleys' appeal, has waived its right to contest the substantive fairness of that Agreement.

abandon the Settlement Agreement.  *See* Pls.' Opp'n at 23.  The government also relies on the fact that class counsel moved for a trial and filed the first dispositive motion after the Federal Circuit's decision, *see* Def.'s Mot. at 32-33, but, at that point, the effect of the Federal Circuit's mandate was not yet fully apparent to plaintiffs or the court.  Class counsel subsequently moved to enforce the Settlement Agreement, and the Woodleys currently support the enforcement of that Agreement as well.  *See generally* Pls.' Mot. to Enforce the Settlement Agreement, ECF No. 272; Woodleys' Opp'n to Recons.  The government also stated previously that it considered the Agreement to be binding before the Federal Circuit and this court, and it only changed its position very recently.  *See Haggart VI*, 131 Fed. Cl. at 641; *supra*, at 3, 6-7.  Thus, the government has not met its burden of demonstrating that the parties unequivocally intended to abandon the Settlement Agreement.

### *C.  Enforceability of the Settlement Agreement*

The Settlement Agreement "comprehensively encompasses all existing claims without any limitations or exceptions."  *Haggart VI*, 131 Fed. Cl. at 640 (citing Settlement Agreement ¶ 2).  It specifies the total amount of compensation and interest, and includes an attachment that allocates the specific amount provided to each class member.  *See* Settlement Agreement ¶¶ 4-5, Attach. B.  The Agreement also contemplated a reduction in the amount allocated to each class member to account for common-fund attorneys' fees, *Haggart IV*, 116 Fed. Cl. at 148-49, but that reduction can no longer occur in light of the Federal Circuit's decision, *see Haggart VI*, 131 Fed. Cl. at 643 (explaining that "the only aspect of the Settlement Agreement remaining at issue in this case is the allocation of the agreed settlement amount and interest among the Settling Plaintiffs").  The attachment to the Settlement Agreement presented to the court in 2014, however, specifies the amount allocated to each class member before consideration of attorneys' fees.  Settlement Agreement, Attach. B.  That attachment can therefore stand on its own and allocate the full $110 million settlement amount, plus interest, to class members.

At this juncture, class counsel and the Woodleys have proposed allocating the $110 million to class members in accord with the allocations set forth in the Settlement Agreement presented to the court in 2014, but without the possibility of any reduction for common-fund attorneys' fees.  *See* Class Counsel's Mot. for Approval of the Settlement and of Notice to Class Members and Request to Set a Date for Public Hearing ("Pls.' Mot. for Approval") at 3-5, ECF No. 299; Pls.' Opp'n at 31.[23]  Their proposal would leave the Settlement Agreement fully intact.  Such an approach is consistent with the Settlement Agreement and the mandate from the court of appeals.  *See Laitram*, 115 F.3d at 951 ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate.") (quoting *Caldwell v. Puget Sound Elec. Apprenticeship & Training Tr.*, 824 F.2d 765, 767 (9th Cir. 1987) (in turn quoting *Sanford Fork & Tool*, 160 U.S. at 256)).[24]

---

[23]With respect to the Woodleys' objections, class counsel and the Woodleys have agreed that "additional monies to the Woodleys will be derived from [c]lass [c]ounsel's statutory attorneys' fees," not the $110 million settlement amount.  Pls.' Mot. for Approval at 5.

[24]The government contends that any involvement by the court in reallocating the amount to class members would constitute an equitable remedy that falls outside this court's jurisdiction and contravenes contract law.  Def.'s Mot. at 34-36.  In light of class counsel's and the

The government finally argues that the court lacks the authority to bind the government to the Settlement Agreement, Def.'s Mot. at 35-36, but such a contention is misguided. The court is instead enforcing a contractually binding Settlement Agreement that the parties agreed to in 2014. *See Haggart VI*, 131 Fed. Cl. at 639-41. The Federal Circuit's reversal of this court's approval of the Settlement Agreement does not affect the binding nature of that Agreement with respect to the government:

> The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement. . . . Put another way, judicial approval of a class action settlement is a condition subsequent to the contract and does not affect the legality of the proposed settlement agreement.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982)). The court's primary role in reviewing and approving a class action settlement is to "protect absent class members and other non-parties to the litigation, not the defendants who . . . agreed to an unfavorable settlement offer." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1095 (6th Cir. 2016) (Boggs, J.).

The government attempts to distinguish *Ehrheart* and *Whitlock* from the facts presented in this case by again contending that the Federal Circuit vacated the court's judgment in its entirety and purportedly rendered the Settlement Agreement unenforceable. *See Def.'s Mot. at 21-23. The government's argument is unpersuasive because, as discussed *supra*, the court of appeals only addressed the documentary disclosure provided to class members with respect to individual allocations, not the Settlement Agreement itself or any other aspect of that Agreement. The government even agreed that the Settlement Agreement was undisturbed until the recent district court decision in Washington. *Haggart VI*, 131 Fed. Cl. at 641. Where a defendant changes its position regarding a settlement in light of a new legal development, courts have uniformly concluded that "a change in law will not affect the binding nature of a settlement agreement." *Haggart VI*, 131 Fed. Cl. at 640 (citing *Anita Founds., Inc. v. ILGWU Nat. Ret. Fund*, 902 F.2d 185, 189 (2d Cir. 1990); *Ehrheart*, 609 F.3d at 595-97; *Whitlock*, 843 F.3d at

---

Woodleys' proposal, however, reallocation may not be necessary except to ensure that the amount provided to class members is not reduced by common-fund attorneys' fees.

Further, the government's argument that any reallocation would "alter the essential terms of the Settlement Agreement" and vitiate "mutuality of consent" is unavailing. *See Def.'s Mot. at 36. As the government stated before the Federal Circuit and this court, the government agreed to a total amount of compensation with class counsel through the Settlement Agreement but provided class counsel with a measure of discretion regarding allocation of the total amount among class members. *See Def.'s Appellate Br. at 15; Def.'s Mot. at 24 n.8 (quoting Joint Status Report at 3, ECF No. 145 (Aug. 12, 2013)); *see also* Woodleys' Opp'n at 8. The government cannot now argue that class counsel's exercise of that discretion, which leaves the total settlement amount intact and the individual class members' allocation in Attachment B unchanged, undermines the parties' "mutuality of consent."

1088, 1093-94; *In re Syncor ERISA Litig.*, 516 F.3d at 1100-02).  The Settlement Agreement therefore remains a binding and enforceable contract.

## CONCLUSION

For the reasons stated, the government's motion for reconsideration is DENIED.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge