# In the United States Court of Federal Claims

No. 09-103L

(Filed:  August 12, 2020)

|  |  |
|---|---|
| **DANIEL and KATHY HAGGART,** *et al.***, For Themselves and As Representatives of a Class of Similarly Situated Persons,** | Applications for award of attorneys' fees and expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654(c); jurisdiction; effect of earlier award of fees in settlement agreement; fees not awardable to *pro se* litigants; fees incurred to preserve and defend settlement against effort to overturn it; reasonableness of fees and expenses |
| Plaintiffs, | |
| **v.** | |
| **UNITED STATES,** | |
| Defendant. | |

Thomas S. Stewart, Stewart Wald & McCulley LLC, Kansas City, Missouri, for plaintiffs Daniel Haggart and Kathy Haggart, *et al.*  With him on the briefs were Elizabeth G. McCulley, Stewart Wald & McCulley LLC, Kansas City, Missouri, Steven M. Wald and Michael J. Smith, Stewart Wald & McCulley LLC, St. Louis, Missouri.

David C. Frederick, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, Washington, D.C., for plaintiffs Gordon A. Woodley and Denise L. Woodley.

Mary Crego Peterson, Hillis Clark Martin & Peterson P.S., Seattle, Washington, for plaintiff Cleveland Square, LLC and twenty-five others.

Richard B. Sanders, Goodstein Law Group PLLC, Tacoma, Washington, for plaintiffs Faramarz Ghoddoussi and Westpoint Properties, LLC.

Lucinda J. Bach, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Prerak Shah, Deputy Assistant Attorney General, Environment and Natural Resources Division, and Sarah Izfar, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court in this protracted rails-to-trails takings class action are five motions for legal fees and expenses.  These motions follow a circuitous procedural history that has engendered numerous opinions from this court and two separate opinions from the Federal Circuit.[1]  As pertinent here, for a second time this court approved a settlement agreement on January 26, 2018, but, anticipating an appeal, deferred pursuant to Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC") any decision on the amount of related legal fees and costs that might be awarded.  *See Haggart VIII*, 136 Fed. Cl. at 81.  The Federal Circuit subsequently affirmed this court's decision approving and enforcing the settlement agreement on November 27, 2019 but declined on jurisdictional grounds to consider any argument concerning attorney fees and costs.  *See Haggart IX*, 943 F.3d at 951.  The pending motions now bring that issue before the court.

## BACKGROUND

The origins of the dispute underlying the pending motions concern land in the State of Washington that was converted into a recreational trail pursuant to Section 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified in relevant part at 16 U.S.C. § 1247(d)).  Plaintiffs filed suit over a decade ago, alleging that the conversion constituted a taking of their property without just compensation.  Compl. ¶¶ 14, 18.  The court certified an initial class of over 500 members, which was subsequently split into six subclasses.  *See Haggart II*, 104 Fed. Cl. at 491.  In 2012, the court ruled on cross-motions for summary judgment, finding "the government liable to certain class members within Subclass Two and Categories A through D of Subclass Four" while also granting "the government summary judgment as to class claimants in Subclass Four, Category E."  *Haggart VI*, 131 Fed. Cl. at 631 (citing *Haggart III*, 108 Fed. Cl. at 70).

After extensive mediation, the parties reached a settlement in February 2014.  Of the 521 claimants and their 659 parcels of land, the settlement would dismiss the claims of 268 class members without compensation and pay $110 million to the remaining 253 class members, plus interest, attorneys' fees, and litigation costs.  *See Haggart VIII*, 136 Fed Cl. at 74.  After a fairness hearing in March 2014, the court approved the settlement and entered final judgment, awarding legal fees to class counsel through a common fund.  *See generally Haggart IV*, 116 Fed. Cl. 131.

---

[1]This case has been the subject of nine reported decisions, including seven from this court and two from the Federal Circuit.  *See Haggart v. United States*, 89 Fed. Cl. 523 (2009) ("*Haggart I*"); *Haggart v. United States*, 104 Fed. Cl. 484 (2012) ("*Haggart II*"); *Haggart v. United States*, 108 Fed. Cl. 70 (2012) ("*Haggart III*"); *Haggart v. United States*, 116 Fed. Cl. 131 (2014) ("*Haggart IV*"), *vacated and remanded sub nom. Haggart v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016) ("*Haggart V*"); *Haggart v. United States*, 131 Fed. Cl. 628 (2017) ("*Haggart VI*"); *Haggart v. United States*, 133 Fed. Cl. 568 (2017) ("*Haggart VII*"); *Haggart v. United States*, 136 Fed. Cl. 70 (2018) ("*Haggart VIII*"), *aff'd, Haggart v. United States*, 943 F.3d 943 (Fed. Cir. 2019) ("*Haggart IX*").

Two of the class members, Mr. and Mrs. Woodley ("the Woodleys"), objected to the settlement and appealed this court's final judgment. *See generally Haggart V*, 809 F.3d 1336. Initially represented by Mr. Woodley himself, they put forward two main objections on appeal.[2] First, they claimed that class counsel had failed to provide enough written information to enable individual class members to verify the calculations determining how much of the total settlement amount they were to receive. *See id.* at 1343, 1348. Second, they challenged the award of legal fees based on a common fund approach. *See id.* at 1343, 1351-59. On appeal, the government reversed course and, while it did not file its own appeal or raise any additional issues, filed a brief supporting the Woodleys, contrary to its previous position during the fairness hearing. *Id.* at 1343. On January 8, 2016, the Federal Circuit vacated this court's approval of the settlement because it determined that class counsel had provided to the Woodleys and class members generally inadequate information for verifying their individual award allocations. *Id.* at 1351, 1359. After the Federal Circuit's mandate issued on April 25, 2016, this court re-opened discovery to rectify the deficiency of written notice to the class, enabling the Woodleys and other class members to access detailed documentation that had not previously been made available to them in electronic form. *Haggart VI*, 131 Fed. Cl. at 632. The informational defect that the Federal Circuit had identified in this court's prior approval of the settlement agreement was cured during this period of discovery. *See Haggart VIII*, 136 Fed. Cl. at 77.

Throughout the proceedings until this time, none of the parties had suggested "that the [s]ettlement [a]greement itself had been set aside, vacated, or altered, except potentially as to the allocation of the individual amounts." *Haggart VIII*, 136 Fed. Cl. at 74 (citation omitted). Then for the first time, in an abrupt *volte face* in November 2016, the government indicated that it considered the settlement agreement itself to be invalid. *See* Def.'s Resp. to Class Counsel's Request for Trial Setting at 2-4, ECF No. 227. Following up on that suggestion, on March 1, 2017, the government filed a motion for reconsideration seeking to undermine the basis of the settlement agreement and render it invalid, *see generally* The United States' Mot. for Recons. of Certain Rulings on the Parties' Cross[-]Mots. for Summary Judgment, ECF No. 244, engendering a subsequent flurry of motions and proceedings that yielded two additional opinions from this court and a second appeal.

To support its newfound position, the government relied on an indirectly related case in the United States District Court for the Western District of Washington, *Kaseburg v. Port of Seattle*.[3] Emphasizing *Kaseburg*, the government sought reconsideration of liability

---

[2]During the briefing stage of this first appeal, the Woodleys retained Mr. David Frederick and his firm, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"), to represent them, and they continued to do so in subsequent proceedings before this court and the Federal Circuit. *See* Pls. Gordon and Denise Woodley's Mot. for Attorneys' Fees, Expenses, and Costs at 3, ECF No. 360; *see also* Order Granting in Part and Denying in Part Mot. to Substitute Attorney, ECF No. 222.

[3]*Kaseburg v. Port of Seattle*, No. C14-0784 JCC, 2015 WL 6449305 (W.D. Wash. Oct. 23, 2015) ("*Kaseburg I*"); *Kaseburg v. Port of Seattle*, No. C14-0784 JCC, 2016 WL 4440959 (W.D. Wash. Aug. 23, 2016) ("*Kaseburg II*"), *aff'd*, 744 Fed. Appx. 356 (9th Cir. 2018).

determinations made in *Haggart III*. *See Haggart VI*, 131 Fed. Cl. at 633.  On May 4, 2017—in *Haggart VI*—the court denied the government's motion for reconsideration and granted an opposing motion by class counsel to enforce the settlement agreement. *See id.*  Then on July 24, 2017, the government moved for reconsideration of the court's decision to enforce the settlement agreement. *See generally* The United States' Mot. for Recons. of May 4, 2017 Order (ECF No. 275) Granting Pls.' Mot. to Enforce Settlement Agreement, ECF No. 291.  Again relying on *Kaseburg*, the government contended that the vast majority of class members were entitled to no compensation because they purportedly owned no interest in the underlying property. *See Haggart VII*, 133 Fed. Cl. at 572.  On August 17, 2017—in *Haggart VII*—the court rejected the government's attempt "to negate the unconditional, comprehensive [s]ettlement [a]greement that the government executed with the class." *Id.* at 572.

Plaintiffs then sought approval of a renewed notice to the class regarding the settlement, which the government opposed on the same grounds it had raised in its prior post-remand motions. *See Haggart VIII*, 136 Fed. Cl. at 75.  The court held a fairness hearing on December 18, 2017 in Seattle, Washington, in which numerous class members participated. *Id.*  On January 26, 2018—in *Haggart VIII*—the court approved the settlement agreement and entered a partial final judgment under Rule 54(b), enabling the government to appeal the settlement approval immediately while reserving judgment on the matter of whether plaintiffs could recover statutory legal fees and costs beyond those already contained within the settlement agreement itself. *See Haggart VIII*, 136 Fed. Cl. at 81.  Effectively, the court employed Rule 54(b) to bifurcate its approval of the settlement agreement from any determination regarding legal fees and costs outside the settlement agreement.

On the government's subsequent appeal, the Federal Circuit affirmed this court's approval of the settlement on November 27, 2019 but declined to address the government's arguments regarding legal fees and costs on the jurisdictional ground that this court had not previously acted regarding them. *See Haggart IX*, 943 F.3d at 951-52.  The Federal Circuit's mandate issued on January 21, 2020. *See* ECF No. 347.  On March 2, 2020, plaintiffs filed five separate motions, representing four different plaintiffs or groups of plaintiffs,[4] seeking statutory legal fees and costs pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("Uniform Relocation Act"), 42 U.S.C. § 4654(c).[5]  Following

---

[4]The five motions were filed by (1) class counsel; (2) the Woodleys; (3) individual class members Mr. Farmarz Ghoddoussi and Westpoint Properties, LLC ("Westpoint"); and (4) a separate collection of class members (hereinafter referred to collectively as "Cleveland Square"); and (5) the Woodleys, who with the court's leave, filed and briefed two separate motions because they received representation by two different persons, first by Mr. Woodley himself and later by Mr. David C. Frederick of Kellogg Hansen. *See* Order granting Motion for Leave to File, ECF No. 354.

[5]*See* Mot. for Attorneys Fees ("Class Counsel's Mot."), ECF No. 355; Mot. for Leave to File Separate Mots. for Attorneys' Fees, Expenses, and Costs, Ex. 1 ("Woodleys' *Pro Se* Mot."), ECF No. 353; Mot. for Attorney Fees ("Woodleys' Kellogg Hansen Mot."), ECF No. 360; Mot.

an additional round of motions practice in which the government sought to compel the production of retainer and fee agreements from class counsel,[6] the government individually responded to each of the fee motions on June 22, 2020.[7]  Plaintiffs filed replies on July 6, 2020.[8]  The motions are now ready for disposition.

## STANDARDS FOR DECISION

The Uniform Relocation Act waives federal sovereign immunity with respect to legal fees and costs in takings cases and mandates that when awarding a plaintiff compensation for a taking by a federal agency, the court shall "reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, *actually incurred* because of such proceeding."  42 U.S.C. § 4654(c) (emphasis added).

This is an unusual fee proceeding, but it is governed by settled law.  Courts consider "a number of factors" in determining the reasonableness of attorneys' fees.  *Hubbard v. United States*, 480 F.3d 1327, 1332 (Fed. Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  "[T]he most critical factor," and the threshold inquiry to determine if *all* costs and fees incurred may be reimbursed, "is the degree of success obtained."  *Hensley*, 461 U.S. at 436.  That factor favors the fee applicants, but other considerations appertain to this proceeding.

The fee applicants have the burden of production.  *See Hensley*, 461 U.S. at 437; *Rumsey v. Department of Justice*, 866 F.3d 1375, 1379 (Fed. Cir. 2017) (The party seeking fees "bears the burden of . . . documenting the appropriate hours expended and hourly rates" and exercising "billing judgment" in doing so.).  That burden is "routinely satisf[ied]" by the "[s]ubmission of invoices and billing records."  *Rumsey*, 866 F.3d at 1379; *see also Lost Tree Village Corp. v. United States*, 135 Fed. Cl. 92, 96 (2017), *appeal dismissed*, 2018 WL 3545924 (Fed. Cir. Mar. 23, 2018).  The materials thus provided must supply "sufficient detail" to permit the court "to determine whether the hours, fees, and expenses are reasonable for any individual item invoiced."  *Preseault v. United States*, 52 Fed. Cl. 667, 679 (2002).  The court may also refer to

---

for Attorney Fees ("Ghoddoussi's Mot."), ECF No. 356; Mot. for Attorney Fees ("Cleveland Square's Mot."), ECF No. 357.

[6]*See* Order Granting in Part and Denying in Part Mot. to Compel, ECF No. 374.

[7]*See* Def.'s Resp. to Class Counsel's Mot., ECF No. 382; Def.'s Resp. to Woodleys' *Pro Se* Mot., ECF No. 381; Def.'s Resp. to Woodleys' Kellogg Hansen Mot., ECF No. 380; Def.'s Resp. to Ghoddoussi's Mot., ECF No. 379; Def.'s Resp. to Cleveland Square's Mot., ECF No. 378.

[8]*See* Reply to Def.'s Resp. to Class Counsel's Mot. ("Class Counsel's Reply"), ECF No. 383; Reply to Def.'s Resp. to Woodleys' *Pro Se* Mot. ("Woodleys' *Pro Se* Reply"), ECF No. 386; Reply to Def.'s Resp. to Woodleys' Kellogg Hansen Mot. ("Woodleys' Kellogg Hansen Reply"), ECF No. 385; Reply to Def.'s Resp. to Ghoddoussi's Mot. ("Ghoddoussi's Reply"), ECF No. 384; Reply to Def.'s Resp. to Cleveland Square's Mot. ("Cleveland Square's Reply"), ECF No. 387.

declarations made by other attorneys about the reasonableness of fees in a geographic area and may likewise rely on its "own expertise to recognize applicable prevailing rates." *Morris v. Secretary of Dep't of Health and Human Servs.*, 20 Cl. Ct. 14, 29 (1990) (citation omitted). To satisfy their burden, the applicants have submitted time details, fee invoices, and expense records, along with declarations from counsel knowledgeable of rate practices in pertinent areas.

Fees incurred and paid by a client at an agreed rate are presumptively reasonable because "in reaching agreement, lawyer and client have already considered and weighed all the relevant factors." *Florida Rock Indus., Inc. v. United States*, 9 Cl. Ct. 285, 290 (1985) (citing *Laffey v. Northwest Airlines, Inc*., 746 F.2d 4, 24-26 (D.C. Cir. 1984) ("When fixed market rates already exist, there is no good reason to tolerate the substantial costs of turning every attorneys['] fee case into a major ratemaking proceeding. In almost every case, the firms' established billing will provide fair compensation."), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc)).

A further major reference point in a fee-shifting case involving the Uniform Relocation Act can be supplied by the lodestar method. The lodestar figure is "the product of reasonable hours times a reasonable rate" and there is a "strong presumption" that the lodestar represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 587 (2009) (noting that the lodestar method is "[a] widely accepted mode of determining reasonable attorneys' fees" which "requires determining both the reasonable hourly rate and the reasonable number of hours expended on the litigation").

## ANALYSIS

### A. The Court's Jurisdiction to Award Additional Fees[9]

The court must decide at the outset whether the settlement agreement's provision for statutory legal fees and costs categorically precludes any additional award for subsequent fees and costs plaintiffs incurred to enforce and defend the agreement. The agreement does not create such a categorical preclusion.

The 2014 settlement agreement specified that it "encompasses all existing claims, disputed issues and/or demands for money damages or other relief (inclusive of all interest, attorneys['] fees, and other litigation expenses that have been or could be incurred), that were asserted or could have been asserted in this action." Mot. for Settlement, Ex. B ("Settlement Agreement") at 2, ECF No. 299. It also stated that the government would "pay statutory

---

[9]The government's responses to all five pending motions implicate the question of whether the court possesses jurisdiction to award additional fees. With respect to jurisdiction, unlike the subsequent discussion of what fees are recoverable and whether those sought are reasonable, each motion raises similar arguments and each plaintiff is, for the most part, similarly situated. Accordingly, the court will address this issue collectively without specific consideration to each individual or group of plaintiffs.

attorneys' fees and costs of $2,580,000.00 pursuant to the [Uniform Relocation Act]." *Id.* at 2-3. These contractual provisions, in the government's view, preclude the pending fee applications.

The government contends that the agreement, "by its express terms, allocated to [p]laintiffs the risk that additional attorneys' fees and costs might be incurred in the future." Def.'s Resp. to Class Counsel's Mot. at 17. Accordingly, "[h]aving failed to expressly reserve in the [s]ettlement [a]greement a right to seek additional [Uniform Relocation Act] fees and expenses, [p]laintiffs cannot now rewrite the [a]greement to permit such recovery." *Id.* at 17-18. The government emphasizes that plaintiffs knew when they signed the agreement that "it was a near-certainty that substantial additional attorney time would be necessary" because the Woodleys had already objected at the fairness hearing and plaintiffs could well anticipate their appeal. *Id.* at 18. Further, the government asserts that "[b]ecause this [c]ourt's jurisdiction over the settlement derives solely from the agreement itself, . . . there is no longer any issue as to which the [c]ourt could conceivably exercise ancillary jurisdiction." *Id.* at 17. Thus, in the government's view, "the [c]ourt lacks jurisdiction." *Id.* at 16. Plaintiffs, on the other hand, freely concede and agree that the settlement is binding on the parties as established by the prior proceedings, but contend that it does not prevent them from seeking additional statutory fees and costs "that were required simply and solely because of the government's change in position." Class Counsel's Mot. at 9.

Contrary to the government's suggestion, this court's jurisdiction does not and could not stem merely from the settlement agreement itself. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."). Moreover, what the agreement does not give it cannot take away. The government is thus incorrect to assert that the settlement agreement's fixed terms dictate the court's jurisdiction to award legal fees and costs pursuant to the Uniform Relocation Act. Jurisdiction derives from the same sources that it has throughout the protracted pendency of this litigation: the Tucker Act and the Uniform Relocation Act. Accordingly, the court maintains jurisdiction over the Uniform Relocation Act fee dispute until the entry of final judgment. As the Federal Circuit observed, "the [g]overnment may subsequently raise its arguments with respect to [fees and costs] before the Court of Federal Claims." *Haggart IX*, 943 F.3d at 95; *see also Cygnus Telecomms. Tech., LLC v. TotalAxcess.com, Inc.*, 345 F.3d 1372, 1375 (Fed. Cir. 2003) (concluding that the trial court had jurisdiction in a suit for patent infringement to enforce a judgment entered upon a settlement agreement against the former defendant's corporate successor, relying on *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379 (1994), which ruled that a court maintains jurisdiction to "vindicate its authority and effectuate its decisions").[10]

Nor must the court alter the terms of the settlement agreement to award additional fees and costs, as the government insists it would. *See* Def.'s Resp. to Class Counsel's Mot. at 14-23. The government is correct as to the "near-certainty" that some, perhaps considerable, additional

---

[10]*Kokkonen* distinguished the situation where the settlement terms are included in the court's judgment from that where a settlement agreement had been made part of an order of dismissal. *See Kokkonen*, 511 U.S. at 381.

attorney time would have been required to conclude the litigation at the time the settlement was signed.  *Id.* at 18.  More expense would of course have been necessary to handle the first appeal and wrap-up loose ends, and the settlement terms undoubtedly encompassed such costs.  Nevertheless, the agreement's provisions are less comprehensive than the government is willing to concede.

Litigation expenses incurred by plaintiffs to *defend and enforce* the agreement do not fall within the scope of the agreement's terms.  The agreement did not and could not contemplate that the government would aggressively contest its very validity.  A careful reading of the agreement's text supports this conclusion.  The language of the agreement states that it "encompasses all *existing* claims, disputed issues and/or demands for money damages or other relief (inclusive of all interest, attorneys['] fees, and other litigation expenses that have been or could be incurred), that *were asserted or could have been asserted* in this action."  Settlement Agreement at 2 (emphases added).  A demand for litigation expenses incurred to defend against the government's *subsequent* attempts to undermine the basis for the agreement was not an *existing* claim, demand, or issue at the time of the agreement.  No one at that time—presumably not even the government itself—could anticipate the government's unilateral move seeking to scuttle the agreement it had negotiated.  Similarly, the agreement stated that it only included claims, disputes, or demands (and the related legal expenses) that "were or could have been asserted."  *Id.*  This language captures within its sweep only legal expenses related to claims, disputes, or demands implicated before the date of the agreement.  Thus, demands for legal fees incurred to defend against a litigating position that had never been asserted and could not even have been anticipated at the time of the agreement do not fit within these terms.  Accordingly, awarding additional legal fees and costs for such matters in no way upsets or contravenes the express terms of the agreement.

### B.  Recoverable Fees & Costs

Having determined that it possesses jurisdiction to award legal expenses at this juncture consistent with the terms of the agreement, the court must now decide what fees and costs, contingent on their reasonableness, would be recoverable.  Because each motion presents somewhat factually unique circumstances on this point, the court will address them separately.

#### 1.  The class's legal expenses.

The class members seek to recover "fees and costs incurred after the Federal Circuit's [o]pinion after the first appeal, after *Haggart V* was issued on January 8, 2016, including fees reasonably incurred by Sidley Austin LLP . . . to enforce the [s]ettlement [a]greement through the second appeal, which resulted in the *Haggart IX* opinion."  Class Counsel's Mot. at 9 n.34.

The period following the first appeal was marked by considerable uncertainty about the means to address the informational deficiency identified by the Federal Circuit.  Class counsel expended significant time and expense in curing that deficit.  Notably, the class was certainly aware at the time of the settlement of the Woodleys' objections and could anticipate the appeal that followed.  The outcome of the appeal and the likelihood of incurring additional expense on

that account was likewise foreseeable. Therefore, insofar as these expenses are concerned, the settlement agreement made allowance for such existing legal charges that could be incurred. Accordingly, the court will not award additional fees and costs that were anticipated by the remand from the Federal Circuit.

A different setting arose after March 1, 2017, when the government filed its motions seeking to overturn the settlement agreement. From that time forward, the class incurred legal fees and costs that were not contemplated by the settlement agreement. As a practical matter, that date serves as a temporal dividing line between time and costs expended on matters governed by the settlement agreement and time and costs that were required to defend against the government's later position. Accordingly, the class may recover reasonable legal fees and costs incurred on and after March 1, 2017.

### 2. The Woodleys' legal expenses.

The Woodleys seek to recover legal fees and costs incurred both by the representation of Mr. Woodley himself and later for the Woodleys' representation by Kellogg Hansen. First, the Woodleys seek to recover fees for 670.5 hours of time expended by Mr. Woodley between 2014 and 2020 and an additional $10,674.16 of related legal costs. *See* Woodleys' *Pro Se* Mot. at 4.

Fee-shifting statutes do not generally permit *pro se* litigants to recover legal fees and costs. *See, e.g.*, *Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991) (holding that a lawyer representing himself may not recover legal fees under 42 U.S.C. § 1988); *May v. United States*, 534 Fed. Appx. 930, 936-37 (Fed. Cir. 2013) (declining to award *pro se* legal fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988); *Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (determining that under 28 U.S.C. § 2412, "a party acting pro se is not entitled to an attorney fee award"); *Naekel v. Department of Transp.*, 845 F.2d 976 (Fed. Cir. 1988). Permitting *pro se* plaintiffs to recover legal fees, even if limited to licensed attorneys, "would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf," thereby undermining the statutory purpose of "ensuring the effective prosecution of meritorious claims." *Kay*, 499 U.S. at 437-38. "The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438. That rationale applies equally to the Uniform Relocation Act's fee-shifting provisions and the court accordingly will decline to award any fees or costs incurred by any *pro se* plaintiff.

The Woodleys attempt to characterize their claim for fees as deriving from an attorney-client relationship between Mr. Woodley and his wife. But the Woodleys have in the past referred to themselves as *pro se* litigants. *See, e.g.*, Notice of Appeal, ECF No. 199 (describing Mr. and Mrs. Woodley as "*Pro Se* Objecting Class[]Claimants"). Moreover, any attempt to describe the relationship between the Woodleys as an attorney-client relationship necessarily elevates form over substance because their underlying claim concerns property jointly owned by them. *See* Decl. of Denise Woodley ¶ 2, ECF No. 251 (noting that the Woodleys jointly purchased the property in 1994). Thus, while Mr. Woodley may have assumed the role of representing his wife, he could only do so by simultaneously representing his own interests on a

*pro se* basis.  Consequently, the court regards the Woodleys as *pro se* litigants and declines to award any legal fees or costs insofar as Mr. Woodley's representation is concerned.

Second, the Woodleys seek to recover legal fees and costs incurred by their representation by attorneys at Kellogg Hansen between 2015 and 2020, amounting to $1,059,152.89.  *See* Woodleys' Kellogg Hansen Mot. at 13.  The Woodleys contend that the settlement agreement could not and did not make provision for the fees they incurred by their individual counsel to object to the agreement and appeal its approval to the Federal Circuit because such objections "could not be asserted until . . . after negotiation of the agreement, and could not be resolved until after approval of the [s]ettlement [a]greement."  Woodleys' Kellogg Hansen Reply at 7.  Nevertheless, although the fees the Woodleys incurred in objecting to the settlement agreement may not have been contemplated by the agreement as initially constituted, their subsequent success in obtaining amounts beyond those specified in the agreement, *see generally* Mot. for Settlement, Ex. D, ECF No. 299, belies any assertion that they obtained no recovery for their efforts.[11]   Accordingly, the court will award no additional recovery for the expenditure of time and costs incurred to object to the settlement agreement, conduct the first appeal in the Federal Circuit, or negotiate with class counsel after the successful appeal.

The situation changed, however, after the government filed its motions seeking to overturn the settlement agreement on March 1, 2017.  From that point forward, the primary emphasis of the legal work performed by Kellogg Hansen on behalf of the Woodleys shifted from resolving the disputed informational and allocation issues to defending, both in this court and on appeal, against the government's attempts to vacate the agreement.  As already noted, those expenses were not comprehended by any of the aspects of the settlement agreement itself or the earlier proceedings related to the agreement.  Consequently, the Woodleys may recover reasonable legal fees and costs incurred in retaining representation by Kellogg Hansen on and after March 1, 2017.

### 3.  Cleveland Square's legal expenses.

After the Federal Circuit's decision vacating the first approval of the settlement agreement, Cleveland Square and twenty-five other class members obtained representation by Hillis Clark Martin & Peterson P.S. ("Hillis Clark").  *See* Cleveland Square's Mot. at 1.  In addition to the portion they received as part of the settlement agreement, the Cleveland Square group now seeks to recover legal fees it paid to Hillis Clark amounting to $244,372.00 and costs of $4,243.92.  *Id.* at 9.

In class actions like this one, the general rule is that "[f]ees and costs may be awarded to the counsel for objectors to a class action settlement if the work of the counsel produced a beneficial result for the class."  *Olden v. Gardner*, 294 Fed. Appx. 210, 221 (6th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 23, Committee Notes, 2003 Amendment, Subdivision

---

[11]The Woodleys received an additional amount over that provided for them in the settlement agreement, but the increase for them did not affect amounts of the recovery for other class members but rather was derived from class counsel.  *See Haggart VIII*, 136 Fed. Cl. at 78.

(h) ("[Subdivision (h)] provides a format for all awards of attorney fees and non-taxable costs in connection with a class action, not only the award to class counsel.  In some situations, there may be a basis for making an award to *other counsel whose work produced a beneficial result for the class*, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel." (emphasis added)).  That principle applies here.  It is not superseded or overridden by the circumstance that the fee applications are based upon the Uniform Relocation Act.  Cleveland Square's retention of independent counsel may have obtained for it a larger overall amount derived from a separate agreement with, and payment from, class counsel, *see Haggart VIII*, 136 Fed. Cl. at 78, but there is no evidence to show that it provided a benefit to the class as a whole.  Notably, counsel for the Cleveland Square group did not seek to enter an appearance in the litigation until July 14, 2017.  *See* Mot. to Substitute Attorney, ECF No. 285.  That was 71 days *after* the court had entered an opinion and order denying the government's motions that sought to overturn the settlement agreement and granting the motion by class counsel to enforce the agreement.  *See Haggart VI*, 131 Fed Cl. 628 (granting motion to enforce the settlement agreement).  In short, the parameters of the remanded case had been set in place before, not after, Cleveland Square's counsel sought to appear.  Cleveland Square's separate representation thus generated no benefit to the broader class.  Accordingly, Cleveland Square is not entitled to any legal fees or costs.

### 4.   *Legal expenses of Mr. Ghoddoussi and Westpoint*.

Class members Mr. Ghoddoussi and Westpoint retained Goodstein Law Group PLLC ("Goodstein") to represent them on May 18, 2017.  *See* Ghoddoussi's Mot. at 1.  They now seek legal fees incurred to retain Goodstein pursuant to a contingent fee agreement in the amount of $143,044.  *See id*. at 4.  They also seek $69,035 to reimburse Goodstein's costs, *id*. at 5, as well as time and expenses expended by Mr. Ghoddoussi for "valuable assistance in preparation of the litigation" and various costs he incurred to retain "expert title officers, appraisers, surveyors, a railroad mapping service, and engineers" even before he retained Goodstein, *id*. at 1-2.

As previously noted, fees and costs may only be awarded if they provided a benefit to the entire class.  *See Olden*, 294 Fed. Appx. at 221.  Mr. Ghoddoussi and Westpoint indicate in their brief that Goodstein's representation assisted them in obtaining more proceeds than before.  *See* Ghoddoussi's Mot. at 2 (noting that they entered into an agreement with class counsel on December 4, 2017).  They have not, however, produced any evidence tending to show that the legal fees and costs they seek to recover generated any benefit to the broader class.  Moreover, as with the Cleveland Square group, counsel's motion for separate representation of Mr. Ghoddossi and Westpoint was first filed on June 16, 2017, *see* Mot. to Substitute Attorney, ECF No. 281, 43 days *after* the court had ordered that the settlement agreement was enforceable and effective and

should be enforced.[12]  Accordingly, Mr. Ghoddoussi and Westpoint are not entitled to any additional fees or costs.

### C.  Reasonableness Analysis

Having determined that the class and the Woodleys are entitled to recover legal fees and costs incurred on and after March 1, 2017, the court must address and assess the reasonableness of the amounts sought.  The firm Stewart, Wald & McCulley ("Stewart Wald") served as class counsel throughout this litigation and during the period relevant here.  Stewart Wald retained Sidley Austin LLP ("Sidley Austin") to handle the appellate portion of the litigation.  The class thus seeks to recover reasonable fees and costs attributable to representation by both Stewart Wald and Sidley Austin.[13]  The firm Kellogg Hansen represented the Woodleys during the period relevant here.  The reasonableness of the fees and costs submitted by each of these three firms will be assessed in turn.

#### 1.  Reasonableness of Stewart Wald's fees and costs.

The class seeks to recover legal fees attributable to Stewart Wald's representation from January 8, 2016 through February 15, 2020, amounting to $3,049,425.50.  *See* Class Counsel's Mot. at 36.  They likewise seek costs for the same period in the amount of $293,550.32.  *See id.* In its reply brief, the class increased those amounts, seeking an additional $184,354.00 in fees and $217.90 in costs incurred between February 15, 2020 and July 6, 2020.  *See* Class Counsel's Reply at 31.  As already noted, the court declines to award fees and costs incurred before March 1, 2017.  During the more limited time period beginning on March 1, 2017 and extending through February 15, 2020, the court calculates that six timekeepers at Stewart Wald expended 4,186.70 hours on this matter, incurring fees amounting to $2,008,830.50.[14]  During that same

---

[12]That first motion was denied on procedural grounds, *see* Order of July 5, 2017, ECF No. 284, but was renewed on August 23, 2017, *see* Mot. to Substitute Attorney, ECF No. 306, after which the subsequent motion was granted*, see* Order of Oct. 11, 2017, ECF No. 322.

[13]Sidley Austin's fees are essentially an expense incurred by class counsel.  Class counsel represents that any recovery based on Sidley Austin's submission "will be reimbursed and paid directly to Sidley Austin LLP whereas the fees and costs incurred and paid to [c]lass [c]ounsel will reimburse the [c]lass [m]embers."  Class Counsel's Mot. at 16 n.40.

[14]The court calculated this amount by reference to the detailed time log provided in the appendix attached to class counsel's motion.  *See generally* Class Counsel's Mot., App. 1.  That detailed ledger provides the date of each time entry, the relevant timekeeper's name, a description of the work performed, and the amount of time expended.  *See id.*  Since 2016, six timekeepers at Stewart Wald have expended time on this matter.  *See id.* at 208.  The report contains a summary showing each of their hourly rates (which remained static during all the reported time period) and the total hours they worked.  *See id.*

period, Stewart Wald incurred expenses of $196,124.73.[15]  Accordingly, including the additional amounts sought for the period after February 15, 2020, the total amount of legal fees and costs sought and potentially recoverable by the class is $2,389,527.13.

Under the lodestar method, the court must first examine the reasonableness of the hours expended.  During the period at issue, the class was obligated to defend multiple motions seeking to nullify the settlement agreement and also undermine the court's previous liability rulings. During this time, having rectified the informational deficiencies identified in the first appeal, the class moved to enforce the settlement agreement, distributed court-approved further notice to class members, and actively participated in a second fairness hearing. When the government appealed the court's order subsequently enforcing the settlement agreement, the class was then obligated to retain and coordinate with appellate counsel in contesting the second appeal.  The class has produced extensive documentation of the attendant fees and costs.  The time report provided identifies the timekeeper performing each task, describes the tasks performed, and sets forth each timekeeper's hourly rate and the amount of time expended.  *See* Class Counsel's Mot., App. 1.  Exercising billing judgment, the firm eliminated hours it considered excessive, redundant, or duplicative, *see* Class Counsel's Mot., App. 2 ¶ 37 (Decl. of Thomas S. Stewart), and provided a summary of the careful division of labor between its attorneys and paralegals, *see* Class Counsel's Mot. at 23-24.

The government levels a variety of objections to the reasonableness of the hours expended by Stewart Wald.  By comparing the total fees now sought with the amount provided in the settlement agreement, the government concludes that the amount of time expended by Stewart Wald was excessive, "patently unreasonable when measured against the time expended by these attorneys in this action during the first five years after filing—a time when substantially more work was undertaken."  Def.'s Resp. to Class Counsel's Mot. at 30.  To the extent that objection has any basis, and the court doubts that it does, the court is satisfied that its decision to limit fees to the period following March 1, 2017 sufficiently addresses it.  The government further contends that numerous time entries are too vague to be reimbursable, that much time relates to non-reimbursable administrative work, and that time spent preparing the motion for fees must be reduced because the motion borrowed heavily from a previously filed petition.  *See id.* at 32-34.  The court finds these arguments unpersuasive.

First, the government's assertion that numerous time entries describing correspondence or conferences with class members are too vague is undermined by the context of the surrounding time entries and the general posture of the litigation corresponding to the date of the entry.  That additional detail sheds adequate light on what, standing alone, might otherwise be a vague entry.  Here, the court can easily infer the nature of the correspondence and tasks in these entries based upon the surrounding context and is satisfied with their reasonableness.  Second, nearly all the entries the government identifies as administrative work are already disallowed

---

[15]The court calculated this figure by reference to the detailed listing (which provides the date and description) of every expense incurred that is included in the appendix attached to class counsel's motion.  *See* Class Counsel's Mot., App. 1 at 209-29.

because they occurred prior to March 1, 2017, s*ee generally* Def.'s Resp. to Class Counsel's Mot., App. 1, and are thus irrelevant.[16]   Finally, the government's objection that the motion for fees heavily borrowed from the class's 2013 motion is also undermined by the long elapse of time and events between these two motions.   The court is not persuaded that the motions or posture of the case at the present time compared to what it was seven years ago are substantially similar enough to warrant reducing any allowable time.

Satisfied that the hours expended during the relevant time period are reasonable, the court must next determine the reasonableness of the rates charged by Stewart Wald's attorneys. Reasonable hourly rates under the lodestar method are "calculated according to prevailing market rates in [the] relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).   The class has provided documentation of the experience and qualifications of each timekeeper as well as their billing rates, which remained static throughout all relevant times and range from $175 per hour for paralegals to between $445 and $595 per hour for partners.  *See generally* Class Counsel's Mot., App. 2.   These rates, the class notes, are Stewart Wald's "historic hourly rates in Kansas City, utilizing Kansas City as the forum, and the rates were established and utilized based on the experience of each timekeeper within the Kansas City market."  Class Counsel's Mot. at 26-27.   Additionally, the class has produced three declarations of other attorneys—including one by a former federal magistrate judge in the relevant market—opining on the reasonableness of the rates, *see id.*, Apps. 9-11, and concluding that they "reflect the prevailing billing rates of attorneys within those communities of similar experience and expertise," *id.*, App. 9 at 6.

The government "agrees that the [c]ourt should apply Kansas City rates to work performed by [Stewart Wald], but disagrees that rates charged in [St. Louis and Kansas City] are the same."  Def.'s Resp. to Class Counsel's Mot. at 35.   Instead, the government maintains that the rates Stewart Wald charged for the work of its partners more closely approximate rates in the St. Louis market—which, the government also contends, are nearly $100 higher than in Kansas City.  *Id.* (citing *Whispell Foreign Cars, Inc. v. United States*, 139 Fed. Cl. 386, 399 (2018) (which addressed forum rates in St. Louis, not Kansas City)).   The government relies on a brief reference in *Whispell* to average rates in Kansas City in 2016 and 2017 without offering a contrary opinion or even addressing the more specific recitations set out in the affidavits proffered by the class.   As the government has not even attempted to rebut the class's affidavits testifying specifically to the reasonableness of Stewart Wald's rates which are informed by first-hand experience, the court declines the government's asseverations.

Finally, the court must assess the reasonableness of the costs incurred by Stewart Wald. Generally, the court "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried."  *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (footnote omitted).   The government contends that "[t]he nearly $300,000 in expenses for which [c]lass [c]ounsel seeks reimbursement from the United States is

_____

[16]The government attached to its response brief an appendix identifying its specific objection to each individual time entry and summarizing the amount of time that falls within each objection.

grossly excessive" and "includes over $100,000 in unrecoverable expenses."  Def.'s Resp. to Class Counsel's Mot. at 37.  To begin, by limiting recoverable costs only to those incurred after March 1, 2017, the court has already eliminated nearly $100,000 as unrecoverable.  The remaining amounts fall within three general categories—travel related costs, experts, and administrative costs such as postage, printing, and copying.  The court considers that these costs, which are carefully documented by class counsel, fall within those "reasonable and necessary expenses" which are "customarily charged to the client where the case is tried."  *Oliveira*, 827 F.2d at 744.  Moreover, nearly half of the remaining amount is attributable to Stewart Wald's retention of expert appraisers (to prepare for a potential trial in response to the government's motions for reconsideration) and outside attorneys (to respond to the government's efforts regarding fee agreements).  These decisions were triggered by the government's own discovery efforts and litigation strategy and were reasonably incurred based on the status of the case at the relevant times.  Accordingly, finding the hours, rates, and costs charged by Stewart Wald reasonable, the court awards the class $2,389,527.13 in legal fees and costs.

### 2. *Reasonableness of Sidley Austin's fees and costs.*

The class next seeks to recover legal fees attributable to Sidley Austin's representation as the class counsel's appellate counsel for the second appeal from 2018 through February 15, 2020.  Sidley Austin expended 476.75 hours during this time, amounting to $595,393.75 in fees.  *See* Class Counsel's Mot. at 36.  They likewise seek costs for the same period in the amount of $7,832.96.  *See id.*  The class supplemented those amounts in its reply brief, seeking an additional $22,335.00 in fees for an additional 21.25 hours and $16,178.41 in costs attributable to the period from February 15, 2020 to July 6, 2020.[17]  *See* Class Counsel's Reply at 32.  In sum, the class seeks a total of $641,740.12 for legal fees and costs attributable to Sidley Austin's representation.[18]

All of Sidley Austin's fees and costs fall within the recoverable time period after March 1, 2017.  Consistent with the lodestar method, the court will first examine the reasonableness of the 498 hours expended.  The government focuses its objections on the hourly rates charged by Sidley Austin and does not appear to contest the reasonableness of the time expended.  Any such objection to Sidley Austin's time would have been unavailing.  Sidley Austin has produced detailed billing records identifying each timekeeper, describing the tasks performed, and setting forth each timekeeper's hourly rate and the amount of time expended.  *See generally* Class

---

[17]Most of the additional costs requested were incurred by the retention of Seth P. Waxman to review the litigation file and prepare an affidavit regarding the reasonableness of Sidley Austin's fees.  *See* Class Counsel's Reply, App. 2 at 7-10.

[18]Class counsel's reply brief includes a table summarizing Sidley Austin's fees and costs through July 6, 2020.  *See* Class Counsel's Reply at 32.  That summary misstates the total as $641,641.12—the $99.00 difference is apparently attributable to arithmetical error: the total column adding Sidley Austin's fees and costs after February 15, 2020 does not foot properly and that error carries through to the final total.

Counsel's Mot., App. 3.  Additionally, the firm provided a declaration by Mr. Carter G. Phillips testifying about staffing decisions, work performed, and the credentials of each of the timekeepers involved.  *See id.*, App. 4.  It also provided a declaration by former Solicitor General of the United States Seth P. Waxman, opining on the reasonableness of both the rates and total amount of fees charged, stating that the issues in the appeal "were complex[] and required extensive research and review of a voluminous record" and concluding that "[t]he total fees incurred for this matter were comparable to those that I have observed in cases of similar complexity."  *Id.*, App. 6 ¶ 9.  The court is satisfied that the hours Sidley Austin expended on this matter were reasonable.

The court must next address the reasonableness of the rates charged by Sidley Austin's attorneys.  The requested hourly rates range from $2,000 for Mr. Phillips to between $850 and $1,300 for other partners and counsel.  *See generally* Class Counsel's Mot., App. 3.  The hourly rates for legal assistants range from $360 to $400.  *Id.*  The government contends that these rates are "grossly excessive," Def.'s Resp. to Class Counsel's Mot. at 35 (heading), that they "far outstrip those applied in Trails Act litigation and cannot be justified here" because "[t]his case does not warrant enhanced, above-market rates," *id.* at 36.  The government supports this position by citing the Federal Circuit's application of the so-called *Laffey* rates in *Biery v. United States*, 818 F.3d 704 (Fed. Cir. 2016).  *See* Def.'s Resp. to Class Counsel's Mot. at 36-37.  Sidley Austin's rates, the government emphasizes, "are three to four times greater than the [*Laffey*] rates for complex litigation."  *Id.* at 37.  The class counters that while "the rates utilized by [Sidley Austin] are higher than the rates set forth in the adjusted *Laffey* Matrix, the fact is that Carter Phillips and his team are not really included in the adjusted *Laffey* Matrix because they are among the top appellate lawyers in Washington, D.C. and their rates are their actual rates that have actually been paid by [c]lass [c]ounsel."  Class Counsel's Resp. at 30 (citing *Lost Tree Village*, 135 Fed. Cl. at 93-96).

Fees incurred and paid by a client at an agreed rate—as they were here—are presumptively reasonable because "[i]n reaching agreement, lawyer and client have already considered and weighed all the relevant factors."  *Florida Rock Indus., Inc.*, 9 Cl. Ct. at 290 (citing *Laffey*, 746 F.2d at 24-26).  What the government fails to consider is that the class actually incurred Sidley Austin's fees, *see* 42 U.S.C. § 4654(c) (requiring the award of legal fees "actually incurred"), to obtain representation by a uniquely credentialed, experienced, and elite appellate team.  Perhaps only a handful of attorneys in private practice anywhere in the country bring to bear expertise comparable to that offered by Mr. Phillips—who, in addition to over 35 years of private practice, has served as Assistant to the Solicitor General of the United States, and has argued 88 cases before the United States Supreme Court and more than 140 cases in the United States courts of appeals.  *See* Class Counsel's Mot., App. 4 ¶ 4.  All the Sidley Austin attorneys who worked on this matter are likewise "graduates of elite law schools and most completed prestigious federal clerkships."  *Id.*, App. 6 ¶ 8.  Moreover, "all have experience in civil litigation commensurate with their years of legal practice."  *Id.*  Accordingly, the court is satisfied that the rates charged by the team assembled by Mr. Phillips are reasonable.

Nevertheless, the court is also mindful that Mr. Phillips's rate of $2,000 per hour exceeds by $700 the next highest rate charged by Sidley Austin on this matter and considers that

difference unwarranted by the circumstances at hand.  The court notes that Mr. Frederick, an attorney of less but at least somewhat comparable experience (having argued more than 50 cases in the United States Supreme Court) charged no more than $1,100 per hour for his work on this same matter.  *See* Woodleys' Kellogg Hansen Mot. at 8.[19]  Therefore, to address and somewhat limit this disparity, the court—relying on its "own expertise to recognize applicable prevailing rates," *Morris*, 20 Cl. Ct. at 29 (citation omitted)—will reduce the hourly rate recoverable for Mr. Phillips's work on this matter to $1,500, which reflects a one-quarter reduction. Accordingly, applying that reduced rate to the 133.75 hours Mr. Phillips recorded, the court will award the class $552,228.75 for Sidley Austin's legal fees.

Finally, the court must assess the reasonableness of the $24,011.37 costs incurred by Sidley Austin.  The government's response brief does not specifically address or challenge any of the costs requested by Sidley Austin.  Having reviewed the detailed listing of the claimed costs, the court is satisfied that they were "reasonable and necessary expenses . . . customarily charged."  *Oliveira*, 827 F.2d at 744 (footnote omitted).  Accordingly, the court awards the class $576,240.12 in legal fees and costs attributable to the representation by Sidley Austin.

### 3. Reasonableness of Kellogg Hansen's fees and costs.

In their initial motion, the Woodleys sought to recover legal fees and costs attributable to Kellogg Hansen's representation from February 2015 through February 2020, amounting to $1,059,152.89.  *See* Woodleys' Kellogg Hansen Mot. at 13.[20]  In their reply brief, the Woodleys increased that amount to $1,089,071.21, requesting an additional $29,918.32 to account for additional time and expense incurred between March and June 2020.[21]  *See* Woodleys' Kellogg

---

[19]This litigation indeed brought into play the work of preeminent counsel.

[20]The detailed billing records set forth in the appendix to the Woodleys' brief show that Kellogg Hansen attorneys expended 1,840.90 hours on this matter during this time period.  *See* Woodleys' Kellogg Hansen Mot., App. 3 at 76.  Based upon the ordinary hourly rates of its attorneys and staff, Kellogg Hansen would charge $1,047,770.00 for that time, *id.*, and during that same time period, Kellogg Hansen incurred costs of $26,937.89, *id.* at 83, amounting to total fees and costs of $1,074,707.89.

The firm then reduced that amount in two respects.  First, it reduced the fees for hours billed for travel (approximately 24 total hours by two attorneys in October 2019) by 50%, thereby reducing the total fees sought by $10,440.  *See* Woodleys' Kellogg Hansen Reply, App. 1 ¶ 4 (Decl. of David C. Frederick).  Second, it billed time during 2020 at the attorneys' lower 2019 rates, reducing the total fees sought by an additional $5,115.  *Id.*

[21]The detailed billing records set forth in the appendix to their reply brief show that Kellogg Hansen attorneys expended 41 more hours on this matter during that time period.  *See* Woodleys' Kellogg Hansen Reply, App. 2 at 5.  Based upon the ordinary hourly rates of the attorneys and staff, the firm would charge $34,202 for that time, *id.*, and during that same period the firm incurred new costs of $184.32, *id.*, amounting to an additional $34,386.32.  By charging

Hansen Reply at 4-5. In sum, the Woodleys' seek a total of $1,089,071.21 in legal fees and costs attributable to Kellogg Hansen's representation between February 2015 and June 2020.

The court declines, as already noted, to award fees and costs incurred before March 1, 2017. During the more limited time period beginning on March 1, 2017 and extending through February 2020, the court calculates that 12 timekeepers at Kellogg Hansen expended 771.30 hours on this matter, incurring fees at the firm's ordinary billing rates amounting to $473,051.00.[22] That figure can then be reduced $15,555—down to $457,496—by using Kellogg Hansen's methodology of charging 2019 billing rates for hours expended in 2020 and charging only 50% for travel hours the firm billed in October 2019. *See* Woodleys' Kellogg Hansen Reply, App. 1 at ¶ 4. From March 1, 2017 through February 2020, Kellogg Hansen incurred expenses of $10,034.72.[23] Finally, including the additional $29,918.32 of fees and costs incurred from March through June 2020, the total potentially recoverable amount attributable to the period beginning March 1, 2017 and ending July 6, 2020 is $497,449.

The court again begins the analysis by determining whether the number of hours expended by Kellogg Hansen during the relevant time period is reasonable. Upon detailed review of the time entries and descriptions provided by Kellogg Hansen, the court is satisfied

---

the attorneys' time at their 2019 rather than 2020 rates, the firm then reduced that amount by $6,468. *See* Woodleys' Kellogg Hansen Reply, App. 1 ¶ 5.

[22]The billing detail Kellogg Hansen provided lists each individual time entry—noting the date, the initials of the timekeeper, a description, and the amount of time expended. *See generally* Woodleys' Kellogg Hansen Mot., App. 3. Because some timekeepers had different billing rates over the several years in which they performed work on this matter, the report also includes a summary of the total hours expended by each timekeeper at that individual's various billing rates. *See id.* at 3. The summary does not, however, specify which billing rate pertains to which year.

Calculating which fees should be apportioned to the period after March 1, 2017 required the court to determine which billing rates applied to which year. The court noted that the number of hours at different rates set forth in the summary aligned with the hours expended by the relevant timekeeper during specific calendar years. Accordingly, the court was able to match the appropriate bill rate for each timekeeper with the relevant year and apply that finding to determine the fees incurred on and after March 1, 2017.

The court is confident that its calculation accurately apportions the fees incurred during this partial period because, by employing the same methodology but extrapolating the rates across the entire period, it successfully recalculated with exact precision the summary provided for the full period.

[23]The court arrived at this amount by simple addition, summing the expenses detailed in the billing records that were dated on or after March 1, 2020. *See* Woodleys' Kellogg Hansen Mot., App. 3 at 78-84.

that they were reasonable and necessary. The government levels a series of unpersuasive objections to Kellogg Hansen's time entries, *see* Def.'s Resp. to Woodleys' Kellogg Hansen Mot. at 22-28, some of which are mooted at the outset by the court's determination that fees incurred before March 1, 2017 are not recoverable, *see, e.g.*, *id.* at 23-24 (seeking denial of reimbursement for hours incurred between February 2015 and July 2016).

The government contends that any "time spent on unsuccessful claims post-remand" should be eliminated, Def.'s Resp. to Woodleys' Kellogg Hansen Mot. at 24, but as the Woodleys convincingly point out, "[t]he government confuses unsuccessful *claims* with unsuccessful (or moot) *arguments*," Woodleys' Kellogg Hansen Reply at 12. The government next asserts that time spent on the second appeal, addressing enforcement of the settlement agreement, is not recoverable because it "sounds in contract" and was therefore outside the purview of the Uniform Relocation Act. Def.'s Resp. to Woodleys' Kellogg Hansen Mot. at 27. As noted previously, however, the second appeal was a direct consequence of the government's attempt to undermine and overturn the settlement agreement. Declining to award fees under the government's contract theory would enable the government to avoid paying fees by litigation maneuvering, and the court declines to sanction such an approach. Finally, the government identifies hours that it considers "duplicative and vague billing entries by peripheral attorneys," *id.* at 27, but the court is not satisfied that any of this time is either duplicative or vague. Contrary to the government's assertion, the court does not regard as duplicative time spent mooting Mr. Frederick in advance of oral arguments—a standard practice in appellate litigation. Likewise, entries the government identifies as vague are hardly lacking sufficient narrative explanation to enable the court to assess the nature of the work performed and consider the reasonableness of the time spent.

The court must next consider the reasonableness of the rates charged by Kellogg Hansen's attorneys. The requested hourly rates range from $1,100 for Mr. Frederick and between $395 and $600 for associates. *See* Woodleys' Kellogg Hansen Mot. at 8. Solely by reference to the *Laffey* matrix, the government contends that these rates are "unreasonably high." Def.'s Resp. to Woodleys' Kellogg Hansen Mot. at 29.

As with its objections to Sidley Austin's rates, the government has neither addressed nor offered contrary opinions to counter the affidavit testifying to reasonableness proffered by the Woodleys. *See* Woodleys' Kellogg Hansen Mot., App. 1 (Decl. of Jeffrey A. Lamken). That affidavit states that "compared to the rates of similarly distinguished appellate practitioners . . . Mr. Frederick's rates are relatively low" and the rates charged for the associates' time "were reasonable or even on the low side." *Id.* ¶¶ 6, 7. Nor has the government considered the specialized appellate expertise of the team assembled by Kellogg Hansen, an important aspect notably unaccounted for by the *Laffey* matrix's average rates. The government's exclusive reliance on the *Laffey* matrix rates is thus misplaced under these circumstances. Moreover, the government also fails to observe that the Woodleys actually incurred Kellogg Hansen's rates, which they were willing to pay to obtain the high level of representation offered by Mr. Frederick's team at Kellogg Hansen—a strong indicator of reasonableness. *See Lost Tree Village*, 135 Fed. Cl. at 93-96. Accordingly, the court is satisfied that the rates charged by Kellogg Hansen's attorneys were reasonable.

Finally, the court must address the reasonableness of the $10,219.04 in costs incurred by Kellogg Hansen from March 1, 2017 through July 6, 2020.  The government contends that the total costs originally sought by Kellogg Hansen should be reduced by approximately $17,000 because these costs for meals, Westlaw expenses, and attorney admissions "are included in the overhead associated with operating a firm and are not reimbursable under the [Uniform Relocation Act]."  Def.'s Resp. to Woodleys' Kellogg Hansen Mot. at 33.  Significantly, many of the costs identified by the government were already eliminated by the court's decision to award no costs incurred before March 1, 2017.  Furthermore, the government's assertion that the costs it identifies are non-reimbursable overhead costs is belied by the fact that the firm billed and the Woodleys actually paid these amounts to litigate the case.  *See* Woodleys' Kellogg Hansen Reply at 17-18 (noting that the meal costs were incurred by attorneys traveling to litigate the case, the Westlaw expenses are billed to individual clients in the ordinary course of business, and the admission fees were incurred to permit attorneys to litigate this particular case).  In sum, the court is satisfied that these costs were reasonably incurred.

## CONCLUSION

For the reasons stated, the Woodleys' motion for *pro se* fees and costs, Mr. Ghoddoussi's corresponding motion, and Cleveland Square's comparable motion are DENIED.

The class's motion and the Woodleys' motion for Kellogg Hansen's fees and costs are GRANTED IN PART AND DENIED IN PART.  The class is awarded reasonable legal fees and costs attributable to the representation provided by Stewart Wald in the amount of $2,389,527.13.  The class is also awarded reasonable legal fees and costs attributable to the representation provided by Sidley Austin in the amount of $576,240.12.  The Woodleys are awarded reasonable legal fees and costs attributable to the representation provided by Kellogg Hansen in the amount of $497,449.00.  The clerk is directed to enter final judgment accordingly.

No further costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge