# In the United States Court of Federal Claims

No. 09-103L

(Filed: November 25, 2020)

| | |
|---|---|
| **DANIEL and KATHY HAGGART,** *et al.*, **For Themselves and As Representatives of a Class of Similarly Situated Persons,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Motions for reconsideration of awards of attorneys' fees and expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654(c); fees not awardable to *pro se* litigants; fees incurred to preserve and defend settlement against effort to overturn it; consideration of amounts paid earlier by class counsel; reasonableness of fees and expenses |

Thomas S. Stewart, Stewart Wald & McCulley LLC, Kansas City, Missouri, for plaintiffs Daniel Haggart and Kathy Haggart, *et al*.  With him on the briefs were Elizabeth G. McCulley, Stewart Wald & McCulley LLC, Kansas City, Missouri, Steven M. Wald and Michael J. Smith, Stewart Wald & McCulley LLC, St. Louis, Missouri.

David C. Frederick, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, Washington, D.C., for plaintiffs Gordon A. Woodley and Denise L. Woodley.

Mary Crego Peterson, Hillis Clark Martin & Peterson P.S., Seattle, Washington, for plaintiff Cleveland Square, LLC and twenty-five others.

Richard B. Sanders, Goodstein Law Group PLLC, Tacoma, Washington, for plaintiffs Faramarz Ghoddoussi and Westpoint Properties, LLC.

Lucinda J. Bach, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Jean E Williams, Deputy Assistant Attorney General, Environment and Natural Resources Division, and Sarah Izfar, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Pending before the court in this rails-to-trails takings class action involving hundreds of plaintiffs and an award of just compensation of over $100 million are four motions for reconsideration of the court's opinion and order of August 12, 2020 regarding legal fees and expenses. These motions add to a circuitous procedural history that has generated numerous opinions from this court and two separate opinions from the Federal Circuit.[1] The action was settled in 2014, but plaintiffs Denise and Gordon Woodley objected to the settlement agreement. They were successful on appeal and ultimately obtained an amount beyond that stated in the agreement. In due course, they sought to recover legal expenses for representing themselves *pro se* and for work performed on their behalf by the law firm Kellogg Hansen. *See Denise Lynn Woodley's Mot. for Recons.* ("*Pro Se* Mot."), ECF No. 392; *Gordon & Denise Woodley's Mot. for Partial Recons.* ("Kellogg Hansen Mot."), ECF No. 395. Westpoint Properties, Faramarz Ghoddoussi, Cleveland Square, and other plaintiffs who retained independent counsel also sought attorneys' fees and expenses. *See Faramarz Ghoddoussi & Westpoint Properties, LLC's Mot. for Recons.* ("Ghoddoussi Mot."), ECF No. 394; *Cleveland Square's Mot. for Recons.* ("Cleveland Square Mot.), ECF No. 396.

In the opinion issued August 12, 2020, the court granted in part and denied in part the class' motion for legal fees as well as the Woodleys' motion for Kellogg Hansen's fees and costs. *Haggart X*, 149 Fed. Cl. at 670. The court denied the Woodleys' motion for *pro se* fees and costs, Mr. Ghoddoussi's motion for legal fees, and Cleveland Square's corresponding motion. *Id.* The Woodleys, Mr. Ghoddoussi, and Cleveland Square now seek reconsideration of the court's decision. At issue in the motions for reconsideration is whether the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("the Uniform Relocation Act" or "the URA") (i) entitles counsel for two class members (a married couple) to recover legal fees "for the expenditure of time and costs incurred to object to the settlement agreement, conduct the first appeal in the Federal Circuit, or negotiate with class counsel after the successful appeal," *Haggart X*, 149 Fed. Cl. at 662, and (ii) entitles non-objecting plaintiffs to recover legal expenses incurred by independent counsel for work conducted prior to and after those counsel entered an appearance.

---

[1] This case has been the subject of ten reported decisions, including eight from this court and two from the Federal Circuit. *See Haggart v. United States*, 89 Fed. Cl. 523 (2009) ("*Haggart I*"); *Haggart v. United States*, 104 Fed. Cl. 484 (2012) ("*Haggart II*"); *Haggart v. United States*, 108 Fed. Cl. 70 (2012) ("*Haggart III*"); *Haggart v. United States*, 116 Fed. Cl. 131 (2014) ("*Haggart IV*"), *vacated and remanded sub nom. Haggart v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016) ("*Haggart V*"); *Haggart v. United States*, 131 Fed. Cl. 628 (2017) ("*Haggart VI*"); *Haggart v. United States*, 133 Fed. Cl. 568 (2017) ("*Haggart VII*"); *Haggart v. United States*, 136 Fed. Cl. 70 (2018) ("*Haggart VIII*"), *aff'd, Haggart v. United States*, 943 F.3d 943 (Fed. Cir. 2019) ("*Haggart IX*"); *Haggart v. United States*, 149 Fed. Cl. 651 (2020) ("*Haggart X*").

## BACKGROUND

The class action dispute underlying the pending motions originated in the State of Washington, where the federal government converted land into a recreational trail pursuant to Section 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified in relevant part at 16 U.S.C. § 1247(d)). Plaintiffs filed suit in 2009, alleging that the conversion constituted a taking without just compensation in violation of the Fifth Amendment. Compl. ¶¶ 14, 18, ECF No. 1. In 2012, the court certified a class of over 500 members, which was subsequently split into six subclasses. *See Haggart II*, 104 Fed. Cl. at 491. Later that year, in ruling on cross-motions for summary judgment, the court found the government liable to "plaintiffs in Subclass Two and those in Subclass Four, categories A through D" and granted summary judgment for the government for "[c]laims falling within Subclass Four Category E." *Haggart III*, 108 Fed. Cl. at 98.

The parties reached a settlement in February 2014, under which 268 class members' claims would be dismissed without compensation and $110 million would be paid to the remaining 253 class members as just compensation for the alleged taking. *Haggart VIII*, 136 Fed. Cl. at 73-74. After a fairness hearing, the court approved the settlement and awarded legal fees to class counsel under the common fund doctrine. *Haggart IV*, 116 Fed. Cl. 131. Mr. and Mrs. Woodley, however, objected to the settlement at the fairness hearing. *Id.* at 142. On appeal, they argued that class counsel had failed to provide sufficient information in writing regarding the amount each plaintiff would receive from the total settlement, and that the common fund doctrine should not have been used to award legal fees. *See Haggart V*, 809 F.3d at 1346-47, 1352. On January 8, 2016, the Federal Circuit concluded that "class counsel withheld critical information not provided in the mailed notice to class members, but which had been produced and was readily available." *Id.* at 1351. The Federal Circuit also vacated this court's approval of the settlement agreement and award of attorney fees under the common fund doctrine. *Id.* at 1351-59. This court then "re-opened discovery to rectify the deficiency of written notice to the class, enabling the Woodleys and other class members to access detailed documentation that had not previously been made available to them in electronic form." *Haggart X*, 149 Fed. Cl. at 657 (citing *Haggart VI*, 131 Fed. Cl. at 632). This period of discovery allowed the government to take "curative action" regarding the informational deficiency identified by the Federal Circuit and led this court to subsequently conclude that the settlement agreement was procedurally fair. *Haggart VIII*, 136 Fed. Cl. at 74, 77.

In November 2016, however, the government abruptly changed its position by indicating "that it considered the settlement agreement itself to be invalid." *Haggart X*, 149 Fed. Cl. at 657. The government filed a motion for reconsideration regarding the validity of the settlement agreement, thereby "engendering a subsequent flurry of motions and proceedings that yielded two additional opinions from this court and a second appeal." *Id.* After rejecting the government's attempt "to negate the unconditional, comprehensive [s]ettlement [a]greement that [it] executed with the class," *Haggart VII*, 133 Fed. Cl. at 572, the court held a fairness hearing in which numerous class members participated, *Haggart VIII*, 136 Fed. Cl. at 75. No objections were made. The court approved the agreement and entered a partial final judgment under Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"), "effectively . . . bifurcat[ing the]

3

approval of the settlement agreement from any determination regarding legal fees and costs." *Haggart X*, 149 Fed. Cl. at 657-58. On appeal, the Federal Circuit affirmed this court's approval of the agreement and declined to address the issue of attorneys' fees and costs under the Uniform Relocation Act, citing a lack of jurisdiction in the absence of a final judgment in that regard. *Haggart IX*, 943 F.3d at 951-52.

Following the Federal Circuit's mandate, "plaintiffs filed five separate motions, representing four different plaintiffs or groups of plaintiffs, seeking legal fees and costs pursuant to the [Uniform Relocation Act]." *Haggart X*, 149 Fed. Cl. at 658 (footnote omitted). The court concluded that neither the Woodleys nor Kellogg Hansen were entitled to legal fees "for the expenditure of time and costs incurred to object to the settlement agreement, conduct the first appeal in the Federal Circuit, or negotiate with class counsel after the successful appeal." *Haggart X*, 149 Fed. Cl. at 662. The court recognized, however, that Kellogg Hansen's role in the litigation "shifted" after March 1, 2017, when the government sought to overturn the settlement agreement. *Id.* Accordingly, the court awarded the Woodleys attorneys' fees and expenses for the work conducted by Kellogg Hansen in "defending . . . against the government's attempts to vacate the agreement." *Id.* The court also granted the class' motion for legal fees and costs incurred on and after March 1, 2017, but denied the motion to the extent that it requested "additional fees and costs that were anticipated by the remand from the Federal Circuit [in *Haggart V*]." *Id.* at 661.

The court also considered the motion for legal expenses brought by Faramarz Ghoddoussi and Westpoint Properties, LLC, as well as the motion brought by Cleveland Square, LLC and other class members who had obtained independent representation by Hillis Clark Martin & Peterson P.S. ("Hillis Clark"). *Haggart X*, 149 Fed. Cl. at 662-63. These two groups of plaintiffs contended that they were entitled to attorneys' fees and costs for appearing and supporting the settlement agreement. *See id.* Counsel for Mr. Ghoddoussi and Cleveland Square had entered appearances after the court had ruled against the government regarding the validity of the settlement agreement. *See id.* at 663. After noting that counsel for the separately represented plaintiffs had not "produced a beneficial result for the class" as a whole, the court denied both motions. *Id.* at 662-63 (quoting *Olden v. Gardner*, 294 Fed. Appx. 210, 221 (6th Cir. 2008)).

On August 31, 2020, the Woodleys moved for reconsideration of the court's decision to deny their motion for legal expenses. *See Pro Se* Mot. This motion was followed by the three subsequent motions for reconsideration pending before the court. *See* Kellogg Hansen Mot.; Ghoddoussi Mot.; Cleveland Square Mot. After briefing was completed,[2] the court held a hearing on October 23, 2020. The motions are ready for disposition.

---

[2] *See* Def.'s Resp. to Pls.' Mots. For Recons. ("Def.'s Resp."), ECF No. 401; Denise Lynn Woodley's Reply to Def.'s Resp. ("*Pro Se* Reply"), ECF No. 402; Gordon & Denise Woodley's Reply to Def.'s Resp. ("Kellogg Hansen Reply"), ECF No. 404; Faramarz Ghoddoussi & Westpoint Properties, LLC's Reply to Def.'s Resp. ("Ghoddoussi Reply"), ECF No. 403.

## STANDARDS FOR DECISION

### A.  Motion for Reconsideration

Under RCFC 59(a)(1), the court may grant a motion for reconsideration:

> (A) for any reason for which a new trial has heretofore been granted in an action
> at law in federal court; (B) for any reason for which a rehearing has heretofore
> been granted in a suit in equity in federal court; or (C) upon the showing of
> satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or
> injustice has been done to the United States.

RCFC 59(a)(1)(A)–(C). "In effect, the court 'may grant a motion for reconsideration when there
has been an intervening change in the controlling law, newly discovered evidence, or a need to
correct clear factual or legal error or prevent manifest injustice.'"  *Tolliver Grp., Inc. v. United
States*, 148 Fed. Cl. 351, 354 (2020) (quoting *Biery v. United States*, 818 F.3d 704, 711 (Fed.
Cir. 2016)).  The decision of whether to grant reconsideration generally lies within the discretion
of the court.  *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990)
(citations omitted).

"Courts must address reconsideration motions with 'exceptional care.'"  *IAP Worldwide
Servs., Inc. v. United States*, 141 Fed. Cl. 788, 799 (2019) (quoting *Carter v. United States*, 207
Ct. Cl. 316, 318 (1975)).  And, a motion for reconsideration "is not an opportunity for an
unhappy litigant to have an 'additional chance to sway the court.'"  *1100 West Ewing Assoc. v.
United States*, 139 Fed. Cl. 24, 25 (2018) (quoting *Martin v. United States*, 101 Fed. Cl. 664, 671
(2011) (additional citation omitted)).  The moving party "may not merely reassert arguments that
'were previously made and carefully considered by the court.'"  *Haggart VII*, 133 Fed. Cl. at 573
(quoting *Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 782 (2012) (additional
citations omitted)).  A motion for reconsideration is also unavailing where the moving party
"raise[s] an issue for the first time that was available to be litigated earlier in the case."  *Martin*,
101 Fed. Cl. at 671 (citing *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006); *Gelco
Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966)); *see
also Bannum v. United States*, 59 Fed. Cl. 241, 243 (2003).

### B.  The Uniform Relocation Act and RCFC 23

The parties agree that this dispute is governed by the Uniform Relocation Act.  *See
Haggart X*, 149 Fed. Cl. at 660 ("Jurisdiction derives from the same sources that it has
throughout the protracted pendency of this litigation: the Tucker Act and the Uniform Relocation

---

Moreover, the movants also filed notices of appeal regarding their motions for
reconsideration.  *See* ECF Nos. 405, 407.  The Federal Circuit deactivated these appeals, noting
that the motions for reconsideration were still outstanding.  *See* U.S. Court of Appeals for the
Federal Circuit Order of October 20, 2020, ECF No. 411; U.S. Court of Appeals for the Federal
Circuit Order of October 20, 2020, ECF No. 412.

Act.").  The Uniform Relocation Act waives federal sovereign immunity with respect to legal fees and costs in takings cases and mandates that when awarding a plaintiff compensation for a taking by a federal agency, the court shall "reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, *actually incurred* because of such proceeding."  42 U.S.C. § 4654(c) (emphasis added).

RCFC 23 also applies to the pending motions, as the court certified the class of plaintiffs and subsequently designated six separate subclasses.  *See Haggart II*, 104 Fed. Cl. at 491.  Rule 23(h) permits the court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in certified class actions.  RCFC 23(h).

Given that the Federal Circuit declined to address the issue of attorneys' fees and costs on jurisdictional grounds in the most recent appeal, *Haggart IX*, 943 F.3d at 951-52, and it subsequently has deactivated plaintiffs' premature appeals of their motions for reconsideration, *see* ECF Nos. 411-12, this court has the authority to consider plaintiffs' motions.  *Cf. Rocky Mountain Helium v. United States*, 145 Fed. Cl. 662, 665 (2019) (concluding that the court had the juridical power to consider the government's motion for reconsideration).

## ANALYSIS

### A.  *The Woodleys' Pro Se Expenses*

The Woodleys request reconsideration of the court's denial of their motion for *pro se* litigation expenses.  *See Pro Se* Mot.  They assert that the court incorrectly designated them as *pro se* litigants, *id.* at 13, and that Washington law entitles them to 12% interest on these expenses, *id.* at 19-21.  The government counters that the law of the Federal Circuit, not the law of the State of Washington, applies to the case.  Def.'s Resp. at 9.

Contrary to the Woodleys' position, this court is bound by the law of the Federal Circuit, not the law of the State of Washington.  *See Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012) ("In light of 'the evident congressional desire for uniform adjudication of Little Tucker Act claims' and Tucker Act claims . . . we hold that our law, rather than the law of the regional circuit, should apply to an award of attorneys' fees under section 4654(c).") (citing *United States v. Hohri*, 482 U.S. 64, 73 (1987)).  The Woodleys themselves acknowledge that the law of the Federal Circuit is "the law of the case."  *Pro Se* Mot. at 15.  The State of Washington's approach, therefore, has no persuasive force regarding whether the Woodleys may be reimbursed under the Uniform Relocation Act for the cost of representing themselves.

Again, the court recognizes that the Haggarts have previously characterized themselves as *pro se* litigants.  *See, e.g.*, Notice of Appeal, ECF No. 199 (referring to themselves as "*Pro Se* Objecting Class[]Claimants").  "Moreover, any attempt to describe the relationship . . . as an attorney-client relationship necessarily elevates form over substance because their underlying claim concerns property jointly owned by them."  *Haggart X*, 149 Fed. Cl. at 662.  The Woodleys' claim for reimbursement of fees and expenses incurred by Mr. Woodley's work thus must be considered a claim for *pro se* fees and expenses.

Granting reconsideration for the Woodleys' *pro se* fees and expenses would be contrary to binding precedent of the Supreme Court and the Federal Circuit, which have denied such reimbursement in similar circumstances. *See Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991) (holding that an attorney could not recover legal fees under 42 U.S.C. § 1988 for representing himself after noting that "it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award"); *May v. United States*, 534 Fed. Appx. 930, 936 (Fed. Cir. 2013) ("Pro se litigants are not entitled to recover attorney fees under either [28 U.S.C. § 2412 or 42 U.S.C. § 1988].") (citations omitted); *Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (noting that 28 U.S.C. § 2412 "does not contemplate that a fee award may be made to a party to be retained"); *Naekel v. Department of Transp.*, 845 F.2d 976, 980 (Fed. Cir. 1988) ("Payment to the *pro se* litigant for his/her own time expended on his/her own behalf does not serve an additional public purpose, and it can not be assumed that Congress intended such payment."). The court declines to award the Woodleys their *pro se* legal fees and expenses, as doing so would be against the preclusive effect of these cases.

Moreover, the Woodleys' request for interest on attorneys' fees is similarly contradicted by precedent. "Under the no-interest rule, recovery of interest on an award of attorney fees is barred unless an award of interest is 'expressly and unambiguously authorized by statute.'" *Biery*, 818 F.3d at 714 (quoting *Chiu v. United States*, 948 F.2d 711, 719 (Fed. Cir. 1991)). Absent such authorization in the Uniform Relocation Act, the Woodleys' claim for interest on an award of attorneys' fees is not viable. The federal case upon which the Woodleys rely, *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299 (1923), authorizes the award of interest "as will produce the full equivalent of [the] value [of the property] paid contemporaneously with the taking." *Id.* at 306. The Supreme Court determined in that case that interest was available on an *award* of just compensation for a taking, not on an award of attorneys' fees. Therefore, even if the Woodleys were entitled to *pro se* litigation fees and expenses, an award of interest in this scenario would be inappropriate.

### B. The Woodleys' Legal Expenses for Kellogg Hansen

The Woodleys also ask for reconsideration of the court's judgment denying their motion for legal fees and expenses incurred by Kellogg Hansen prior to March 1, 2017. *See Haggart X*, 149 Fed. Cl. at 662. They contend that the court's denial of reimbursement for these fees and expenses contravenes the URA and RCFC 23(h). Kellogg Hansen Mot. at 6-8. The government responds that "any reimbursement for [these] fees should come from the $2.58 million paid to [c]lass [c]ounsel pursuant to the Settlement Agreement," and that the Woodleys "have advanced no basis for reconsideration." Def.'s Resp. at 5.

The Uniform Relocation Act requires a court "awarding compensation for the taking of property by a Federal agency . . . [to] reimburse such plaintiff for his reasonable costs, disbursements, and expenses . . . actually incurred because of such proceeding." 42 U.S.C. § 4654(c). In the immediately preceding opinion, this court concluded that the Woodleys' "success in obtaining amounts beyond those specified in the agreement" precluded recovery of attorneys' fees and expenses incurred prior to March 1, 2017, the date the government first filed to overturn the settlement agreement. *Haggart X*, 149 Fed. Cl. at 662. However, the Uniform

Relocation Act does not prevent objecting plaintiffs from recovering reasonable attorneys' fees when they are successful on appeal. *Cf. Cloverport Sand & Gravel Co., Inc. v. United States*, 10 Cl. Ct. 121, 127 (1986) ("Since the Uniform Relocation Act mandates the award of reasonable attorneys' fees and expenses in the event this [c]ourt finds the [g]overnment liable for a taking of private property, and awards compensation for the taking, the [c]ourt has no alternative but to award the plaintiff an amount sufficient to cover . . . reasonable attorneys' fees and expenses."); *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974) (approving attorneys' fees and expenses where "the settlement was improved as a result of these efforts"); *In re Petrobras Sec. Litig.*, 786 Fed. Appx. 274, 277-78 (2d Cir. 2019) (same); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 367 (E.D.N.Y. 2010) (same). Therefore, the Woodleys are entitled to reasonable attorneys' fees and expenses incurred by Kellogg Hansen prior to March 1, 2017.

The reasonableness of the attorneys' fees and expenses sought by the Woodleys before March 1, 2017 is at issue. The court begins this analysis by noting that "[f]ees incurred and paid by a client at an agreed rate . . . are presumptively reasonable because '[i]n reaching agreement, lawyer and client have already considered and weighed all the relevant factors.'" *Haggart X*, 149 Fed. Cl. at 659 (quoting *Florida Rock Indus., Inc. v. United States*, 9 Cl. Ct. 285, 290 (1985)). While "[t]he fee applicants have the burden of production," the Woodleys have satisfied their burden by submitting "time details, fee invoices, and expense records, along with declarations from counsel knowledgeable of rate practices in pertinent areas." *Id.* at 658-59. Kellogg Hansen seeks to recover legal fees and expenses amounting to $592,727.14 for the work it performed prior to March 1, 2017, specifically, $331,244.29 for fees and expenses incurred "from the beginning of the [firm's] representation through the date before the Federal Circuit's first opinion in this case," and $261,482.85 for fees and expenses incurred between January 7, 2016 through February 28, 2017. *See* Kellogg Hansen Mot., Decl. of David C. Frederick ¶ 7, ECF No. 395-1.

Similar to the court's conclusion in its opinion and order of August 12, 2020, a detailed review of the time sheets and descriptions for the period between the onset of Kellogg Hansen's representation of the Woodleys to the date of the Federal Circuit's remand reveals that the time expended was reasonable and necessary. *Haggart X*, 149 Fed. Cl. at 668. Furthermore, "the fact that the firm billed and the Woodleys actually paid" Kellogg Hansen's rates and costs to litigate the case supports the conclusion that the rates charged were reasonable. *Id.* at 669-70; *see also Lost Tree Vill. Corp. v. United States*, 135 Fed. Cl. 92, 96 (2017) (noting that the "[plaintiff] does not seek an upward adjustment in rates but rather a reimbursement for fees actually paid"). The court thus concludes that the Woodleys are entitled to $331,244.29, the entirety of the legal fees and expenses incurred from the onset of the Kellogg Hansen's representation of the Woodleys to January 7, 2016, the date of the Federal Circuit's remand.

The reasonableness of the legal fees and expenses incurred from the date of remand to March 1, 2017, however, requires separate attention. Courts consider "a number of factors" in determining the reasonableness of attorneys' fees. *Hubbard v. United States*, 480 F.3d 1327, 1332 (Fed. Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "[T]he most critical factor," however, and the threshold inquiry to determine if all legal fees and expenses may be reimbursed, "is the degree of success obtained." *Hensley*, 461 U.S. at 436. The

Woodleys were not entirely successful with the legal positions they took during this period, and some of the tactics employed were counterproductive.  *See, e.g.*, Order of August 26, 2016, ECF No. 222 (granting in part and denying in part the Woodleys' motion to substitute class counsel); Woodleys' Mot. for Partial Summ. J., ECF No. 239; *Haggart VI*, 131 Fed. Cl. at 633 (denying the Woodleys' cross-motion for partial summary judgment as moot).

In addition, the government objects to any payment of fees by it to the Woodleys regarding Kellogg Hansen's representation on the ground that any such fees should be paid by class counsel, not the government,  *See* Def.'s Resp. at 7 (citing, *inter alia*, *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (reducing lead counsel's fees to pay objector's fees);  *In re MetLife Demutualization Litig.* 689 F. Supp. 2d 297 (same)). This argument ignores, and does not take into account, the fact that class counsel has already paid the Woodleys $742,743.64, apart from the settlement.  *See* Class Counsel's Notice, ECF No. 415.  In effect, class counsel has performed as the government has demanded.[3]  This circumstance must be taken into account.

Overall, given the mixed success during the relevant period and the payment the Woodleys have already received, the court awards the Woodleys $169,963.85, i.e. 65% of the legal fees and expenses incurred from January 7, 2016 to March 1, 2017, for a total of $501,208.14 in legal fees and expenses for Kellogg Hansen's representation for the period before March 1, 2017.  This amount should be added to the amount previously awarded for the period after March 1, 2017, $497,441.00, for a total of $998,649.14.

### C.   The Legal Expenses of Mr. Ghoddoussi and Westpoint

Mr. Ghoddoussi and Westpoint Properties, LLC request reconsideration of the court's refusal to award $143,044 regarding their contingent fee agreement with Goodstein Law Group PLLC ("Goodstein"), as well as $69,035 for "out of pocket expenses of litigation" and "services" provided by Mr. Ghoddoussi to Goodstein.  *See* Faramarz Ghoddoussi's & Westpoint Properties' Mot. for Att'y Fees & Costs Under the Uniform Relocation Act ("Ghoddoussi Mot. for Att'y Fees") at 4, ECF No. 356.  The government argues that Mr. Ghoddoussi's motion for reconsideration "falls far short of satisfying" the required standard in failing to identify any legal error.  Def.'s Resp. at 12.

In its opinion of August 12, 2020, the court denied Mr. Ghoddoussi and Westpoint Properties' motion for attorneys' fees and expenses after stating that "fees and costs may only be awarded if they provided a benefit to the entire class."  *Haggart X*, 149 Fed. Cl. at 663 (citing *Olden*, 294 Fed. Appx. at 221).  However, while *Olden* provides a relevant requirement for awarding attorneys' fees under a common fund approach, the Federal Circuit clarified that "[t]he URA . . . forecloses application of the common fund doctrine" in this dispute.  *Haggart V*, 809 F.3d at 1359; *see also City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 314 (1981) ("[W]hen Congress addresses a question previously governed by a decision rested on federal

---

[3] The gross amount of this payment has not been allocated between the Woodleys' property and the Woodleys' fees and expenses.

common law[,] the need for such an unusual exercise of lawmaking by federal courts disappears."). Therefore, the fact that the legal fees and expenses incurred by Goodstein may not have benefited the class as a whole does not preclude recovery under the Uniform Relocation Act.

To recover any attorneys' fees and expenses, Mr. Ghoddoussi must demonstrate that these expenditures were reasonable. The party seeking fees "bears the burden of . . . documenting the appropriate hours expended and the hourly rates" and exercising "billing judgment" in doing so. *Rumsey v. Department of Justice*, 866 F.3d 1375, 1379-80 (Fed. Cir. 2017). As previously noted, "[f]ees incurred and paid by a client at an agreed rate are presumptively reasonable," *Haggart X*, 149 Fed. Cl. at 659, but a key date in determining reasonableness in the present case is June 16, 2017, the date Mr. Ghoddoussi and Westpoint Properties first filed for separate representation. *See* Mot. to Substitute Att'y, ECF No. 281; *Haggart X*, 149 Fed. Cl. at 663 (noting that Goodstein first filed "43 days *after* the court had ordered that the settlement agreement was enforceable" (emphasis in original)).[4]

The court "should not award attorneys' fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for the services are clearly established." *White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983) (*disapproved on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 483 U.S. 711 (1987)). While expenses will undoubtedly be incurred before filing for separate representation, a significant amount of expenditures combined with a lack of documentation raises the specter of unreasonableness. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 766-67 (2011) (finding that due to lack of documentation, "the court [was] unable to determine whether the cost of the appraisals was reasonable, [and] the court declines to make an award.") (citing *Cobell v. Norton*, 407 F. Supp. 2d 140, 163 (D.D.C. 2005) (finding that because certain time entries were "inadequately documented [] it [was] impossible for the [c]ourt to determine with a high degree of certainty that such hours were actually and reasonably expended") (citation and internal quotations omitted)).

Prior to June 16, 2017, Mr. Ghoddoussi incurred $7,500 in "[a]ppraisal" expenses and $2,200 in services rendered to Goodstein. *See* Ghoddoussi Mot. for Att'y Fees, Decl. of Faramarz Ghoddoussi ("Ghoddoussi Decl."), ECF No. 356-2.[5] Additionally, Ghoddousi's counsel, Mr. Sanders, states that Goodstein incurred $327.70 in copying charges prior to the date of filing. *See* Ghoddoussi Mot. for Att'y Fees, Decl. of Richard B. Sanders, ECF No. 356-1. Some expenses will undoubtedly be incurred prior to filing for separate representation, but collecting $10,027.70 in appraisals, copying charges, and services to assist Goodstein prior to the first filing appears excessive. Consequently, the court will award 50% of the requested amount

---

[4] The motion for independent representation had been denied on procedural grounds but it then was successfully renewed promptly thereafter. *See Haggart X*, 149 Fed. Cl. at 663 n.12. Earlier, unavailing "Notices" had been filed. *See* Notices, ECF Nos. 206, 207.

[5] Mr. Ghoddoussi spent 20 hours "assisting" Goodstein between April 28, 2017 and June 15, 2017, and requests a reimbursement rate of $110/hour. *See* Ghoddoussi Decl. that request for reimbursement is not allowed.

of expenses incurred prior to June 16, 2017.  Mr. Ghoddoussi and Westpoint Properties are awarded $5,013.85 of these expenses.

The legal fees as well as the expenses incurred after June 16, 2017, are more reasonable given Goodstein's role, but some line items still suggest a lack of the "billing judgment" required to recover the entire amount requested.  *See Rumsey*, 866 F.3d at 1379-80.  For example, Mr. Ghoddoussi lists an additional $7,500 in appraisal expenses, $4,931.40 in surveying expenses incurred in 2017, and $4,302 in "Title Company Research."  *See* Ghoddoussi Decl.  The court also takes into account the fact that the Ghoddoussi plaintiffs received $300,000 in a direct payment from class counsel.  *See* Class Counsel's Notice, ECF No. 415.  Here also, the government argues that any fees and expenses awarded to the Ghoddoussi plaintiffs should be paid by class counsel.  *See* Def.'s Resp. at 12.  But, the Ghoddoussi plaintiffs, who were not objectors but rather plaintiffs granted separate representation, have been paid a significant amount by class counsel.  In all the circumstances, the court thus concludes that an award of 50% of the legal fees and expenses requested is proper.  Mr. Ghoddoussi and Westpoint Properties are awarded $112,259.71 for attorneys' fees and for the expenses incurred after June 16, 2017, bringing their total award to $117,273.56 in legal fees and expenses under the Uniform Relocation Act.

Mr. Ghoddoussi and Westpoint Properties ask for post-judgment interest on any award they receive.  *See* Ghoddoussi Mot. at 4.  However, the court declines to award such interest for the same reasons it refused such an award to the Woodleys.  *See supra* at 7; *Biery*, 818 F.3d at 714 ("Under the no-interest rule, recovery of interest on an award of attorney fees is barred unless an award of interest is 'expressly and unambiguously authorized by statute.'") (quoting *Chiu v. United States*, 948 F.2d 711, 719 (Fed. Cir. 1991)).

### D.  The Legal Expenses of the Cleveland Square Group

Cleveland Square, LLC and other plaintiffs (collectively "Cleveland Square"), who sought and were granted independent representation by Hillis Clark, request reconsideration of the court's decision to deny their motion for $244,372 of attorneys' fees and $4,243.92 of expenses.  *See* Cleveland Square Mot.  The court denied Cleveland Square's initial motion for the same reason it denied Mr. Ghoddoussi's motion, namely that counsel did not "show that [retention of independent counsel] provided a benefit to the class as a whole."  *Haggart X*, 149 Fed. Cl. at 663.  In its motion for reconsideration, Cleveland Square argues that producing a beneficial result for the class as a whole is not required for an award of attorneys' fees under the Uniform Relocation Act.  Cleveland Square Mot. at 3.  Here also, the government objects to any award and argues that Cleveland Square has failed to prove that its fees "were both actually incurred and reasonable."  Def.'s Resp. at 11.

As noted regarding Mr. Ghoddoussi's and Westpoint Properties' motion for reconsideration, a benefit to the class as a whole is required when awarding attorneys' fees under a common fund approach.  *See Olden*, 294 Fed. Appx. at 221.  Nonetheless, because plaintiffs seek attorneys' fees under the Uniform Relocation Act, *Olden* does not impose a barrier to recovery.

Also, similar to the analysis of attorneys' fees and expenses sought by Mr. Ghoddoussi and Westpoint Properties, is the importance of the date the parties first filed for separate representation. Hillis Clark may have commenced its representation of the group on February 29, 2016, *see* Cleveland Square Mot. for Att'y Fees at 1, ECF No. 357, but "counsel for the Cleveland Square group did not seek to enter [a separate representation] in the litigation until July 14, 2017." *Haggart X*, 149 Fed. Cl. at 663. Counsel for Cleveland Square expended a total of 585.6 hours for their clients, 459.15 of which occurred between the onset of representation and July 14, 2017. *See* Decl. of Mary Crego Preston Ex. 1, ECF No. 359-1. Hillis Clark billed Cleveland Square $192,450.50 in attorneys' fees and $3,327.23 in expenses for this time period.[6] *See id.* While some legal fees and expenses would have been necessary prior to filing for separate representation, 78.4% of Hillis Clark's requested attorneys' fees were allegedly incurred prior to this filing. *See id.* Given what appears to be a lack of "billing judgment," *cf. Rumsey*, 866 F.3d at 1379-80, the court will award 50% of the requested attorneys' fees and expenses from the beginning of Hillis Clark's representation to July 14, 2017. Cleveland Square is thus awarded $96,224.25 in attorneys' fees and $1,663.61 in expenses for this time period.

Echoing the reasonableness analysis for Mr. Ghoddoussi and Westpoint Properties, the court finds that the fees and expenses incurred after counsel for Cleveland Square filed for separate representation are more reasonable due to counsel's role. After reviewing the time sheets provided by counsel, the court concludes that Cleveland Square is entitled to 80% of the fees and expenses incurred from July 14, 2017 onward. The court awards Cleveland Square $41,537.20 in attorneys' fees and $733.35 in expenses for this time period, bringing the group's total award to $137,761.45 in attorneys' fees and $2,396.96 in expenses.

---

[6] While counsel for Cleveland Square provided timesheets detailing the hours billed for legal work, *see* Decl. of Mary Crego Peterson Ex. 1, the exhibit failed to note when expenses such as photocopying were incurred during the course of this dispute. Given that Hillis Clark attributed 78.4% of the total hours expended to the time period before the first filing for separate representation, 78.4% of the $4,243.92 in requested expenses will be allocated to this period as well.

12

**CONCLUSION**

The court GRANTS IN PART the motions for reconsideration filed by the Woodleys insofar as representation by Kellogg Hansen is concerned, as well as the motions filed by the Ghoddousi plaintiffs and the Cleveland Square group of plaintiffs.  The motion for reconsideration filed by the Woodleys *pro se* is DENIED.  Taking also into account the court's immediately prior opinion, the court awards attorneys' fees and allowable expenses as follows:

| | |
|---|---|
| Class Counsel (Stewart Wald) | $2,389,527.13 |
| Class Counsel (Sidley Austin) | $576,240.12 |
| The Woodleys (Kellogg Hansen) | $998,649.14 |
| The Ghoddousi Plaintiffs (Goodstein) | $117,273.56 |
| The Cleveland Square Plaintiffs (Hillis Clark) | $140,158.41 |

The judgment entered on August 12, 2020 shall be amended by the Clerk to accord with this revised disposition.

No further costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

13