# In the United States Court of Federal Claims

No. 09-103L

(Filed: October 18, 2023)

|  |  |
|---|---|
| **DANIEL and KATHY HAGGART for themselves and as representatives of a class of similarly situated individuals,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **UNITED STATES,** | ) ) |
| Defendant. | ) ) ) |

Gordon A. Woodley, Woodley Law, Bellevue, Washington, for plaintiff.

David A. Harrington, Assistant Chief, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, D.C., for defendant. Appearing with him on the briefs were Todd Kim, Assistant Attorney General, and Samantha Peltz, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before this court is plaintiff Denise Woodley's amended motion for monetary judgment. Pl.'s Mot. to Recover her URA Litigation Expenses on Remand with Compound Post-J. Interest and to Recover the URA Litigation Expenses Incurred on Appeal [Amended] ("Pl.'s Am. Mot."), ECF No. 447.[1] This case is on remand from the Federal Circuit regarding whether plaintiff's claimed expenses were reasonable and "if [the court] awards expenses, . . . [to] consider any properly preserved request for interest." *Haggart v. United States*, 38 F.4th 164, 167, 171 n.4 (Fed. Cir. 2022). The court held a status conference on August 24, 2022, to discuss the issues on remand. *See* Status Conference Order of Aug. 24, 2022, ECF No. 437. Because the parties were unable to reach a settlement, the court held an additional status

---

[1] "The Uniform Relocation Act" or "URA" are abbreviations for the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. 42 U.S.C. §§ 4601-55.

conference on February 6, 2023.  *See* Status Conference Order (Jan. 6, 2023), ECF No. 439.  Following the status conference, the court issued a briefing schedule for plaintiff's motion for monetary judgment.  Scheduling Order (Feb. 6, 2023), ECF No. 440.  Plaintiff filed her motion for monetary judgment on May 4, 2023, and then filed an amended motion for monetary judgment on May 18, 2023.  *See* Pl.'s Mot. to Recover her URA Litigation Expenses on Remand with Compound Post-J. Interest and to Recover the URA Litigation Expenses she Incurred on Appeal ("Pl.'s Initial Mot."), ECF No. 441; Pl.'s Am. Mot.[2]  Ms. Woodley attached declarations and exhibits to her initial motion.  Decl. of Gordon Woodley (May 3, 2023), ECF No. 441-1; Exs. 1-10 to Decl. of Gordon Woodley (May 3, 2023), ECF No. 441-2; Decl. of Denise Lynn Woodley (May 3, 2023), ECF No. 441-3.[3]  The government filed its response to plaintiff's amended motion on June 30, 2023.  Def.'s Resp. in Opp'n to Pl.'s Am. Mot. for Monetary J. ("Def.'s Resp."), ECF No. 452.[4]  Plaintiff filed her reply on September 6, 2023.  Pl.'s Reply to Def.'s Opp'n Resp. to her Mot. to Recover her URA Litigation Expenses & Compound Post-J. Interest ("Pl.'s Reply"), ECF No. 453.

The motion is fully briefed and ready for disposition.  For the reasons stated, plaintiff's motion is GRANTED in part and DENIED in part.

---

[2] Plaintiff first filed her amended motion without leave of court or the government's consent.  *See* Order of May 5, 2023, ECF No. 443 (directing the clerk's office to strike plaintiff's amended motion).  Plaintiff then filed a motion for leave to file an amended motion.  Pl.'s Mot. for Leave of Ct. to File her Am. Mot. to Recover her URA Expenses on Remand with Compound Post-J. Interest and to Recover the URA Litigation Expenses Incurred on Appeal, ECF No. 444.  The government responded to her motion for leave, taking no position on her motion.  Def.'s Resp. to Pl.'s Mot. for Leave of Ct. to File Am. Mot. for Recover URA Litigation Expenses on Remand with Compound Post-J. Interest and to Recover the URA Litigation Expenses Incurred on Appeal at 2, ECF No. 445.  The court granted her motion for leave and plaintiff filed her amended motion on May 18, 2023.  Order of May 18, 2023, ECF No. 446; Pl.'s Am. Mot.

[3] Plaintiff filed three attachments with her initial motion but did not resubmit the attachments with her amended motion.  *See* Pl.'s Initial Mot; Pl.'s Am. Mot.  Therefore, the court refers and cites to the attachments to her initial motion.

[4] On June 1, 2023, the government filed a motion for an extension of time from June 2, 2023 until June 23, 2023 to file its response to plaintiff which the court granted.  Def.'s Mot. for Extension of Time, ECF No. 448; Order of June 2, 2023, ECF No. 449.  On June 23, 2023, the parties jointly filed a motion requesting that the court amend the briefing schedule, which the court granted.  Joint Mot. to Modify the Br. Schedule, ECF No. 450; Order of June 23, 2023, ECF No. 451.  Per the parties' proposal, the court ordered the government to file its response on June 30, 2023, and plaintiff to file her reply on September 18, 2023.  Order of June 23, 2023.

## BACKGROUND

### A. *Procedural History*

This case is on remand from the Federal Circuit and has a lengthy history. On February 19, 2009, a proposed class of landowners filed suit in the Court of Federal Claims seeking just compensation under the Fifth Amendment for an alleged taking of their property. Compl. ¶¶ 2, 19-21 ECF No. 1. The court certified the class, which was composed of people in Washington State who owned reversionary rights to property that was converted from a railroad to a recreational trail pursuant to the National Trails System Act. *See Haggart v. United States*, 89 Fed. Cl. 523, 527-28, 536-37 (2009). Plaintiff in this case, Denise Woodley, and her husband, Gordon Woodley, were two of the class members. *Haggart v. United States*, 136 Fed. Cl. 70, 74 (2018). Denise Woodley and Gordon Woodley sought just compensation for an alleged taking of their jointly-owned community property. Compl. ¶¶ 3-18; *see* Decl. of Denise Woodley ¶ 2 (Mar. 20, 2017), ECF No. 251.[5]

On January 26, 2018, the court published an opinion and order granting plaintiff's motion for approval and enforcement of the settlement agreement that the government and plaintiffs had executed in 2014. *See Haggart*, 136 Fed. Cl. 70.[6] After issues with this agreement

---

[5] On May 4, 2023, plaintiff submitted an exhibit titled Gordon Woodley's "Disclaimer of Personal Interest in the Proceeds Recoverable in *Haggart v. United States*," which is dated November 26, 2020. *See* Ex. 2 to Decl. of Gordon Woodley. Gordon Woodley states that he "disclaims his personal interest in the proceeds which may be recoverable in *Haggart v. United States* . . . without reservation to ensure that Denise L. Woodley is the only person entitled to the net proceeds after payment of her URA litigation expenses." *Id.* at 1. This exhibit does not change Denise Woodley's and Gordon Woodley's joint-ownership of the property for the purposes of this case.

[6] In 2014, the parties reached a tentative settlement agreement. The court held a fairness hearing, approved the settlement, and entered final judgment. *Haggart v. United States*, 116 Fed. Cl. 131, 149 (2014). Denise Woodley and Gordon Woodley objected to the settlement and in 2014 appealed the court's final judgment, contending that there was insufficient information given to class members to enable them to verify the total settlement amount and challenging the use of a common fund approach to award legal fees. *Haggart v. United States*, 809 F.3d 1336, 1343, 1350 (Fed. Cir. 2016). The government then filed a brief supporting the Woodley's appeal. *See id.* at 1343. In 2016, the Federal Circuit held that some of the class's compensation under the settlement was prohibited by the URA and that the class counsel failed to provide the Woodleys and other class members with sufficient information to verify the settlement amount. *See id.* at 1351. Therefore, the Federal Circuit vacated the Court of Federal Claims' approval of the settlement and remanded to the court. *See id.* at 1359. Accordingly, the Court of Federal Claims reopened discovery to enable the Woodleys and other class members to access electronic documentation, thereby rectifying the issue with the settlement agreement. *Haggart v. United States*, 131 Fed. Cl. 628, 632 (2017); *Haggart*, 136 Fed. Cl. at 77. The government then filed a motion for reconsideration based on its new position that the settlement agreement was invalid,

were challenged and resolved, the court entered judgment on January 29, 2018.  Order for J. of Jan. 29, 2018, ECF No. 341.  Under the enforced settlement, the plaintiffs collectively were awarded $159,636,521.65.  *See id.* (consisting of $110,000,000 in principal and $49,636,521.65 in interest on the settlement award as of December 18, 2017).  The court ordered that "[i]nterest [would] continue[] to accrue at the rate of 4.2%, compounding annually from the dates of the taking . . . until the date of payment by the government."  *Id.*  The government then appealed.  Def.'s Notice of Appeal, ECF No. 343.  The Federal Circuit affirmed the Court of Federal Claims' approval of the settlement.  *Haggart v. United States*, 943 F.3d 943, 952 (Fed. Cir. 2019).  Because the Court of Federal Claims had approved the settlement and the Federal Circuit had affirmed, the government paid class members what they were owed under the terms of the settlement.  At the same time, the Court of Federal Claims had not yet determined whether the settlement permitted class members to also recover statutory legal fees and costs under the URA.  *See Haggart*, 136 Fed. Cl. at 81.[7]

At this point, on March 2, 2020, Gordon Woodley and Denise Woodley filed a motion for attorneys' fees, expenses, and costs for work performed by the law firm they hired, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.  Pls. Gordon and Denise Woodley's Mot. for Att'ys' Fees, Expenses and Costs at 3, 13, ECF No. 360.  Specifically, they sought $1,089,071.21 in attorneys' fees and expenses for the law firm's work.  *Haggart*, 149 Fed. Cl. at 668.  The court granted their request in part and awarded $497,449.00 to the firm for its representation of the Woodleys.  *Id.* at 670.  The Woodleys also sought $371,849.16 in attorneys' fees and expenses for work performed by Gordon Woodley, on the ground that he is an attorney.  Pl. Denise Woodley's Mot. for Leave to File Separate Mots. for Att'ys' Fees, Expenses, and Costs ("Mot. to File Separate Mots."), ECF No. 353; *Haggart*, 149 Fed. Cl. at 661-62.[8]  The amount sought

---

resulting in additional proceedings.  *See* the United States' Mot. for Recons. of Certain Rulings on the Parties' Cross[-]Mots. for Summ. J., ECF No. 244.  The court denied the government's motion.  *Haggart v. United States*, 133 Fed. Cl. 568, 572 (2017).  The class members then requested that the court approve a renewed notice to the class members regarding the settlement.  *Haggart*, 136 Fed. Cl. at 75.

[7] When the court approved the settlement agreement, it entered a partial final judgement under Rule of the Court of Federal Claims 54(b), thereby allowing it to bifurcate its approval of the settlement from the determination of whether class members could recover attorneys' fees and expenses under the URA.  *See Haggart*, 136 Fed. Cl. at 81.  When the Federal Circuit affirmed this court's approval of the settlement, the government paid class members the principal, interest, and fees dictated by the settlement agreement.  At the same time, the Federal Circuit did not address the arguments regarding whether plaintiffs could recover legal fees and costs under the URA.  *Haggart*, 943 F.3d at 951-52.  Plaintiffs then filed four motions in the Court of Federal Claims for statutory legal fees and costs under the URA.  One of those motions was filed by the Woodleys.  Pl. Denise Woodley's Mot. for Leave to File Separate Mots. For Att'ys' Fees, Expenses, and Costs Ex. 4, ¶ 15, ECF No. 353; *Haggart v. United States*, 149 Fed. Cl. 651, 661 (2020).

[8] Gordon Woodley has a law firm named Woodley Law.  *Haggart*, 38 F.4th at 167.

4

consisted of $10,674.19 in URA expenses actually incurred, $366,380.00 in URA attorney's fees actually incurred, $7,440.00 in URA attorney's fees to be incurred by May 15, 2020, minus a 50% travel credit of $12,645.  Mot. to File Separate Mots. Ex. 4 ¶ 15; *Haggart v. United States*, 149 Fed. Cl. 651, 661 (2020).

The $10,674.16 in URA expenses actually incurred consisted of three sub-expenses. These three sub-expenses were (1) $505 in filing fees for the Woodleys' 2014 appeal to the Federal Circuit, (2) $169.16 in URA legislative history research conducted by a third party, and (3) $10,000 in appraisal costs to assess the value of the Woodleys' property that was allegedly taken.  *Haggart*, 38 F.4th at 167 (discussing *Haggart*, 149 Fed. Cl. at 661).  On August 12, 2020, this court denied Denise Woodley's motion for attorney's fees for work performed by Gordon Woodley and the related legal expenses, reasoning that the Woodleys were *pro se* litigants and therefore could not recover legal fees or costs.  *Haggart*, 149 Fed. Cl. at 661-62.  The court stated that "[f]ee-shifting statutes do not generally permit *pro se* litigants to recover legal fees and costs" and that "any attempt to describe the relationship between the Woodleys as an attorney-client relationship necessarily elevates form over substance because their underlying claim concerns property jointly owned by them."  *Id.* at 661-62.  The court concluded that "while Mr. Woodley may have assumed the role of representing his wife, he could only do so by simultaneously representing his own interests on a *pro se* basis.  Consequently, the court regard[ed] the Woodleys as *pro se* litigants and decline[d] to award any legal fees or costs insofar as Mr. Woodley's representation [was] concerned."  *Id.* at 662.  The court then entered judgment.  Order for J. of Aug. 13, 2020, ECF No. 391.

The Woodleys moved for reconsideration of the court's decision.  Mot. for Partial Recons., ECF No. 395.  The court denied the motion for reconsideration of their attorney's fees and expenses for Mr. Woodley's work.  *Haggart v. United States*, 151 Fed. Cl. 58, 70 (2020).  At the same time, the court increased the award to the firm Kellogg, Hansen, Todd, Figel & Frederick to $998,649.14 in fees and expenses.  *Id.* at 67.

The Woodleys appealed to the Federal Circuit this court's decision to deny their motion for attorney's fees and expenses for work performed by Gordon Woodley.  Pls. Gordon and Denise Woodley's Notice of Appeal, ECF No. 407; Pl. Denise Lynn Woodley's Am. Notice of Appeal, ECF No. 421.

    1.  *Remand from the Federal Circuit.*

On appeal, the Federal Circuit affirmed this court's denial of Denise Woodley's request for attorney's fees for Gordon Woodley's work but vacated the Court of Federal Claims' "denial of the claimed expenses" related to Gordon Woodley's work and remanded to the Court of Federal Claims so that it could "address the reasonableness of the three [sub-]expenses for which she seeks reimbursement."  *Haggart*, 38 F.4th at 171.  The Federal Circuit also provided that the Court of Federal Claims "should consider any properly preserved request for interest" on remand.  *Id.* at 172 n.4.  Specifically, it stated:

5

> We hold that Denise Woodley may recover reasonable expenses even though she may not recover the attorney's fees she seeks for Gordon Woodley's work. We vacate the denial of the claimed expenses and remand so that the Claims Court can address the reasonableness of the three expenses for which she seeks reimbursement.
>
> We understand Denise Woodley's appeal before us to argue for post-judgment interest on any award of fees or expenses – from August 13, 2020, the date on which the correct judgment should have been entered. Although the Claims Court rejected an entitlement to interest, it did so in discussing a fee award and without a clear focus on post-judgment interest. On remand, the Claims Court, if it awards expenses, should consider any properly preserved request for interest.

*Haggart*, 38 F.4th at 171, 171 n.4 (internal quotations omitted) (internal citations omitted).

Now, Mrs. Woodley requests that this court grant monetary judgment in her favor for the three sub-expenses, totaling $10,674.16, that the Federal Circuit discussed in its remand to this court, as well as $3,474.90 in post-judgment interest on those expenses. Pl.'s Am. Mot. at 1-2. At the same time, she also requests three additional categories of monetary relief beyond what the Federal Circuit addressed in its remand. The three additional categories are (1) other post-judgment interest, (2) other appellate expenses, and (3) other attorney's fees. As part of other post-judgment interest, she requests $76,275.68 for compound post-judgment interest on attorneys' fees awarded to the firm.[9] Within other appellate expenses, she requests $5,407.94 for expenses incurred during her 2021 appeal to the Federal Circuit.[10] And within other attorney's fees, she requests $381,330 in attorney's fees for work done by Gordon Woodley for plaintiff's 2021 appeal to the Federal Circuit and for work done and anticipated to be done by him during her remand to this court.[11] Pl.'s Am. Mot. at 1-2, 5, 25. In total, plaintiff seeks a monetary judgment of $463,013.62.

---

[9] The requested $76,275.68 of compound post-judgment interest on the firm's attorneys' fees consists of (1) $16,192.57 in post-judgment interest on the $497,449.00 awarded to the firm on August 13, 2020, and (2) $60,083.11 in post-judgment interest on the $998,649.14 awarded to the firm on November 25, 2020. Pl.'s Am. Mot. at 1-2, 5, 22, 25.

[10] The requested $5,407.94 of 2021 appeal expenses consists of (1) $505.00 for the 2021 appellate filing fee, (2) $500.00 for Casetext research, (3) $93.50 for Pacer expenses, (4) $1,542.89 for shipping expenses, (5) $1,082.12 for flight expenses, (6) $74.47 for Uber expenses, and (7) $1,609.96 for meal and lodging expenses. Pl.'s Am. Mot. at 1-2, 5, 25.

[11] The requested $381,330 of attorney's fees for work done by Gordon Woodley for plaintiff's 2021 appeal consists of (1) $315,050 in attorney's fees for his work on appeal, (2) $51,280 in attorney's fees for his work on remand, and (3) $15,000 in estimated attorney's fees for his anticipated work on plaintiff's reply on remand and the hearing. Pl.'s Am. Mot. at 1-2, 5, 25. Plaintiff states that the $15,000 in estimated URA attorney fees that she requests was related

## STANDARDS FOR DECISION

### A. Mandate Rule

"The mandate rule provides that issues actually decided on appeal – those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court – are foreclosed from further consideration." *Clark v. United States*, 656 F.3d 1317, 1320-21 (Fed. Cir. 2011) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). "This rule also precludes reconsideration of issues necessarily decided by implication in the earlier decision." *Id*. Furthermore, "[a]n issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived." *Engel Indus. Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). "Unlike the authority to reconsider its own rulings, a district court is without choice in obeying the mandate of the appellate court." *In re Roberts*, 846 F.2d 1360, 1363 (Fed. Cir. 1988) (emphasis omitted).

### B. Jurisdiction

The Tucker Act provides this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not itself confer substantive rights. *See United States v. Testan*, 424 U.S. 392, 398 (1976). As such, a plaintiff pursuing a claim under the Tucker Act is required to "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

### C. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970

The Uniform Relocation Act waives federal sovereign immunity with respect to legal fees, costs, and expenses claimed against the United States in takings cases. It specifies that when a court awards a plaintiff compensation for a taking by a federal agency, the court shall "reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." 42 U.S.C. § 4654(c).

### D. Reasonable Attorney's Fees and Expenses

As a general matter, "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "[I]n certain categories of cases Congress has carved out exceptions to [this] rule and allowed for recovery of attorneys' fees." *Bywaters v. United States*, 670 F.3d 1221,

---

to her reply to the government's response and the related hearing on June 21, 2023. Pl.'s Am. Mot. at 5.

1226 (Fed. Cir. 2012). "The fee-shifting provisions of the URA are one such example." *Id.* at 1226-27. The Uniform Relocation Act provides for the recovery of "such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees, actually incurred because of such proceeding." 42 U.S.C. § 4654(c). Generally, these expenses may be granted to the extent they are "reasonably related to the litigation of [the] case." *Arnold v. United States*, 163 Fed. Cl. 13, 42 (2022), *appeal dismissed sub nom. Dawson v. United States*, No. 2023-1923, 2023 WL 5286460 (Fed. Cir. Aug. 17, 2023).

The "fee applicant bears the burden of establishing entitlement to an award." *See Hensley*, 461 U.S. at 437. Plaintiff must provide materials to the court that supply "sufficient detail" to permit the court "to determine whether the hours, fees, and expenses are reasonable for any individual item invoiced." *Preseault v. United States*, 52 Fed. Cl. 667, 679 (2002). The court may refer to invoices and billing records submitted by the plaintiff, *see Rumsey v. Dep't of Justice*, 866 F.3d 1375, 1379 (Fed. Cir. 2017), as well as declarations made by attorneys about reasonableness of fees, and the court's own expertise, *see Morris v. Sec'y of the Dep't of Health and Human Servs.*, 20 Cl. Ct. 14, 28-29 (1990).

Fees paid by a client at a rate the attorney and client agreed upon are presumed to be reasonable because "in reaching [the] agreement, [the] lawyer and client have already considered and weighed all the relevant factors." *Fla. Rock Indus., Inc. v. United States*, 9 Cl. Ct. 285, 290 (1985) (citing *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 24-26 (D.C. Cir. 1984)). In addition, attorney's fees calculated using the lodestar method, which multiplies reasonable hours by a reasonable rate, are given a strong presumption of reasonableness. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 587 (2009).

## ANALYSIS

### A.   *Plaintiff's Three Expenses Discussed by the Federal Circuit: Filing Fee, Legislative History Research, and Property Appraisal*

Plaintiff seeks monetary judgment for three expenses discussed by the Federal Circuit in her appeal and remand to this court; she actually incurred these three expenses between 2014 and 2017. The three expenses, which total $10,674.16, are (1) $505.00 for the 2014 appellate filing fee, (2) $169.16 for legislative history research, and (3) $10,000 for the 2017 Kidder Matthews Yellow Book property appraisal. Pl.'s Am. Mot. at 1-2; *id.* Ex. 8 (receipt for URA legislative history research and receipt for Kidder Matthews Yellow Book appraisal); Notice of Appeal, ECF No. 199. The filing fee expense related to plaintiff's 2014 filing of her appeal to the Federal Circuit; the legislative history expense concerned research conducted by a third party which was referenced in appellate briefs and the Federal Circuit's 2016 decision; and the Kidder Matthews Yellow Book appraisal expense paid for an assessment of the value of the Woodley's property which was used in a settlement discussion and conducted to prepare for trial. Pl.'s Am. Mot. at 12-14; *id.* Ex. 8. Plaintiff notes that the head appraiser requested $15,000, rather than the $10,000 it quoted, for the Yellow Book appraisal, but plaintiff only paid the quoted amount.

Pl.'s Am. Mot. at 13-14.  The government "does not contest the reasonableness of the three expenses previously claimed before the Federal Circuit and acknowledges that, pursuant to the Federal Circuit's decision . . . [p]laintiff is entitled to recovery of these three discrete costs amounting to a total of $10,674.16."  Def.'s Resp. at 9.

The Federal Circuit remanded to this court to "address the reasonableness of the three expenses for which [Denise Woodley] seeks reimbursement."  *Haggart*, 38 F.4th at 171.  The Uniform Relocation Act waives federal sovereign immunity with respect to "reasonable . . . expenses, including reasonable . . . appraisal . . . fees" claimed against the United States in a takings case that a plaintiff "actually incurred because of such proceeding."  42 U.S.C. § 4654(c).  Plaintiff's three expenses – including the court's standard filing fee and an hourly price for research agreed upon by plaintiff and a third party – were part of her 2014 appeal, which resulted in class members gaining access to documentation to verify the settlement amount.  *Haggart*, 809 F.3d at 1350-51.  These expenses may be granted to the extent they are "reasonably related to the litigation of this case."  *See Arnold*, 163 Fed. Cl. at 42.[12]  The court concludes that these expenses, which involved filing and research, were indeed related to the litigation of this case, as they allowed plaintiff to make relevant filings in the case based upon necessary research.

As such, the court finds these three expenses – totaling $10,674.16 – reasonable, and therefore grants plaintiff's motion to be awarded them.

### B.       *Post-Judgment Interest on the Three Expenses Addressed by the Federal Circuit*

Plaintiff requests $3,474.90 in "[c]ompound [p]ost-[j]udgment [i]nterest on the $10,674.16 of URA expenses" actually incurred between 2014 and 2017.  *See* Pl.'s Am. Mot. at 1; *supra* at 6.  Plaintiff seeks post-judgment interest from August 13, 2020, the date that the Court of Federal Claims entered judgment on its attorney's fees and expenses, to May 1, 2023, four days before she filed her amended motion for monetary judgment.  Order for J. of Aug. 13, 2020; Pl.'s Am. Mot. at 1.  Plaintiff contends that she should be awarded post-judgment interest on the three expenses because the issue was preserved, the no-interest rule does not apply, and 28 U.S.C. § 1961(c) "clearly provides for post-judgment interest."  Pl.'s Am. Mot. at 14-18,

---

[12] *E.g.*, in *Arnold v. United States*, the court granted a plaintiff under the URA costs totaling $27,424.06 which included, among other expenses "court filing fees and fees to obtain copies of transcripts or deeds" as well as "fees for deed searches and retrievals," concluding "the Court finds these nominal expenses are reasonably related to the litigation of this case."  163 Fed. Cl. at 42.

9

23-24.[13]  The government concedes that the issue is preserved,[14] but regardless contends that plaintiff is not entitled to interest on these three expenses because the no-interest rule applies.  Def.'s Resp. at 9.

Although the issue is properly preserved, plaintiff is not entitled to post-judgment interest on the three expenses she incurred between 2014 and 2017 because the no-interest rule bars their recovery.  When the Federal Circuit remanded to this court to "address the reasonableness of the three expenses for which she seeks reimbursement," it recognized plaintiff's request for post-judgment interest and stated that "if [the court] awards expenses, [it] should consider any properly preserved request for interest."  *See Haggart*, 38 F.4th at 171, 171 n.4.  The Federal Circuit directed this court to address interest on any award of expenses because although this court previously "rejected an entitlement to interest, [this court] did so in discussing a fee award" rather than an expense award "and without a clear focus on post-judgment interest."  *Id.* at 171 n.4.  Based on the Federal Circuit's assertion, plaintiff argues in her reply that "[u]nder the mandate rule, the right to recover post-judgment interest is *res judiciata*, having already been decided against the Government."  Pl.'s Reply at 4.  Plaintiff's assertion, however, misunderstands the scope of the Federal Circuit's direction.  In directing this court to "*consider* any properly-preserved request for interest," *Haggart*, 38 F.4th at 171, 171 n.4 (emphasis added), the Federal Circuit did not require this court to *award* the requested interest.  While plaintiff may be correct that the Federal Circuit left open the possibility that additional interest expenses could be assessed against the government, plaintiff is incorrect that the issue of interest has already been "decided against the Government" or that considering plaintiff's requests for interest now, as directed by the Federal Circuit, would amount to relitigating these "issues again on remand."  Pl.'s Reply at 4.  Thus, although this court is indeed "'free' to determine the amounts of interest which should have been entered on [plaintiff's] URA judgments, Pl.'s Reply at 2-3," this does not mean that the court is bound to award such interest in any given instance in particular.

The Tucker Act does not waive sovereign immunity with respect to claims for interest ("interest immunity").  *See* 28 U.S.C. § 1491(a)(1); *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed. Cir. 1993).[15]  Therefore, this court lacks subject-matter jurisdiction over a plaintiff's

---

[13] Section 28 U.S.C. 1961(c)(3) states that "[i]nterest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law."  Plaintiff contends that "any other provision of law" "includes the [post]-judgment statutory rate of Washington state where the property rights were taken," which is 12% per annum.  Pl.'s Am. Mot. at 15-16.

[14] Given that the issue is properly preserved and was not actually resolved by the Federal Circuit, plaintiff's mandate rule arguments with respect to this issue are misguided.  Pl.'s Reply at 1-4.  Instead, as discussed *infra* at 10-12, it is the no-interest rule that applies.

[15] Plaintiff avers in her reply that "[t]he Government is wrong" in its assertion "that its waiver of sovereign immunity is only 'an express partial waiver of sovereign immunity,'" Pl.'s Reply at 12 (quoting Def.'s Resp. at 13), and "that sovereign immunity is waived for any such claim against the Government."  Pl.'s Reply at 13 (citing *Chattler v. United States*, 632 F.3d

10

claim against the government for interest unless Congress separately and explicitly waived the government's interest immunity; this is called the "no-interest rule." *See id.*; *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015); *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126-27 (Fed. Cir. 2004). The no-interest rule is forceful because waivers of sovereign immunity must be "unequivocally expressed," *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (internal quotations omitted), and "the [g]overnment's consent to be sued 'must be construed strictly in favor of the sovereign.'" *Id.* at 34 (quoting *McMahon v. United States*, 342 U.S. 25, 26 (1951)).

Although statutes can waive interest immunity, neither the URA nor 28 U.S.C. § 1961(c) waives interest immunity in this case. First, despite the URA's waiver of federal sovereign immunity with respect to legal fees, costs, and expenses claimed against the United States in takings cases, it does not separately and explicitly waive interest immunity. *See* 42 U.S.C. § 4654(c). Therefore, it does not satisfy the no-interest rule's requirements. The term "costs" in different statutes has been found to be insufficient to waive the no-interest rule. *See e.g., Library of Cong. v. Shaw*, 478 U.S. 310, 321 (1986), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Landgraf v. USI Film Products*, 511 U.S. 244 (1994). The Federal Circuit has consistently held that the no-interest rule applies to attorney's fees awarded under the URA, *see, e.g.*, *Biery v. United States*, 818 F.3d 704, 714-15 (Fed. Cir. 2016); *Campbell v. United States*, 138 Fed. Cl. 65, 73 (2018), and the text of the URA does not suggest that interest immunity would be analyzed differently regarding fees, costs, or expenses under the URA.

Second, 28 U.S.C. § 1961(c) does not waive interest immunity and therefore the no-interest rule applies. Although plaintiff contends that 28 U.S.C. § 1961(c) provides a waiver of interest immunity, the Federal Circuit has held that 28 U.S.C. § 1961(c) "cannot be read as authorizing interest awards against the United States."[16] *Alaska Airlines, Inc.*, 8. F.3d at 798; *see also Thompson v. Kennickell*, 797 F.2d 1015, 1020 (D.C Cir. 1986) (holding that "neither the

---

1324, 1329 (Fed. Cir. 2011)). Plaintiff places undue weight on the Tucker Act's mention of "*any claim* against the United States," 28 U.S.C. § 1491(a)(1) (emphasis added), to draw the incorrect conclusion that the "[g]overnment's [c]laim of [s]overeign [i]mmunity is [m]eritless." Pl.'s Reply at 12. Indeed, as mentioned above, the Tucker Act does not itself convey substantive rights. *See supra* at 7. As such, the government's waiver of sovereign immunity with respect to specific claims is indeed subject to certain exceptions according to the corresponding underlying statute at issue, as discussed herein. Moreover, plaintiff's reliance on *Chattler* is misplaced, as that case concerned "[a]n express contract with the government," which is distinct from the subject of this URA dispute. 632 F.3d at 1330.

[16] Plaintiff cites to *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990), to support her contention that 28 U.S.C. § 1961 dictates that the court should award her post-judgment interest. Pl.'s Am. Mot. at 16. *Kaiser Aluminum* does not govern the facts of this case because it held that a private defendant, not the government, owed a plaintiff post-judgment interest. *See* 494 U.S. at 829, 835.

11

language of 28 U.S.C. § 1961, as amended, nor its legislative history meets the stringent standards for waiver of the sovereign immunity of the United States with respect to post-judgment interest").[17]  Therefore, plaintiff's claim for $3,474.90 in post-judgment interest on the $10,674.16 of URA expenses she incurred from August 13, 2020, to May 1, 2023, is barred by the no-interest rule.

### C. Further Claims Before the Court

Plaintiff raises three categories of monetary claims in her motion before this court that were not before the Federal Circuit.  All three categories of claims are denied.

#### 1. Other Post-Judgment Interest.

Plaintiff seeks $76,275.68 in compound post-judgment interest on the attorneys' fees awarded to the firm Kellogg, Hansen, Todd, Figel & Frederick.  Pl.'s Am. Mot. at 22.  Under the mandate rule, any issue that "falls within the scope of judgment appealed from but is not raised by the appellant in its opening brief on appeal is waived."  *Engel Indus.*, 166 F.3d at 1383.  During her appeal, plaintiff did not claim any interest on attorneys' fees awarded to Kellogg, Hansen, Todd, Figel & Frederick, and the Federal Circuit found that attorneys' fees awarded to the firm were not at issue in the appeal.  *Haggart*, 38 F.4th at 166.  Moreover, this court previously denied plaintiff's request for post-judgment attorneys' fees because of the no-interest rule.  *See Haggart v. United States*, 151 Fed Cl. 58, 65-66 (2020).  Therefore, plaintiff's request for $76,275.68 in compound post-judgment interest on attorneys' fees awarded to Kellogg, Hansen, Todd, Figel & Frederick is denied.

#### 2. Other Appellate Expenses.

Plaintiff seeks $5,407.94 in URA expenses she allegedly incurred during her 2021 appeal to the Federal Circuit, including the filing fee, research expenses, shipping expenses, and travel expenses.  Pl.'s Am. Mot. at 1-2.  The mandate rule states that "issues actually decided" on

---

[17] Plaintiff makes additional arguments for why the no-interest rule does not apply to her claims for post-judgment interest, but none are persuasive.  First, plaintiff contends that *Library of Congress v. Shaw*, 478 U.S. 310 (1986), dictates that the no-interest rule does not apply to her claims because the Court stated that "the [g]overnment is required to pay interest where the Constitution mandates payment under the Just Compensation Clause."  Pl.'s Am. Mot. at 23 (quoting *Library of Cong.*, 478 U.S. at 320).  The Court's statement does not apply to her claims because they are for interest on expenses (and attorney's fees), not for interest on just compensation under the Just Compensation Clause of the Fifth Amendment.  Second, plaintiff argues that the no-interest rule does not apply to her claims because "the [g]overnment cannot avoid the consequences of its own delay in a case involving the recovery and protection of constitutionally required just compensation."  *See* Pl.'s Am. Mot. at 23.  Delay, however, does not warrant the court setting aside the no-interest rule and awarding plaintiff post-judgement interest.  *See Library of Cong.*, 478 U.S. 322.

appeal "are foreclosed from further consideration." *Engel Indus.*, 166 F.3d at 1383. The Federal Circuit decided this issue when it stated in its opinion and order that "the parties shall bear their own costs." *Haggart*, 38 F.4th at 172.[18] Therefore, the mandate rule prohibits plaintiff's recovery of her $5,407.94 worth of expenses incurred during her 2021 appeal.

       3. *Other Attorney's Fees.*

Plaintiff seeks $381,330 in URA attorney's fees for work done by Gordon Woodley for Denise Woodley during her 2021 appeal to the Federal Circuit and for work done and anticipated to be done by him during her remand to this court. *See* Pl.'s Am. Mot. at 4-11. Again, the mandate rule prohibits considering "issues actually decided" on appeal. *Engel Indus.*, 166 F.3d at 1383. The Federal Circuit affirmed this court's denial of Denise Woodley's motion for attorney's fees for work performed by Gordon Woodley. *Haggart*, 38 F.4th at 171.[19] The Federal Circuit upheld the Court of Federal Claims' reasoning that Gordon Woodley's representation of his wife would necessarily simultaneously represent his own interests because he jointly owned the property with his wife, and the couple did not have an attorney-client relationship. *Id.* at 169-71. Plaintiff contends in her reply that Gordon Woodley's subsequent disclaiming of his personal interest in the recoverable proceeds in this case amounts to sufficiently changed circumstances so as to "[e]liminate[] [t]he [b]asis for [t]he *[p]ro [s]e* [b]ar." Pl.'s Reply at 9. As discussed above, this declared waiver of interest is insufficient for the purposes of this case. *See supra* at 3, n.5. And regardless, as has already been decided, this contention once again "necessarily elevates form over substance," *Haggart*, 149 Fed. Cl. at 662, as the fact that Gordon Woodley subsequently disclaimed his interest in jointly-owned spousal property is insufficient to change his spousal relationship with his wife in a community property state into a predominantly attorney-client relationship. As such, even assuming plaintiff's argument on this issue was not waived,[20] changed circumstances do not bar application of the

---

       [18] Plaintiff argues in her reply that a failure to "bear the cost of her $5,407.94 in appellate URA out-of-pocket expenses" would represent an "attempt by the [g]overnment to now shirk its solemn obligations under the URA" in a manner that is "contrary to the law of the case." Pl.'s Reply at 9. The law of the case with respect to this issue, however, has indeed already been determined by the Federal Circuit and may not be relitigated now. *Haggart*, 38 F.4th at 172.

       [19] Plaintiff contends in her reply that "[t]he [g]overnment produced no evidence rebutting her moving declarations. It did not rebut the strong presumption that the lodestar calculation is reasonable." Pl.'s Reply at 8. While the lodestar method does indeed enjoy the presumption of reasonableness regarding the measure of fees if such fees are recoverable, *see supra* at 8, the Federal Circuit has already affirmed that Gordon Woodley's attorney's fees are not in fact recoverable in this case specifically. *Haggart*, 38 F.4th at 171. That decision may not be relitigated now.

      [20] As the Federal Circuit acknowledged, "Denise Woodley does not contest" the communal nature of this marital property "in her opening brief or reply brief." *Haggart*, 38 F.4th at 169-70. As such, this argument, even if it had merit, has nonetheless been waived.

mandate rule. Therefore, the mandate rule prohibits plaintiff's recovery of the attorney's fees for work by Gordon Woodley on her 2021 appeal and during the subsequent remand.

## CONCLUSION

For the reasons stated, plaintiff is entitled to a monetary judgment in the amount of $10,674.16 for expenses incurred during her 2014 appeal to the Federal Circuit. Her request for judgment to that effect is GRANTED. For the reasons stated, plaintiff's additional requests for monetary judgment are DENIED.

No costs.

The Clerk is directed to enter judgment accordingly.

It is so **ORDERED**.

                                      s/ Charles F. Lettow
                                      Charles F. Lettow
                                      Senior Judge